Andrew S. Friedman (SBN 005425)
afriedman@bffb.com
**BONNETT FAIRBOURN FRIEDMAN
  & BALINT PC**
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 776-5902

*Local Counsel for Movants FNY Partners Fund LP
and FNY Managed Accounts LLC*

Andrew J. Entwistle (*Pro Hac Vice* submitted)
aentwistle@entwistle-law.com
**ENTWISTLE & CAPPUCCI LLP**
401 Congress Avenue, Suite 1170
Austin, TX  78701
Telephone: (512) 710-5960

Robert N. Cappucci (*Pro Hac Vice* forthcoming)
rcappucci@entwistle-law.com
Jonathan H. Beemer (*Pro Hac Vice* forthcoming)
jbeemer@entwistle-law.com
Jessica A. Margulis (*Pro Hac Vice* forthcoming)
jmargulis@entwistle-law.com
**ENTWISTLE & CAPPUCCI LLP**
299 Park Avenue, 20th Floor
New York, NY 10171
Telephone: (212) 894-7200

*Counsel for Movants FNY Partners Fund LP and FNY
Managed Accounts LLC*

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Pranay K. Bajjuri, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Raytheon Technologies Corporation F/K/A Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood,<br><br>Defendants. | Case No.  4:20-cv-00468-JCH<br><br>**MOTION OF FNY PARTNERS FUND LP AND FNY MANAGED ACCOUNTS LLC FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFFS AND APPROVAL OF SELECTION OF LEAD COUNSEL AND MEMORANDUM OF POINTS OF AUTHORITIES IN SUPPORT THEREOF** |

Daniel Norris, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

Raytheon Technologies Corporation F/K/A Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood,

Defendants.

Case No.  4:20-cv-00543-RM

CLASS ACTION

# **TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES....................................................1

I.      PRELIMINARY STATEMENT ..........................................................................1

II.     FACTUAL BACKGROUND ..............................................................................3

III.    THE CLAIMS AND CLASS ASSERTED IN THE RELATED ACTIONS .........6

IV.     THE NEED FOR SEPARATE LEADERSHIP ....................................................7

V.      FIRST NEW YORK SHOULD BE APPOINTED LEAD PLAINTIFF ...............8

        A.      First New York Has Timely Moved for Appointment as Lead Plaintiff..........9

        B.      First New York Has the Largest Financial Interest in the Relief Sought .........9

        C.      First New York Satisfies Rule 23 ...............................................................10

                1.      First New York is Typical...............................................................10

                2.      First New York is Adequate ...........................................................11

VI.     THE COURT SHOULD APPROVE FIRST NEW YORK'S CHOICE OF COUNSEL..............................................................................................................11

VII.    THE RELATED ACTIONS SHOULD BE CONSOLIDATED .........................13

VIII.   CONCLUSION ...................................................................................................14

i

# **TABLE OF AUTHORITIES**

**Cases**

*Borteanu v. Nikola Corp.*,
   No. CV-20-01797-PHX-SPL, 2020 WL 7392795 (D. Ariz. Dec. 15, 2020) . 8, 9, 10, 11

*Hall v. Medicis Pharm. Corp*.,
   No. CV-08-1821-PHX-GMS, 2009 WL 648626 (D. Ariz. Mar. 11, 2009) ............ 10

*In re Cavanaugh*,
   306 F.3d 726 (9th Cir. 2002) ........................................................................... 3, 9

*In re Cohen*,
   586 F.3d 703 (9th Cir. 2009) .............................................................................. 11

*Lomingkit v. Apollo Educ. Grp. Inc.*,
   No. CV-16-00689-PHX-DLR, 2016 WL 3345514 (D. Ariz. June 16, 2016) ......... 11

*Schriver v. Impac Mortg. Holdings, Inc.*,
   No. SACV 06-31 CJC(RNBx), 2006 WL 6886020 (C.D. Cal. May 2, 2006) ........ 10

**Statutes**

15 U.S.C. § 78u ......................................................................................................... passim

**Rules**

Fed. R. Civ. P. 23 ................................................................................................... 10, 11

FNY Partners Fund LP and FNY Managed Accounts LLC ("First New York") hereby move this Court for entry of an Order pursuant to the Private Securities Litigation Reform Act of 1995 (the "PSLRA" or the "Act"), 15 U.S.C. § 78u4(a)(3)(B): (1) appointing First New York as lead plaintiff for a class consisting of investors who held stock in United Technologies Corporation (NYSE: UTX) ("UTC") at the time of its April 3, 2020 merger with Raytheon Company (the "UTC Class"); (2) approving First New York's selection of Entwistle & Cappucci LLP ("Entwistle & Cappucci") as Lead Counsel for the UTC Class; (3) consolidating the above-captioned actions (the "Related Actions"); and (4) granting such other and further relief as the Court may deem just and proper.

