# EXHIBIT D



**STATE TEACHERS
RETIREMENT SYSTEM
OF OHIO**

# Board
# Policies

# Dec. 19, 2019

**State Teachers Retirement System of Ohio**
**("STRS Ohio" or "Retirement System")**
**BOARD POLICIES**

## INDEX

Page

Policy Type: Ends
*Purpose* ............................................................................................................. 1
*Investments* ...................................................................................................... 2
*Member Benefits* ............................................................................................. 3
*Funding* ......................................................................................................... 4-5
*Health Care Plan* .......................................................................................... 6-7

Policy Type: Governance Process
*Governing Style* ............................................................................................... 8
*Board Member Education* ........................................................................... 9-11
*Board Member Travel and Expenses* ...................................................... 12-13
*Board Job Description* .................................................................................... 14
*Board Attendance* ........................................................................................... 15
*Officers, Term of Office, Duties* ............................................................... 16-17
*Committee Principles* ................................................................................ 18-19
*Committee Charters* ....................................................................................... 20
*Audit Committee Charter* ......................................................................... 21-22
*Final Average Salary Committee Charter* .................................................... 23
*Health Care Committee Charter* .................................................................... 24
*Investment Committee Charter* ...................................................................... 25
*Staff Compensation and Benefits Committee Charter* .................................. 26
*Retirement Board Elections* ........................................................................... 27
*Actuarial Soundness* ...................................................................................... 28
*Public Participation at Board Meetings* ....................................................... 29
*Board Members' Code of Conduct* .................................................................. 30
*Board Member Removal Policy* ...................................................................... 31
*Board Self-Evaluation* .................................................................................... 32

Policy Type: Board-Executive Director Relationship
*Delegation to the Executive Director* .............................................................. 33
*Executive Director's Job Description* .............................................................. 34
*Employment of Executive Director* ................................................................. 35
*Executive Director Evaluation* ....................................................................... 36
*Monitoring Executive Performance* ........................................................... 37-38

Policy Type: Executive Director Limitations
*Operational Financial Planning* ..................................................................... 39
*Operational Financial Condition* ................................................................... 40
*Operational Asset Protection* ..................................................................... 41-42
*Investment Asset Protection* ........................................................................... 43
*Business Continuity Planning* ........................................................................ 44
*Communication and Counsel to the Board* .................................................... 45
*Succession Planning* ....................................................................................... 46
*Emergency Executive Succession* ................................................................... 47
*Compensation and Benefits* ............................................................................ 48
*Staff Treatment* ............................................................................................... 49
*General Executive Constraints* ....................................................................... 50
*Associate Conduct* ........................................................................................... 51

## Appendices

A.  Position Description for State Teachers Retirement Board Members ......................53-55
B.  State Teachers Retirement System Ethics Policy ......................................................56-58
C.  Metrics to Guide Funding Policy ...............................................................................59-62
D.  Metrics to Guide Health Care Plan Management Policy...........................................63-67
E.  STRS Ohio Securities Litigation Guidelines ............................................................68-72

**Appendix E**



# Securities Litigation Guidelines

## I.    RATIONALE

In December 1995, Congress passed the Private Securities Litigation Reform Act of 1995 ("PSLRA").   Congress intended to discourage "meritless" securities class action litigation, to discourage the practice of small individual investors becoming "professional plaintiffs", to discourage lawyer-driven litigation, and to encourage the most capable representatives of the plaintiff class to participate in class action litigation, who, in turn, would be most capable of exercising supervision and control of the lawyers and their fees.   The PSLRA creates a presumption that the investor with the largest financial interest in the relief sought by the class is the "most adequate plaintiff".

The State Teachers Retirement System of Ohio ("STRS Ohio" or "System") recognizes that securities class action litigation can affect the value of the System's assets, that actions by fiduciaries relating to this type of litigation have been demonstrated to materially enhance the value of assets over time, and that public pension funds have been particularly effective when taking an active role in securities litigation.  These guidelines are intended to help ensure STRS Ohio takes prudent, effective, appropriate and efficient actions to protect and increase the value of System investments, and to assure STRS Ohio receives all distributions to which the System is entitled as the result of the resolution of securities class action litigation.  STRS Ohio will take only those actions which make prudent use of System resources, and which are in the best interests of STRS Ohio's participants and beneficiaries.

## II.    IDENTIFICATION OF POTENTIAL CLAIMS

A.  The Chief Legal Officer may from time to time be made aware by sources such as law firms, news reports and other public pension funds, of potential securities cases. If the Chief Legal Officer forms the opinion it is possible STRS should play an active role in such a case, the Chief Legal Officer will confer with the Executive Director, and Chief Investment Officer and Ohio Attorney General's Office ("AGO") if appropriate, about the case.

