Andrew S. Friedman (SBN 005425)
afriedman@bffb.com
**BONNETT FAIRBOURN FRIEDMAN**
 **& BALINT PC**
2325 E. Camelback Road, Suite 300
Phoenix, AZ 85016
Telephone: (602) 776-5902

*Local Counsel for Movants FNY Partners Fund LP*
*and FNY Managed Accounts LLC*

Andrew J. Entwistle (*Pro Hac Vice* submitted)
aentwistle@entwistle-law.com
**ENTWISTLE & CAPPUCCI LLP**
401 Congress Avenue, Suite 1170
Austin, TX  78701
Telephone: (512) 710-5960

*Counsel for Movants FNY Partners Fund LP and*
*FNY Managed Accounts LLC*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| Pranay K. Bajjuri, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Raytheon Technologies Corporation F/K/A Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood, <br><br> Defendants. | Case No.  4:20-cv-00468-JCH <br><br> **MEMORANDUM OF FNY PARTNERS FUND LP AND FNY MANAGED ACCOUNTS LLC IN FURTHER SUPPORT OF THEIR MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS** |
| Daniel Norris, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Raytheon Technologies Corporation F/K/A Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood, <br><br> Defendants. | Case No.  4:20-cv-00543-RM <br><br><br> CLASS ACTION |

# **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ..........................................................................................1

II.     RELEVANT BACKGROUND..........................................................................................3

ARGUMENT...............................................................................................................................3

I.      THE FUNDAMENTAL CONFLICT BETWEEN THE UTC CLASS AND
        THE RAYTHEON CLASS REQUIRES SEPARATE REPRESENTATION
        OF EACH ....................................................................................................................3

II.     FIRST NEW YORK SHOULD BE APPOINTED AS LEAD PLAINTIFF
        FOR THE UTC CLASS ................................................................................................6

III.    CONCLUSION ............................................................................................................8

i

# TABLE OF AUTHORITIES

**Cases**

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
    247 F.R.D. 156 (C.D. Cal. 2007) ..................................................................................... 4, 5

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997) ......................................................................................................... 2, 6

*Auto Ventures, Inc. v. Moran*,
    No. 92-426-CIV-KEHOE, 1997 WL 306895 (S.D. Fla. Apr. 3, 1997) ................... 5

*Bieneman v. City of Chicago*,
    864 F.2d 463 (7th Cir. 1988) ............................................................................................ 4

*Borteanu v. Nikola Corp.*,
    CV-20-01797-PHX-SPL, 2020 WL 7392795 (D. Ariz. Dec. 15, 2020) .................. 8

*Brown v. Am. Airlines, Inc.*,
    285 F.R.D. 546 (C.D. Cal. 2011) ..................................................................................... 4

*Dewey v. Volkswagen Aktiengesellschaft*,
    681 F.3d 170 (3d Cir. 2012) .............................................................................................. 4

*Hassine v. Jeffes*,
    846 F.2d 169 (3d Cir. 1988) .............................................................................................. 7

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    No. 07-cv-05944-JST, 2020 WL 1873554 (N.D. Cal. Mar. 11, 2020) ................ 2, 6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .............................................................................................. 7

*In re Literary Works in Elec. Databases Copyright Litig.*,
    654 F.3d 242 (2d Cir. 2011) .......................................................................................... 2, 6

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015),
     *aff'd*, 821 F.3d 410 (3d Cir. 2016) ............................................................................... 4

*In re Party City Sec. Litig.*,
    189 F.R.D. 91 (D.N.J. 1999) ............................................................................................ 4

*Lomingkit v. Apollo Educ. Grp. Inc.*,
    No. CV-16-00689-PHX-DLR, 2016 WL 3345514 (D. Ariz. June 16, 2016) .......... 8

*Ortiz v. Fibreboard Corp.*,
    527 U.S. 815 (1999) ......................................................................................................... 2, 6

*Phillips v. Klassen*,
    502 F.2d 362 (D.C. Cir. 1974) .......................................................................................... 5

*Pickett v. Iowa Beef Processors*,
    209 F.3d 1276 (11th Cir. 2000) ........................................................................................ 4