In support of this Motion, First New York submits herewith the following memorandum of points and authorities, the Declaration of Andrew J. Entwistle (the "Entwistle Decl.") and exhibits thereto, and such other written or oral argument as may be permitted by the Court.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.      PRELIMINARY STATEMENT**

Defendant Raytheon Technologies Corporation ("Raytheon Technologies" or the "Combined Company") is the product of an April 3, 2020 merger between two massive defense contractors, Raytheon Company ("Old Raytheon" or "Raytheon Company") and UTC (the "Merger"). In the Merger, Old Raytheon shareholders received 2.3348 shares of the Combined Company per share of Old Raytheon common stock, and UTC shareholders received one share of the Combined Company per share of UTC common stock. As discussed below, subsequent public disclosures by the Combined Company on October 27, 2020 revealed that Old Raytheon's apparent value and stock price was inflated at the time of the Merger due to, among other things, undisclosed issues with its financial accounting, internal controls over financial and cost reporting, and the likelihood that it (and its successor) would be subject to governmental scrutiny for these and other improprieties. This artificial inflation necessarily means that Old Raytheon shareholders received more of the Combined Company than they would have received had the truth been known, while

1

UTC shareholders received less of the Combined Company than they were entitled to or – put another way – UTC shareholders received less value for their shares of UTC common stock than they had been promised.

The two Related Actions pending in this District are securities class action lawsuits that arose in the wake of Raytheon Technologies' October 27, 2020 corrective disclosures. They allege that two groups of investors were harmed when the truth was revealed: (i) investors who unwittingly purchased Old Raytheon common stock prior to the Merger; and (ii) investors who unwittingly purchased Raytheon Technologies' common stock after Raytheon Technologies was created in the Merger and its stock listed on the NYSE as "RTX" but before the truth was revealed.[1]  As discussed below, the Related Actions are brought on behalf of a putative class that, by definition, not only includes these two purchaser groups, but also includes a third group of investors who, like First New York, held shares of UTC common stock at the time of the Merger and thereby acquired common stock in the Combined Company.  Yet, while the Related Actions allege economic injuries sustained by investors who purchased stock in Old Raytheon or the Combined Company, they do not assert claims on behalf of former UTC shareholders or articulate a theory of damages related to the Merger transaction.  The failure of the Related Actions to assert economic injury on behalf of former UTC shareholders only serves to underscore the fact that former UTC shareholders who acquired shares of common stock of the Combined Company require separate representation, and is the reason why First New York seeks appointment as lead plaintiff on behalf of a class of all such investors (*i.e.*, the UTC Class).

First New York respectfully submits that it is the presumptive "most adequate plaintiff" for the UTC Class under the PSLRA and should be appointed as lead plaintiff because it has timely moved for appointment, is the only movant to identify the injury suffered by former UTX shareholders who acquired shares in the Combined Company upon

---

[1] The Related Actions define "Raytheon" to include both the pre-Merger Raytheon Company (herein "Raytheon Company" or "Old Raytheon") and the newly formed Raytheon Technologies Corporation (herein "Raytheon Technologies" or the "Combined Company").

the Merger, and because it possesses the largest financial interest in this aspect of the litigation, having held 211,761 shares of UTC common stock when the Merger closed and the share exchange was effectuated on April 3, 2020.  *See* Entwistle Decl., Ex. A.  First New York has also retained experienced and competent counsel to represent the UTC Class.  As the "most adequate plaintiff" under the PSLRA, First New York's selection of Entwistle & Cappucci as lead counsel for the UTC Class should be approved.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Cavanaugh*, 306 F.3d 726, 734 (9th Cir. 2002) ("the [PSLRA] clearly leaves the choice of class counsel in the hands of the lead plaintiff").