B.  The AGO may, from time to time, recommend STRS Ohio take an active role in a securities case.  In such an instance the Chief Legal Officer will confer with the Executive Director, and Chief Investment Officer if appropriate, about the recommendation.

C.  Investment staff may, from time to time, identify a securities case in which investment staff believes STRS Ohio should take an active role.  Investment staff will advise the Chief Legal Officer of same, who in turn will confer with the Executive Director, and AGO if appropriate.

## III.    EVALUATION OF POTENTIAL CLAIMS

A.  If STRS Ohio bought or sold securities during a period of time applicable to a particular securities case, staff will weigh the materiality of the potential financial loss giving rise to the litigation and the benefits likely to be derived from the litigation against the expected costs and resources necessary to pursue the various options available. Those litigation options generally are:

1. Monitoring the course of a class action and filing a claim(s) at the end to participate in a class' recovery.

2. Monitoring the course of a class action and reviewing the settlement at the resolution of the case to determine whether an objection is warranted.

3. Seeking to control a class action by seeking designation as lead plaintiff, either unilaterally or with other investors.

4. Opting out of a class action and filing a separate suit, either unilaterally or with other investors.

5. Requesting that the AGO pursue an appropriate criminal action.

6. Seek corporate governance changes at the company in question without resorting to litigation.

7. Supporting another lead plaintiff.

8. Negotiating a monitoring agreement with the likely lead plaintiff/lead counsel allowing STRS Ohio access to discovery materials, privileged updates on the status of the case, the option to participate in settlement discussions, and a right to obtain full information on legal fees and costs.

9. Filing a notice of appearance in the case, monitoring it and appearing at important hearings if prudent.

B. For any case in which staff recommends STRS Ohio take an active role, the Chief Legal Officer or, at the Chief Legal Officer's request, a representative of the AGO will report such a recommendation to the Board and request authorization to pursue the recommended course of action.

C. If the AGO recommends STRS Ohio take an active role in a securities case, and STRS Ohio's staff does not agree with that recommendation, the Chief Legal Officer or Executive Director will so advise the Board's Chair.  The Board's Chair, or his/her designee, may invite a representative of the AGO to present its recommendation to the Board. In such an instance, the AGO should be prepared to discuss the following factors:

1. The qualifications and track record of the special counsel appointed by the AGO.

2. The terms and the justification of the final fee agreement reached with the special counsel, including a comparison to market rates.

3. The strength of the case's causes of action.

4. Whether the case is likely to be pursued if STRS Ohio does not take action.

70

5. Sources of recovery.

6. Whether another sophisticated lead plaintiff is likely to come forward to manage the case.

7. Reputation and skill of lead counsel utilized by the alternative lead plaintiff.

8. Indications that the alternative lead plaintiff's lead counsel would seek a fee award in excess of market rates.

9. Unusual circumstances that could complicate or undermine the System's position.

10. Exposure to criticism regarding STRS Ohio's investment decision.

D. In general, the interests of the System will not be served by competing with other public funds or institutional investors with comparable interests for control of a class action.

E. In order to provide for the efficient operation of the System, STRS Ohio will not typically consider taking an active role in securities cases in which the System's losses are less than $ 10 million.

F. The authority to initiate or resolve securities cases rests solely with the STRS Ohio Board or its express designee.

## IV.  MONITORING

A. The Chief Legal Officer, or his designee, will serve as the link between STRS Ohio and the AGO or special counsel appointed by the AGO.  The Chief Legal Officer, or his designee, will attend meetings of the AGO and counsel from Ohio's other public retirement systems (from time to time such meetings are referred to as the Significant Litigation Advisory Panel) and such other meetings or conference calls as may be necessary to monitor the securities cases relevant to STRS Ohio.

B. The Chief Legal Officer, or his designee, will direct special counsel appointed by the AGO to try securities cases on behalf of STRS Ohio, and will oversee STRS Ohio's securities litigation docket, including review of significant pleadings and attendance at such meetings, settlement negotiations, mediations or court dates as are in the best interest of the System.

C. The Chief Legal Officer or, at the Chief Legal Officer's request, a representative of the AGO will report to the Board on any recommendations for STRS Ohio to take an active role in a securities case, any significant developments in a securities case and any requests to settle a pending securities case.

D. The investment staff , in conjunction with the System's custodian or sub-custodian when appropriate, will monitor pending securities cases and develop and implement a comprehensive and consistent procedure to ensure any and all eligible proofs of claim are filed timely and accurately and all recoveries for which STRS Ohio is eligible are received.  Investment staff will provide reports of

71

securities litigation recoveries as may from time to time be requested by the Chief
Legal Officer, Executive Director or Board.