*Rodriguez v. West Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009)................................................................................ 5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003)................................................................................ 5

*Valley Drug Co. v. Geneva Pharm., Inc.*,
    350 F.3d 1181 (11th Cir. 2003)............................................................................ 4

**Statutes**

15 U.S.C. § 78u .................................................................................................... 8

**Other Authorities**

3 Newberg on Class Actions § 7:31
    (5th ed.)............................................................................................................... 6

C. Wright & A. Miller,
    *Federal Practice & Procedure* § 1768 (3d. ed. 2010) ........................................ 5

**Rules**

Fed. R. Civ. P. 23................................................................................................ 3, 7

First New York respectfully submits this memorandum in further support of its motion for appointment as Lead Plaintiff for the UTC Class and related relief (ECF No. 12), and in opposition to the competing motions for appointment as Lead Plaintiff (ECF Nos. 9, 11, 13 and 14) insofar as they seek to represent the UTC Class.

## I.    PRELIMINARY STATEMENT

The Related Actions assert clams on behalf of a class that includes two distinct groups of investors that were harmed by Defendants' material misstatements and omissions: (i) investors that purchased Old Raytheon securities (prior to the Raytheon-UTC Merger) or Raytheon Technologies securities (following the April 3, 2020 Merger) at inflated prices (the "Raytheon Class"); and (ii) investors that held shares of UTC common stock at the time of the Merger whose interests in the Combined Company were excessively diluted due to the artificial inflation in Old Raytheon's stock price (the "UTC Class").

The interests of the UTC Class and those of the Raytheon Class are fundamentally in conflict because every dollar of inflated value received by Old Raytheon shareholders in the Merger is a dollar of value lost by holders of UTC stock at the time of the Merger. First New York has specifically moved solely for appointment as Lead Plaintiff for the UTC Class to protect the interests of the UTC Class.

The October 27, 2020 corrective disclosures revealed that Old Raytheon's stock price had been inflated pre-Merger by a series of false statements concerning the effectiveness of its internal controls over financial and cost reporting, its purported compliance with applicable laws and the likelihood of regulatory investigation. Members of the Raytheon Class that tendered their Old Raytheon shares in the Merger did so based on Old Raytheon's inflated stock price and thereby received a disproportionate interest in the Combined Company.

Because of the "zero-sum" nature of the exchange of shares in the Merger transaction – an exchange that harmed the UTC Class while benefitting members of the Raytheon Class – the interests of the UTC Class are directly antagonistic to the interests of the Raytheon Class. This antagonism constitutes a fundamental conflict that requires separate Lead

1

Plaintiff representation from the outset due to the fundamentally distinct nature of the claims. The distinct and antagonistic claims of the UTC Class and the Raytheon Class: concern trading in two different securities; will require separate consolidated amended complaints; involve different elements of proof and different discovery; and will require the development of different and conflicting damages models. Appointing a separate Lead Plaintiff and Lead Counsel for the UTC Class at this critical phase of the case is precisely the action required by the Supreme Court's admonition that courts provide structural assurances of fair and adequate representation to absent class members. *See, e.g.*, *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856–57 (1999) (holding that intra-class conflict "require[d] division into homogeneous subclasses . . . with separate representation to eliminate conflicting interests"); *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 627 (1997) (denying class certification where settlement was not agreed to by representatives of all sub-classes); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-05944-JST, 2020 WL 1873554, at *3 (N.D. Cal. Mar. 11, 2020) (appointing separate counsel and devising two subclasses to cure fundamental conflict and adequacy problems between claimants that received a recovery in the settlement and claimants that received no recovery in the settlement but released their claims); *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 249 (2d Cir. 2011) (appointing separate counsel and class representatives to resolve fundamental conflicts).

First New York should be appointed to prosecute the claims of the UTC Class because:

- it is the only movant that has recognized, developed and investigated those claims;

- it is the only movant that has recognized the fundamental conflict between the UTC Class and the Raytheon Class;

- it is the only movant that explicitly and exclusively seeks to represent the claims of the UTC Class; and

- it possesses a significant financial interest in such claims and readily satisfies the requirements of Fed. R. Civ. P. 23.