## II.   FACTUAL BACKGROUND

### A.   The Subject Wrongdoing

Raytheon Technologies is one of the world's largest aerospace and defense contractors.  Defendants made a series of materially false and misleading statements over the course of more than four years concerning Old Raytheon's and its successor, Raytheon Technologies', internal controls over financial reporting, the integrity of their accounting practices and veracity of reported financial results, and their disclosure controls and procedures.  ¶¶ 19-20, 23-35.[2]  This misconduct artificially inflated the price of Old Raytheon's stock.  The misleading statements were substantively repeated in, and/or incorporated into, a joint proxy statement issued by Raytheon Company and UTC in September 2019 (the "Proxy"), soliciting votes from the shareholders of both companies in support of their proposed merger of equals.

Several months after merging with UTC, the Combined Company filed its third quarter 2020 Form 10-Q on October 27, 2020, disclosing for the first time the existence of a U.S. Department of Justice ("DOJ") investigation into the financial accounting, internal controls over financial reporting, and cost reporting of the Raytheon Missiles & Defense business segment (a major part of Old Raytheon) from 2009 (a decade before the Merger) to late 2020 (after UTC and Old Raytheon combined to form Raytheon Technologies). ¶ 36.

---

[2] "¶" refers to paragraphs in the complaint filed in the action captioned *Pranay K. Bajjuri v. Raytheon Technologies Corporation f/k/a Raytheon Company, et al.*, 4:20-cv-00468-JAS.

The Missiles & Defense business segment consisted of two of Raytheon Company's legacy businesses – Integrated Defense Systems and Missile Systems.  The Form 10-Q further disclosed that Raytheon Technologies had received a criminal subpoena from the DOJ on October 8, 2020 with respect to the investigation.  Simultaneous with the announcement of the DOJ investigation, Raytheon Technologies' third quarter 2020 Form 10-Q also disclosed that the U.S. Securities and Exchange Commission ("SEC") had issued a second subpoena concerning a pre-Merger investigation regarding improper payments made by Old Raytheon and its joint venture partner ThalesRaytheonSystems ("TRS") to secure contracts from Middle Eastern governments.  The SEC subpoena requested both information and documents concerning potential bribery payments by TRS in connection with securing TRS contracts in certain Middle East countries since 2014.  Following Raytheon Technologies' disclosures, its stock price dropped from $60.81 per share on October 26, 2020 to $56.53 on October 27, 2020.  The following day, Raytheon Technologies' stock price continued to drop, closing at $52.34 per share on October 28, 2020.  ¶ 37. In all, the share price of the Combined Company, Raytheon Technologies, dropped $8.47 on news of the escalation of the SEC's pre-Merger investigation into Old Raytheon's bribery and related misconduct and the opening of a new investigation by the DOJ into a decade of irregularities in Old Raytheon's financial reporting.

**B.  The Merger**

Old Raytheon and UTC negotiated and consummated the Merger while Old Raytheon's stock price and apparent value were inflated.  Specifically, on November 26, 2018, UTC publicly announced its intention to separate into three independent companies, through the spin-off of its Otis Worldwide Corporation and Carrier Global Corporation business units and UTC (which consisted of UTC's existing Aerospace Businesses and its contemporaneous acquisition of Rockwell Collins, a large avionics and information technology systems company).  Thereafter, Old Raytheon and UTC exchanged information regarding the valuation of both Old Raytheon and UTC's Aerospace Businesses.  This information included accounting and financial information from Raytheon Company's

4

Integrated Defense Systems and Missile Systems and was used to set the ratio at which ownership interests (shares) in UTC and Old Raytheon would be converted into ownership interests in the Combined Company. Because the Combined Company would have a market capitalization of approximately $100 billion, a change in this ratio of even one percent would shift the allocation of ownership in the Combined Company by approximately one billion dollars between shareholders of Raytheon Company and shareholders of UTC. Therefore, several high-profile financial firms evaluated the businesses and the companies engaged in extensive negotiations of the ultimate exchange ratio on that basis. The DOJ investigation and the SEC's renewed and continuing scrutiny of Old Raytheon's Missiles & Defense Businesses and its TRS joint venture – which were not disclosed to UTC shareholders in the Proxy or otherwise pre-Merger – directly contradicted Old Raytheon's representations and warranties in connection with the publicly disclosed Merger agreement.