## II.    RELEVANT BACKGROUND

Pending before the Court are four motions seeking appointment as Lead Plaintiff in the Related Actions.  Of the competing movants, First New York is the only movant to recognize the claims of legacy UTC shareholders that exchanged their shares in the April 3, 2020 Merger and acquired Raytheon Technologies shares on that date (defined above as the "UTC Class").  Indeed, First New York is the only movant to explicitly seek separate representation of such UTC shareholders.

The remaining movants have each sought appointment for a class comprised of purchasers of Old Raytheon securities from February 10, 2016 until the Merger and purchasers of Raytheon Technologies securities from the closing of the Merger on April 3, 2020 to October 27, 2020 (defined above as the "Raytheon Class").[1]  First New York does not seek to represent the Raytheon Class and the question as to who may be the most adequate Lead Plaintiff to represent the Raytheon Class is irrelevant to this application. This is because the interests of the UTC Class and those of the Raytheon Class are fundamentally opposed to one another.  Simply put, in this "zero-sum-game" every dollar of inflated value received by members of the Raytheon Class in the Merger is a dollar of value lost by holders of UTC stock at the time of the Merger.

## ARGUMENT

## I.    THE FUNDAMENTAL CONFLICT BETWEEN THE UTC CLASS AND THE RAYTHEON CLASS REQUIRES SEPARATE REPRESENTATION OF EACH

The fundamental conflict between the UTC Class and the Raytheon Class means that a Lead Plaintiff representing the Raytheon Class is neither adequate nor typical with respect to the UTC Class.  *See* Fed. R. Civ. P. 23(a). To establish damages, the UTC Class will

---

[1] The motions seeking leadership of the Raytheon Class were filed by: (1) Kee Chun Hon (ECF No. 9); (2) Charles M. Francisco (ECF No. 11-1); (3) Heavy & General Laborers' Locals 472 & 172 Annuity Fund (ECF No. 13); and (4) State Teachers Retirement System of Ohio ("STRS") (ECF No. 14).  Subsequently, Kee Chun Hon withdrew its lead plaintiff motion. *See* ECF No. 15.

3

need to plead and prove that Old Raytheon's stock price was artificially inflated at the time of the Merger, the exchange ratio was skewed in favor of Old Raytheon shareholders and the corrective disclosures revealed that UTC shareholders had grossly overpaid for Old Raytheon.

The claims of the Raytheon Class are, therefore, directly opposed to the claims of the UTC Class because the Raytheon Class actually profited from the harm caused to the UTC Class when it received a disproportionate share of the Combined Company. The fact that the UTC Class was "harmed by the same conduct that benefitted [Old Raytheon shareholders]" renders the conflict "fundamental." *Brown v. Am. Airlines, Inc.*, 285 F.R.D. 546, 558 (C.D. Cal. 2011) (quoting *Valley Drug Co. v. Geneva Pharm., Inc.*, 350 F.3d 1181, 1198 (11th Cir. 2003)); *see also Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, 247 F.R.D. 156, 177 (C.D. Cal. 2007); *In re Nat'l Football League Players' Concussion Injury Litig.*, 307 F.R.D. 351, 376 (E.D. Pa. 2015), *aff'd*, 821 F.3d 410 (3d Cir. 2016) ("[a] fundamental conflict exists where some [class] members claim to have been harmed by the same conduct that benefitted other members of the class") (citing *Dewey v. Volkswagen Aktiengesellschaft*, 681 F.3d 170, 184 (3d Cir. 2012)); *In re Party City Sec. Litig.*, 189 F.R.D. 91, 108 (D.N.J. 1999) (finding conflict between in-and-out and retention plaintiffs because retention plaintiffs would have effectively been suing themselves).