On June 9, 2019, UTC and Raytheon Company announced their intent to combine via a merger of equals. As stated above, the Merger agreement provided that Raytheon Company shareholders would receive 2.3348 shares of the Combined Company for each share of Raytheon Company common stock owned as of the closing of the Merger. The UTC shareholders would receive one share in the new Combined Company for each share of UTC common stock they owned.[3] This would result in an ownership ratio in Raytheon Technologies Corporation of approximately 57% for former UTC shareowners (in aggregate) and approximately 43% for former Raytheon Company stockholders (in aggregate). After obtaining approval of regulators and the shareholders of both Raytheon Company and UTC, the Merger closed on April 3, 2020 at the negotiated exchange ratio.

---

[3] Structurally, the Merger agreement anticipated a transaction in which UTC spun off two businesses, a subsidiary of UTC merged with and into Raytheon Company, and Raytheon Company continued as the surviving corporation and a wholly owned subsidiary of UTC. The name of UTC would be changed to Raytheon Technologies Corporation and common stock of the Combined Company would be listed on the NYSE under the symbol "RTX." Each legacy Raytheon Company share would be converted into a right to receive 2.3348 shares of the Combined Company.

5

**C.**   **The Economic Injury to UTC Shareholders**

UTC shareholders were disadvantaged in the Merger by the inflation of Old Raytheon's stock price and apparent value because their interest in the Combined Company (individually and in aggregate) was proportionally reduced by the resulting exchange ratio. In other words, by revealing that Raytheon Company's stock had been inflated for the past several years, as alleged in the Related Actions, this corrective disclosure further revealed that the negotiated Merger exchange ratio of shares of UTC common stock for each share of Raytheon Company common stock was also artificially tilted in favor of legacy Raytheon Company shareholders.   Therefore, UTC shareholders' interests were diluted, and they came to own less of the Combined Company, as a result of the inflation in Raytheon Company's stock price and apparent value.   Accordingly, UTC shareholders received less value in exchange for their shares in UTC than they had been promised in the Merger as a result of Defendants' wrongdoing.

**III.**   **THE CLAIMS AND CLASS ASSERTED IN THE RELATED ACTIONS**

The two Related Actions, now pending in this District, assert claims under Sections 10(b) and 20(a) of the Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240 10b-5, against Raytheon Technologies, Raytheon Company, Raytheon Company's Executive Chairman Thomas A. Kennedy, Raytheon Company's Chief Financial Officer Anthony F. O'Brien and Raytheon Company's Vice President and Controller Michael J. Wood ("Defendants"). These securities class action lawsuits arose in the wake of Raytheon Technologies' October 27, 2020 disclosure of:  (i) a criminal investigation initiated by the DOJ concerning financial accounting, internal controls over financial and cost reporting with respect to the Raytheon Missiles & Defense operating segment, and the receipt of a subpoena related to that investigation; and (ii) the receipt of the second subpoena from the SEC concerning the pre-Merger TRS joint venture.

The Related Actions are brought on behalf of a class that includes all persons or entities that purchased or *otherwise acquired* publicly traded securities of "Raytheon" (i.e.,

pre-Merger Raytheon Company and/or the combined Raytheon Technologies between February 10, 2016 and October 27, 2020, inclusive (the "Class" and "Class Period")). This Class, by definition, includes not only investors who purchased stock of Raytheon Company and Raytheon Technologies, but also those who, like First New York, *acquired* Raytheon Technologies stock in the April 3, 2020 Merger transaction between Raytheon Company and UTC in exchange for their stock in UTC (*i.e.*, the UTC Class). The facts alleged in the Related Actions inescapably command the conclusion that harm occurred to these UTC shareholders at the time of the Merger. However, the Related Actions do not seek to redress such harm, instead focusing only on harm suffered by investors who purchased shares of either the new Combined Company or Old Raytheon. The Related Actions do not plead that UTC shareholders were economically harmed by the inflation of Raytheon Company's stock at the time of the Merger because they received less value for their shares in UTC when they "*otherwise acquired*" shares in the Combined Company, Raytheon Technologies. Nor do the Related Actions plead that the UTC shareholders suffered an increased dilution of their ownership interest because the negotiated exchange ratio assumed the truth of Defendants' statements about Raytheon Company's financial condition and the adequacy of its internal controls — again, despite the fact such dilution is manifest.