Where this fundamental conflict exists, a Lead Plaintiff representing one directly antagonistic class is simply not adequate to represent the other. *See, e.g., Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) (reversing certification of a class of cattle producers where the class definition included producers who claimed to have been harmed by contracts and marketing agreements that benefited some of the unnamed members of the class); *Bieneman v. City of Chicago*, 864 F.2d 463, 465 (7th Cir. 1988) (ruling class certification would be inappropriate where the named class representative brought an action against the City of Chicago on behalf of all landowners in the vicinity of an airport, but "[s]ome of these [class members] undoubtedly derive[d] great benefit" from such proximity); *Auto Ventures, Inc. v. Moran*, No. 92-426-CIV-KEHOE, 1997 WL

4

306895, at *5 (S.D. Fla. Apr. 3, 1997) (refusing to certify a class of Toyota dealers because "the class collapses into distinct groups of winners and losers"). This is because "[u]nless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class, it would be inequitable to recognize plaintiffs as representative, and a violation of due process to permit them to obtain a judgment binding absent plaintiffs." *Phillips v. Klassen*, 502 F.2d 362, 366-67 (D.C. Cir. 1974); *see also Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009) ("An absence of material conflicts of interest between the named plaintiffs and their counsel with other class members is central to adequacy and, in turn, to due process for absent members of the class."). The existence of a conflict also "prevent[s] the named representatives from vigorously prosecuting the interests of the class through qualified counsel." *Allied Orthopedic*, 247 F.R.D. at 177.

Moreover, the presence of this conflict between the Raytheon Class and UTC Class may preclude class certification because a single Lead Plaintiff will be unable to demonstrate that there is common, class-wide proof that all class members were damaged by Defendants' fraud. *Id.* at 165. Resolving such representational issues is the express purpose of the Rule 23 inquiry, which in this Circuit requires courts to ask (1) whether the representative parties and their counsel have any conflict of interest with other class members; and (2) whether the representative parties and their counsel will vigorously prosecute the action on behalf of the class. *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003); C. Wright & A. Miller, *Federal Practice & Procedure* § 1768 (3d. ed. 2010) ("[i]t is axiomatic that a putative class representative cannot adequately protect the class if the representative interests are antagonistic to or in conflict with the objectives of those being represented.").

In *Amchem*, the Supreme Court affirmed the lower court's determination that certification of a settlement class was improper on grounds of inadequate representation where the proposed settlement showed intra-class disparities. To address this, the Court noted the need for "structural assurance of fair and adequate representation" when groups

of claimants have competing interests.  *Amchem*, 521 U.S. at 610, 627-28.  The Supreme Court reached a similar conclusion in *Ortiz*, recognizing the need to create "homogeneous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel" in the context of limited fund cases.  *See, e.g., Ortiz*, 527 U.S. at 856–57.  In the wake of *Amchem* and its progeny, courts regularly create subclasses or implement a leadership structure involving separate representation to ensure adequate representation of absent class members.

For example, when confronted with a similar conflict between common stock investors and derivatives investors in *Allergan*, Judge Carter appointed separate representation for each Class of investors.  *See In re Allergan, Inc. Proxy Violation Sec. Litig.*, 8:14-cv-02004-DOC (KESx) (C.D. Cal. July 25, 2017), ECF No. 444 (Hr'g Transcript at 78) ("[S]o there's an innate conflict between the two of you.  It makes it hard for me to understand how the common stock can adequately represent the derivatives as lead counsel."); *see also Cathode Ray Tube (CRT)*, 2020 WL 1873554, at *3 (resolving fundamental conflicts by appointing separate class counsel and separate subclasses in connection with settlement of antitrust claims); 3 Newberg on Class Actions § 7:31 (5th ed. 2011) ("If two parts of a single class have significantly conflicting interests and cannot be adequately represented by a single representative or counsel, the class may be split into multiple subclasses, each with its own class representative and counsel, and the litigation may proceed accordingly.").  The fundamental conflict between the claims of the UTC Class and the Raytheon Class here also requires the appointment of separate leadership and counsel for each of the antagonistic Classes.  *Literary Works*, 654 F.3d at 252.

## II.   FIRST NEW YORK SHOULD BE APPOINTED AS LEAD PLAINTIFF FOR THE UTC CLASS

As discussed in its moving brief, First New York held 211,761 shares of UTC common stock that were exchanged in the Merger.  Thus, First New York (like the rest of the UTC Class), experienced significant losses because of the inflated value received by Old Raytheon shareholders in the Merger – inflated value that reduced dollar-for-dollar the

6

value received by the UTC Class at the time of the Merger.  First New York exclusively seeks to represent the interests of the UTC Class and thus does not suffer the infirmity of any movant that may now pivot from their initial applications that sought to represent only the Raytheon Class to now include representation of the UTC Class.