## IV.   THE NEED FOR SEPARATE LEADERSHIP

First New York has filed the present lead plaintiff application to protect and advance the interests of itself and other UTC shareholders that exchanged their shares in the Merger at an exchange ratio skewed by the inflation of Raytheon Company's stock price and then-apparent value (*i.e.*, the UTC Class). First New York is eminently qualified to prosecute these claims against Defendants, having noted their absence in any of the Related Actions and having sought appointment for the purpose of preserving, investigating, asserting and prosecuting such claims. First New York is diligently investigating all possible claims against Defendants based on the facts alleged in the Related Actions, upon other publicly known facts, and in consultation with an expert economist, recently retained through

7

counsel, who has confirmed that the economic injury to UTC Class members in connection with the Merger can be calculated mathematically based on the inflation of Old Raytheon's stock price.  If appointed, First New York is prepared to vigorously prosecute claims on behalf of former UTC shareholders injured in the Merger through Defendants' material misstatements, thoroughly develop such claims in fact and expert discovery, prove these claims at trial, and ensure that the claims are fairly considered in any allocation of judgment or settlement proceeds.

Separate representation is warranted for investors who acquired Raytheon Technologies stock by virtue of their UTC stock holdings at the time of its Merger with Raytheon Company (*i.e.*, the UTC Class) for several reasons.  First, the plaintiffs in the Related Actions have not articulated specific claims on behalf of these investors; separate leadership by First New York will remedy this neglect going forward.  Second, UTC Class members were economically harmed in a way that is related to, but distinct from, the harm suffered by purchasers of Raytheon Technologies stock.  Third, UTC Class members will require discovery and damages analysis regarding the appropriate exchange ratio, the financial impact of the UTC spin-offs and the effect of Raytheon Company's stock inflation on the negotiated exchange ratio – issues that the Raytheon Technologies purchasers may not be incented to develop and may indeed be incented to downplay in order to maximize their own recovery.

## V.   FIRST NEW YORK SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA governs the appointment of lead plaintiffs in this action.  *See* 15 U.S.C. §§ 78u-4(a)(1) and (a)(3)(B).  Under the PSLRA, the "party who files the action must publicize its pendency, the proposed class period, and the nature of the claims . . . The publication must also inform potential class members that they have 60 days to come forward and move to be appointed lead plaintiff."  *Borteanu v. Nikola Corp.*, No. CV-20-01797-PHX-SPL, 2020 WL 7392795, at *3 (D. Ariz. Dec. 15, 2020) (citing 15 U.S.C. § 78u-4(a)(3)(A)).

In appointing lead plaintiffs, the Court is tasked with identifying the class member or members "most capable of adequately representing the interests of class members." 15 U.S.C. § 78u-4(a)(3)(A)(i). The PSLRA establishes a presumption that the "most adequate plaintiff" is the "person or groups of persons" that has the "largest financial interest in the relief sought by the class" and otherwise satisfies the requirements of Rule 23. *Borteanu*, 2020 WL 7392795, at \*3. This presumption is rebuttable only upon proof that the presumptive lead plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id*. at \*4; *see also* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

First New York believes it has the largest financial interest in the relief sought by the UTC Class. First New York and its counsel also have significant experience litigating complex securities class actions, including actions alleging securities fraud in connection with business combinations.

### A. First New York Has Timely Moved for Appointment as Lead Plaintiff

The PSLRA's first requirement is simple: file a complaint or a timely motion. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Here, notice was published on October 30, 2020. *See* Entwistle Decl., Ex. B. Accordingly, the deadline to file a motion for appointment as lead plaintiff is December 29, 2020. First New York is filing this motion on December 29, 2020. Accordingly, First New York's motion is timely, and the PSLRA's first requirement is satisfied.

### B. First New York Has the Largest Financial Interest in the Relief Sought

The PSLRA's second requirement concerns the relative financial interests of those seeking appointment as lead plaintiffs. To establish the "most adequate plaintiff," courts in this Circuit "compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Cavanaugh*, 306 F.3d 726 at 730.

Here, First New York believes it has the largest financial interest in the relief sought by the UTC Class. First New York held 211,761 shares of UTC common stock on April 3, 2020, when the Merger closed (which became shares in the Combined Company, Raytheon

Technologies). First New York is presently unaware of any other UTC Class member with a larger financial interest in the outcome of this litigation that has sought to be appointed lead plaintiff. First New York is therefore presumptively the most adequate lead plaintiff for the UTC Class.

**C.    First New York Satisfies Rule 23**

The PSLRA also dictates that the potential lead plaintiff "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B).    Rule 23(a) lists four requirements for certifying a class: numerosity, commonality, typicality, and adequacy. *See Hall v. Medicis Pharm. Corp*., No. CV-08-1821-PHX-GMS, 2009 WL 648626, at \*2 (D. Ariz. Mar. 11, 2009) (internal citations omitted).