First New York also satisfies the adequacy requirements of Fed. R. Civ. P. 23(a)(4). Under Fed. R. Civ. P. 23(a)(4), the representative parties must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its adequacy inquiry to the existence of any conflict between the interests of First New York and the other members of the UTC Class.  Thus, in determining whether adequacy under Fed. R. Civ. P. 23(a)(4) is satisfied, the Court inquires into whether a proposed Lead Plaintiff  "has the ability and incentive to represent the claims of the class vigorously, [whether it] has obtained adequate counsel, and [whether] there is [a] conflict between [the movant's] claims and those asserted on behalf of the class." *In re Cendant Corp. Litig.*, 264 F.3d 201, 265 (3d Cir. 2001)  (citing *Hassine v. Jeffes*, 846 F.2d 169, 177 (3d Cir. 1988)).

As evidenced by the fact that First New York is the only movant to articulate the claims of the UTC Class, its interests are clearly aligned with the interests of the other members of the class it seeks to represent.  There is also no antagonism between First New York's interests and those of the other members of the UTC Class.  As detailed in its moving brief, First New York shares identical or substantially similar questions of law and fact with the other members of the proposed UTC Class and its claims are typical of the members of that Class.

By contrast, based on the certifications filed by the competing movants, none of those movants (with the exception of STRS which suffers from the fundamental conflict described above and other issues not relevant to this application – unless STRS pivots to seek to represent both the UTC and Raytheon Classes) appear to have held any financial interest in UTC on the date of the Merger and therefore were not injured by the same event as the UTC Class.  *See* Fed. R. Civ. P. 23(a)(3).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is

7

not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Borteanu v. Nikola Corp.*, CV-20-01797-PHX-SPL, 2020 WL 7392795, at *4 (D. Ariz. Dec. 15, 2020); *see also Lomingkit v. Apollo Educ. Grp. Inc.*, No. CV-16-00689-PHX-DLR, 2016 WL 3345514, at *2 (D. Ariz. June 16, 2016).

Similarly, as discussed above, the competing movants are inadequate to represent the claims of the UTC Class because their interests are directly antagonistic to those of the UTC Class. *See Borteanu*, 2020 WL 7392795, at *4 (adequacy satisfied where "the proposed lead plaintiff's interests are in common with, and not antagonistic to, those of the class; and (2) proposed lead plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation.").

## III.   CONCLUSION

For the foregoing reasons, First New York respectfully requests that the Court: (1) appoint First New York as Lead Plaintiff for a class consisting of investors that held UTC stock at the time of UTC's April 3, 2020 Merger with Raytheon Company pursuant to 15 U.S.C. § 78u-4(a)(3)(B) (the "UTC Class"); (2) approve First New York's selection of Entwistle & Cappucci LLP as Lead Counsel for the UTC Class pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v); (3) appoint Bonnett, Fairborn, Friedman and Balint PC as local liaison counsel; (4) consolidate the above-captioned Related Actions; (5) deny all competing motions for appointment as Lead Plaintiff (ECF Nos. 9, 11, 13 and 14) insofar as they seek to represent members of the UTC Class; and (6) grant such other and further relief as the Court may deem just and proper.

Dated: January 12, 2021         Respectfully submitted,


                                */s/ Andrew S. Friedman*
                                Andrew S. Friedman (State Bar No. 005425)
                                afriedman@bffb.com
                                BONNETT FAIRBOURN FRIEDMAN & BALINT, PC
                                2325 E Camelback Road, Suite 300
                                Phoenix, AZ 85016
                                Telephone: (602) 776-5902

8

Andrew J. Entwistle (*Pro Hac Vice* submitted)
aentwistle@entwistle-law.com
ENTWISTLE & CAPPUCCI LLP
401 Congress Avenue, Suite 1170
Austin, TX  78701
Telephone: (512) 710-5960