At the lead plaintiff stage, the presumptive lead plaintiff need only make a preliminary showing that it meets the adequacy and typicality requirements of Rule 23. *See*, *e.g*., *Borteanu*, 2020 WL 7392795, at \*4 ("[t]he typicality and adequacy requirements of Rule 23 are the only requirements relevant to the selection of a lead plaintiff"); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at \*5 (C.D. Cal. May 2, 2006) ("At the lead plaintiff appointment stage, the Rule 23 inquiry is not as searching as it would be on a motion for class certification; the prospective lead plaintiff need only make a *prima facie* showing that it meets the typicality and adequacy factors.").

As set forth below, First New York satisfies Rule 23's typicality and adequacy requirements.

**1.    First New York is Typical**

A class representative's claims or defenses must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same

course of conduct." *Borteanu*, 2020 WL 7392795, at *4; *see also Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689-PHX-DLR, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016).

Like the other UTC Class members, First New York held shares of United Technologies on April 3, 2020 that were exchanged in the Merger and suffered injury as a result of Defendants' false and misleading statements and omissions of material fact and the attendant inflation of Raytheon Company's stock price and apparent value. Accordingly, First New York meets the typicality test of Rule 23 as it has suffered the same injury as other Class members.

### 2. First New York is Adequate

Representative parties must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The test for adequacy is whether: (1) "the proposed lead plaintiff's interests are in common with, and not antagonistic to, those of the class; and (2) proposed lead plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation." *Borteanu*, 2020 WL 7392795, at *4.

First New York meets these requirements. First New York held significant quantities of UTC shares that were exchanged in the Merger. Such substantial holdings ensure that First New York is highly invested in the outcome of the litigation and that its interests are aligned with the interests of other Class members. There is also no indication of antagonism between First New York and members of the UTC Class. Finally, First New York's proposed counsel is qualified and competent; as detailed in the next section, Entwistle & Cappucci has significant experience and success prosecuting securities class actions and other complex securities and financial fraud cases. For these reasons, First New York is more than an adequate lead plaintiff.

## VI. <u>THE COURT SHOULD APPROVE FIRST NEW YORK'S CHOICE OF COUNSEL</u>

The PSLRA vests authority in the lead plaintiff to "select and retain lead counsel," subject to this Court's approval. 15 U.S.C. § 78u-4(a)(3)(B)(v); *see also In re Cohen*, 586 F.3d 703, 711-12 (9th Cir. 2009) ("if the lead plaintiff has made a reasonable choice of

11

counsel, the district court should generally defer to that choice").[4]  Here, First New York has chosen lead counsel with extensive experience and history of success in numerous important actions on behalf of injured investors.  Its selection of counsel should be approved.

Entwistle & Cappucci is among the preeminent securities class action law firms in the country, with offices in Texas and New York.  *See* Entwistle Decl., Ex. C.  The Firm has extensive experience successfully prosecuting some of the largest and most complex class actions in history and has distinguished itself as one of the nation's premier complex litigation firms, regularly pursuing multi-jurisdictional cases against well-funded opponents, including large corporations and financial institutions.  The Firm has served in a leadership capacity in some of the highest-profile securities litigation matters in recent years, recovering over $4 billion for its clients and other investors.

Significant cases in which Entwistle & Cappucci served in a leadership capacity and obtained noteworthy recoveries on behalf of the respective classes include *In re Cobalt International Energy, Inc. Securities Litigation*, No. 14-cv-3428 (S.D. Tex.), in which the Firm prosecuted federal securities law claims against oil and gas company Cobalt International Energy, Inc. and related defendants.  The Firm recovered $169.35 million in cash, in addition to $220 million payable from director and officer liability policies on behalf of a class of Cobalt investors.  Entwistle & Cappucci also represented a class of investors in derivative securities in *In re Allergan, Inc. Proxy Violation Derivatives Litigation*, No. 17-cv-04776 DOC (KESx) (C. D. Cal.), which was litigated in coordination with a parallel action on behalf of investors in Allergan common stock.  In that case, which arose in connection with a failed takeover bid, Entwistle & Cappucci negotiated a $40 million settlement on behalf of the derivatives class.  Also, in *In re MF Global Holdings Ltd. Investment Litigation*, No. 12-md-2338-VM (S.D.N.Y.), Entwistle & Cappucci, as Co-Lead Counsel for the worldwide class of MF Global commodities investors, worked with

---

[4] As set forth in the PSLRA, Courts should not disturb the lead plaintiff's choice of counsel unless necessary to "protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

12

the trustee appointed under the Securities Investor Protection Act ("SIPA") to recover all $1.6 billion in net equity lost by commodity customers after the collapse of MF Global. Other significant cases in which Entwistle & Cappucci served in a leadership capacity and obtained significant recoveries on behalf of the respective classes include:

- *In re Royal Ahold Securities Litigation*, No. 03-md-01539-CCB (D. Md.), in which Entwistle & Cappucci served as Lead Counsel representing the Public Employees' Retirement Association of Colorado as Lead Plaintiff, recovering a $1.1 billion partial settlement of the action, representing approximately 40% of estimated provable damages;

- *In re Tremont Securities Law, State Law, & Insurance Litigation*, No. 08-cv-11117-TPG (S.D.N.Y.), where Entwistle & Cappucci – again collaborating with the SIPA trustee – worked to structure and negotiate the resolution of the litigation, securing a $2.9 billion dollar bankruptcy claim, and an additional $100 million settlement; and

- *Shapiro v. JPMorgan Chase, et al.*, No. 11-cv-8331 (S.D.N.Y.), where Entwistle & Cappucci – collaborating with the liquidation trustee for Bernard L. Madoff Investment Securities and the United States Attorneys' Office – worked to structure and negotiate the resolution of claims against JPMorgan Chase & Co. for failure to disclose or report to investors facts related to the Madoff Ponzi scheme, resulting in contemporaneous and related settlements totaling $2.243 billion.

Accordingly, the Court should approve First New York's selection of Entwistle & Cappucci as Lead Counsel.

## VII.   THE RELATED ACTIONS SHOULD BE CONSOLIDATED

The PSLRA requires that prior to the appointment of a lead plaintiff, a court should consolidate securities class actions brought "on behalf of a class asserting substantially the same claim or claims."   15 U.S.C. § 78u-4(a)(3)(B)(ii).   Under Federal Rule of Civil

13

Procedure 42(a), a court may consolidate actions "if [the] actions before the court involve a common question of law or fact."

Here, the captioned Related Actions involve the same operative facts, assert overlapping claims for violations of the Exchange Act, and name the same Defendants. Consolidation would avoid duplicative discovery, motion practice, and other proceedings that will result if the Related Actions are not consolidated. Therefore, in the interests of judicial efficiency and economy, the Related Actions should be consolidated for all purposes.

## VIII.  **CONCLUSION**

For the foregoing reasons, First New York respectfully requests that the Court: (1) appoint First New York as Lead Plaintiff for a class consisting of investors that held UTC stock at the time of UTC's April 3, 2020 Merger with Raytheon Company pursuant to 15 U.S.C. § 78u-4(a)(3)(B) (the UTC Class); (2) approve First New York's selection of Entwistle & Cappucci as Lead Counsel for the UTC Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); (3) consolidate the above-captioned Related Actions; and (4) grant such other and further relief as the Court may deem just and proper.

Dated:  December 29, 2020                    Respectfully submitted,


                                             */s/ Andrew S. Friedman*____
                                             Andrew S. Friedman (State Bar No. 005425)
                                             afriedman@bffb.com
                                             BONNETT FAIRBOURN FRIEDMAN &
                                             BALINT PC
                                             2325 E. Camelback Road, Suite 300
                                             Phoenix, AZ 85016
                                             Telephone: (602) 776-5902

                                             Andrew J. Entwistle (*Pro Hac Vice* submitted)
                                             aentwistle@entwistle-law.com
                                             ENTWISTLE & CAPPUCCI LLP
                                             401 Congress Avenue, Suite 1170
                                             Austin, TX  78701
                                             Telephone: (512) 710-5960

                                             Robert N. Cappucci (*Pro Hac Vice*
                                             forthcoming)
                                             rcappucci@entwistle-law.com
                                             Jonathan H. Beemer (*Pro Hac Vice*
                                             forthcoming)
                                             jbeemer@entwistle-law.com
                                             Jessica A. Margulis (*Pro Hac Vice*
                                             forthcoming)
                                             jmargulis@entwistle-law.com
                                             ENTWISTLE & CAPPUCCI LLP
                                             299 Park Avenue, 20th Floor
                                             New York, NY 10171
                                             Telephone: (212) 894-7200

15