Gary A. Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322
Facsimile:  (602-248-2822
*Liaison Counsel for Movant the State Teachers*
*Retirement System of Ohio*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Pranay K. Bajjuri, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Raytheon Technologies Corporation f/k/a Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood,<br><br>Defendants. | Case No. CV-20-00468-JCH<br><br>Hon. John C. Hinderaker<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF THE STATE TEACHERS RETIREMENT SYSTEM OF OHIO FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** |
| Daniel Norris, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Raytheon Technologies Corporation f/k/a Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood,<br><br>Defendants. | Case No. CV-20-00543-RM |

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...................................................................................1

II.     ARGUMENT ..........................................................................................................5

        A.      THE RETIREMENT SYSTEM SHOULD BE APPOINTED LEAD PLAINTIFF ...................................................................................................5

                1.      The Retirement System Possesses the Largest Financial Interest in the Litigation..........................................................................................6

                2.      The Retirement System Satisfies the Requirements of Rule 23 ..................7

                3.      The Retirement System's Omission of Bond Transactions from its Motion Papers Has No Bearing on Its Adequacy .....................................................8

                4.      The Retirement System Should Be Appointed As Lead Plaintiff on Behalf of All Class Members and No Sub-Classes Are Necessary ......................11

        B.      THE COURT SHOULD APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL........................................................................................14

III.    CONCLUSION .....................................................................................................15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Allergan, Inc. Proxy Violation Sec. Litig.*,
   No. 8:14-cv02004 (C.D. Cal.) ................................................................................. 5

*Athale v. Sinotech Energy Limited et al.*,
   1:11-cv-05831 (S.D.N.Y.), Dkt. No. 24 .................................................................. 11

*In re AudioEye, Inc.*,
   No. CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348 (D. Ariz. July 31,
   2015)...................................................................................................................... 3, 7

*Bajjuri v. Raytheon Technologies Corporation et al.*,
   4:20-cv-00468 (D. Ariz.) ......................................................................................... 1

*In re Bank of America Corp. Sec. Litig.*,
   No. 1:09-md-02058 (S.D.N.Y.) ................................................................................ 5

*Briggs v. Adel*,
   No. CV-18-02684-PHX-EJM, 2020 WL 4003123 (D. Ariz. July 14, 2020)............ 3, 7

*Bruce v. Suntech Power Holdings Co., Ltd.*,
   No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012)..................1, 2, 6

*In re Carnival Corp. Secs. Litig.*,
   No. 1:20-cv-22202-KMM, 2020 U.S. Dist. LEXIS 205773 (S.D. Fla. Oct. 30,
   2020).....................................................................................................................4, 12

*In re Cempra, Inc. Sec. Litig.*,
   1:16-cv-01303 (M.D.N.C.), Dkt. No. 38 ................................................................. 11

*In re Enron Corp. Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002).........................................................................12, 14

*Esparza v. SmartPay Leasing, Inc.*,
   No. C 17-03421 WHA, 2019 WL 2372447 (N.D. Cal. June 06, 2019) ...................... 7

*Feyko v. Yuhe Int'l Inc.*,
   No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040 (C.D. Cal.
   Mar. 2, 2012) .......................................................................................................... 8

*In re IMAX Corporation Sec. Litig.*,
   1:06-cv-06128 (S.D.N.Y.), Dkt. No. 142-4............................................................. 11

*Knox v. Yingli Green Energy Holding Co.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ................................................................... 1, 6

*Newton-Nations v. Rogers*,
    221 F.R.D. 509 (D. Ariz. 2004) ................................................................................... 7

*Niederklein v. PCS Edventures!.com, Inc.*,
    1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247 (D. Idaho Feb. 24,
    2011) ......................................................................................................................... 11

*Porsio v. Overseas Shipholding Grp., Inc.*,
    12 Civ. 7948 et al., 2013 U.S. Dist. LEXIS 14463 (S.D.N.Y. Feb. 1, 2013) ....4, 12, 14

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    No. 07-02830, U.S. Dist. LEXIS 132902 (W.D. Tenn. Dec. 15, 2010) ...................... 8

*Shenwick v. Twitter, Inc.*,
    No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714 (N.D. Cal. Dec. 22,
    2016) ...................................................................................................................... 4, 8

*Smilovits v. First Solar, Inc.*,
    No. 12-cv-555, 2012 WL 3002513 (D. Ariz. July 23, 2012) .................................. 5, 7

*In re SolarCity Corp. Sec. Litig.*,
    No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25,
    2017) .....................................................................................................................11, 12

*Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*,
    No. 2:06-CV-2674-PHX-RCB, 2007 WL 2692217 (D. Ariz. Sept. 10, 2007) ......... 3, 7

*In re Ubiquiti Networks, Inc. Sec. Litig.*,
    1:18-cv-01620 (S.D.N.Y.) ......................................................................................10, 11

*In re XM Satellite Radio Holdings Sec. Litig.*,
    237 F.R.D. 13 (D.D.C. 2006) ...................................................................................4, 12

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ..........................................................................1, 5, 6, 14

Private Securities Litigation Reform Act of 1995 .....................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ......................................................................................................*passim*

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730 ............ 3, 7

The Retirement System[1] respectfully submits this memorandum of points and authorities in further support of its motion for consolidation of the Related Actions, appointment as Lead Plaintiff and approval of its selection of counsel (Dkt. No. 14);[2] and in opposition to the competing motions of (i) Heavy & General Laborers' Locals 472 & 172 Annuity Fund (the "Annuity Fund") (Dkt. No. 13), (ii) Kee Chun Hon ("Hon") (Dkt. No. 8), (iii) Charles M. Francisco, III ("Francisco") (Dkt. No. 11), and (iv) FNY Partners Fund LP and FNY Managed Accounts LLC (collectively, "FNY") (Dkt. No. 12).

## I.    PRELIMINARY STATEMENT

This is a securities fraud class action on behalf of investors in Raytheon securities.  As with all federal class action securities fraud lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court should appoint as lead plaintiff the movant with the largest financial interest in the outcome of the action and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  While the PSLRA does not define "financial interest," courts in the Ninth Circuit generally consider a movant's claimed financial loss to be the most important factor in assessing financial interest within the meaning of the PSLRA.  *Knox v. Yingli Green Energy Holding Co.*, 136 F. Supp. 3d 1159, 1163 (C.D. Cal. 2015); *Bruce v. Suntech Power Holdings Co., Ltd.*, No. CV 12-04061 RS, 2012 WL 5927985, at *2 (N.D. Cal. Nov. 13, 2012).  Alongside financial loss, courts also consider the three other Lax-Olsten factors: shares purchased, funds

---

[1] All capitalized terms herein are defined in the Retirement System's moving brief, unless otherwise indicated.  *See* Dkt. No. 14.

[2] Unless otherwise specified, all "Dkt. No. __" citations are to *Bajjuri v. Raytheon Technologies Corporation et al.*, 4:20-cv-00468.

expended, and net shares purchased (*i.e.*, retained shares). *Id.* The following chart compares the Retirement System's losses in this litigation to those of the competing movants:



As the table reflects, the Retirement System has a larger financial interest in this action than any competing movant by a significant margin. The Retirement System incurred a loss of $34,778,031 on a FIFO basis or $19,541,679 on a LIFO basis in connection with its Class Period purchases of Raytheon securities, almost 130 times (on a FIFO basis) or 73 times (on a LIFO basis) the magnitude of the losses of *all competing movants combined*. *See* Declaration of Jeremy A. Lieberman in Support of Motion and in Opposition to Competing Motions ("Lieberman Opp. Decl."), Ex. A.[3] In addition, the Retirement System (i) acquired 1,159,370 shares of Raytheon stock and Raytheon bonds in the principal amount of $28,013,000, (ii) expended $142,036,888 on its purchases of Raytheon securities, and (iii) retained a total of $787,219 shares of Raytheon stock and Raytheon bonds in the principal amount of $12,000,000

---

[3] In its moving papers and accompanying submissions, the Retirement System initially reported a loss of approximately $37,863,250 on a FIFO basis or $22,626,898 on a LIFO basis. *See* Dkt. No. 14 at 1, 8; Dkt. No. 14-2. As discussed in greater detail *infra* at pp. 8-9, the Retirement System's moving papers omitted its Class Period transactions in Raytheon bonds. *See* Declaration of Lieberman Opp. Decl., Ex. B. The above chart reflects the Retirement System's recalculated loss after taking into account the initially omitted bond transactions.

at the end of the Class Period—again, significantly more than all competing movants across all metrics. Accordingly, under any relevant analysis, the Retirement System plainly possesses the largest financial interest in this litigation.

The Retirement System also satisfies the typicality and adequacy requirements of Rule 23. The Retirement System, like all Class members, purchased Raytheon securities at prices artificially inflated by the Company's misrepresentations or omissions, and were damaged upon the disclosure of those misrepresentations or omissions. These shared claims, which are based upon the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the typicality requirement of Rule 23. *Briggs v. Adel*, No. CV-18-02684-PHX-EJM, 2020 WL 4003123, at \*6 (D. Ariz. July 14, 2020). The Retirement System's significant losses give it a sufficient stake in the litigation's outcome to ensure vigorous prosecution; the Retirement System is aware of no conflict between its interests and those of the putative Class; and in Pomerantz, the Retirement System has retained qualified and experienced counsel. For all of the foregoing reasons, the Retirement System satisfies the adequacy requirements of Rule 23. *See Teamsters Local 617 Pension & Welfare Funds v. Apollo Group, Inc.*, No. 2:06-CV-2674-PHX-RCB, 2007 WL 2692217, at \*6 (D. Ariz. Sept. 10, 2007).

Moreover, the Retirement System is a sophisticated institutional investor with significant assets under management. As such, its appointment would be consistent with one of Congress's purposes in enacting the PSLRA, to increase the participation of institutional investors as class representatives in securities class actions. *See* H.R. Conf. Rep. No. 104-369, at \*34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733; *In re AudioEye, Inc.*, No. CV-15-163-TUC-DCB,

3

2015 U.S. Dist. LEXIS 193348, at *13 (D. Ariz. July 31, 2015); *Shenwick v. Twitter, Inc.*, No. 16-cv-05314-JST, 2016 U.S. Dist. LEXIS 177714, at *7 (N.D. Cal. Dec. 22, 2016).

The Retirement System respectfully urges the Court to appoint the Retirement System as the *sole* Lead Plaintiff and to decline FNY's request to appoint FNY "as lead plaintiff for a class consisting of investors who held stock in United Technologies Corporation (NYSE: UTX) ["UTX"] at the time of its April 3, 2020 merger with Raytheon Company" (the "UTX Class"). Dkt. No. 12 at 1.  Appointment of niche classes and lead plaintiffs to represent them is strongly disfavored in PSLRA actions, because "[a]bsent a clear threat that" the presumptive lead plaintiff "would not adequately represent [certain] stockholders, creation of a subclass with a separate lead plaintiff would undermine the PSLRA's goal of centralizing control over and responsibility for the litigation." *Porsio v. Overseas Shipholding Grp., Inc.*, 12 Civ. 7948 *et al.*, 2013 U.S. Dist. LEXIS 14463, at *22 (S.D.N.Y. Feb. 1, 2013).  *See also In re Carnival Corp. Secs. Litig.*, No. 1:20-cv-22202-KMM, 2020 U.S. Dist. LEXIS 205773, at *13-*14 (S.D. Fla. Oct. 30, 2020); *In re XM Satellite Radio Holdings Sec. Litig.*, 237 F.R.D. 13, 20 (D.D.C. 2006).  The Retirement System stands ready to represent the interests of *all* Class members, including former UTX investors, and vigorously pursue recovery on their behalf.  FNY has posited no reason why the Retirement System would lack the ability and/or incentive to do so.  In fact, having itself held 705,858 shares of UTX stock as of the Company's April 3, 2020 merger with Raytheon Company ("Raytheon Co." or "RTN")—compared to the only 211,761 shares that FNY held— the Retirement System demonstrably has a stronger incentive than FNY to pursue claims on behalf of other Class members who also held UTX stock at the time of the merger.

4

The Retirement System has a proven track record of diligently and successfully prosecuting securities class actions as Lead Plaintiff. The Retirement System has previously served as a Co-Lead Plaintiff in, *inter alia*, *In re Bank of America Corp. Sec. Litig.*, No. 1:09-md-02058 (S.D.N.Y.) ($2.4 billion recovery for the class), and *In re Allergan, Inc. Proxy Violation Sec. Litig.*, No. 8:14-cv02004 (C.D. Cal.) ($250 million recovery for the class). The Court may be assured that entrusting leadership of this action to the Retirement System will ensure that the Class's claims are vigorously litigated.

For the reasons set forth herein, the Retirement System respectfully submits that its motion should be granted in its entirety, and that the competing motions should be denied.

## II.    ARGUMENT

### A.    THE RETIREMENT SYSTEM SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA creates a strong presumption that the "most adequate plaintiff"—*i.e.*, the Lead Plaintiff—is the movant or group of movants that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The movant that has the largest financial interest need only make a *prima facie* showing at this stage that he or she satisfies the adequacy and typicality requirements of Rule 23. *Smilovits v. First Solar, Inc.*, No. 12-cv-555, 2012 WL 3002513, at *3 (D. Ariz. July 23, 2012). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u–4(a)(3)(B)(iii)(II). Here, the most adequate class representative is the Retirement System.

5

### 1.    The Retirement System Possesses the Largest Financial Interest in the Litigation

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District generally recognize that the amount of financial loss is the most significant factor to be considered. *Knox*, 136 F. Supp. 3d at 1163; *Suntech Power*, 2012 WL 5927985, at *2. Alongside loss, courts will often consider the other three Lax-Olsten factors—shares purchased, funds expended, and net shares purchased (net shares)—in assessing financial interest. *Id.*

Under any of the foregoing analyses, no movant seeking appointment as Lead Plaintiff in the Action has alleged a larger financial interest in this litigation than the Retirement System. As the chart at p. 2 illustrates, the Retirement System's loss of approximately $34.78 million on a FIFO basis or $19.54 million on a LIFO basis represents a loss 149 times (on a FIFO basis) or nearly 84 times (on a LIFO basis) the magnitude of the losses of all competing movants combined. Likewise, the Retirement System (i) purchased 1,159,370 shares of Raytheon stock and Raytheon bonds in the principal amount of $27,980,095, (ii) expended $142,036,888 on its purchases of Raytheon securities, and (iii) retained a total of 787,219 shares of Raytheon stock and Raytheon bonds in the principal amount of $12,000,000 at the end of the Class Period— again, significantly more than all competing movants across all metrics. It is beyond dispute that the Retirement System possesses the largest financial interest in this litigation.

6

### 2.    The Retirement System Satisfies the Requirements of Rule 23

In addition to possessing the largest financial interest in the relief sought by the Class, the Retirement System has also made the requisite *prima facie* showings that it satisfies the typicality and adequacy requirements of Rule 23.  *Smilovits*, 2012 WL 3002513, at *3.

First, the Retirement System's claims satisfy the typicality requirement of Rule 23(a)(3) because its claims in the Related Actions are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *Briggs*, 2020 WL 4003123, at *6; *Esparza v. SmartPay Leasing, Inc.*, No. C 17-03421 WHA, 2019 WL 2372447, at *4 (N.D. Cal. June 06, 2019).  Second, the Retirement System satisfies the adequacy requirement of Rule 23(a)(4) because it has a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class, is aware of no conflict between their interests and those of the Class, and, as discussed in greater detail below, it has selected counsel highly capable and experienced in prosecuting securities cases and managing complex litigation efficiently to serve as Lead Counsel for the Class.  *Apollo Group*, 2007 WL 2692217, at *6; *Newton-Nations v. Rogers*, 221 F.R.D. 509 (D. Ariz. 2004)

Moreover, as a sophisticated institutional investor, the Retirement System is the paradigmatic lead plaintiff envisioned by Congress when it enacted the PSRLA.  As such, its appointment would help advance the important Congressional goal of improving the quality of representation by appointing institutional investors to serve as lead plaintiffs in securities class actions.  *See* H.R. Conf. Rep. No. 104-369, at *34 (1995), *as reprinted in* 1995 U.S.C.C.A.N. 730, 733; *Audioeye*, 2015 U.S. Dist. LEXIS 193348, at *13 (appointing as lead plaintiff "an institutional investor, which is precisely the kind of investor that Congress sought to encourage

7

to assume a more prominent role in securities litigation with the enactment of the PSLRA's lead plaintiff provisions"); *Shenwick*, 2016 U.S. Dist. LEXIS 177714, at *7 ("as an institutional investor, [movant] is likely to be an effective lead plaintiff"); *Feyko v. Yuhe Int'l Inc.*, No. CV 11-05511 DDP (PJWx), 2012 U.S. Dist. LEXIS 28040, at *8 (C.D. Cal. Mar. 2, 2012) (appointing institutional investor as lead plaintiff, finding it to be "'exactly the type of sophisticated market participant[] Congress intended to take on the role of lead plaintiff following the PSLRA's reforms'" (quoting *In re Regions Morgan Keegan Closed-End Fund Litig.*, No. 07-02830, U.S. Dist. LEXIS 132902, at *8 (W.D. Tenn. Dec. 15, 2010))).

### 3.   The Retirement System's Omission of Bond Transactions from its Motion Papers Has No Bearing on Its Adequacy

The Retirement System respectfully submits that the inadvertent omission of certain bond transactions, specified below, has no bearing on its adequacy to serve as Lead Plaintiff.  First, the Certification submitted with the Retirement System's motion papers only set forth the Retirement Systems in Raytheon common stock and did not reflect the Retirement System's Class Period acquisitions of Raytheon bonds.  *See* Dkt. No. 14-4.  As the Retirement System attests in its Amended Certification, submitted herewith, the Retirement System did, in fact, acquire Raytheon bonds during the Class Period, in addition to its transactions in Raytheon common stock.  *See* Lieberman Opp. Decl., Ex. B.  Second, as the Retirement System's initial Certification expressly stated, the schedule of transactions appended thereto reflected only the Retirement System's Class Period transactions in securities of Raytheon Technologies Corporation ("RTX")—*i.e.*, not in the securities of Raytheon Co. (RTN), the entity acquired by UTX and ultimately merged into RTX.  *See* Dkt. No. 14-4.  To address any potential arguments by competing movants, the

Retirement System's Amended Certification also sets forth its Class Period transactions in RTN stock as well.  *See* Lieberman Opp. Decl., Ex. B.

Neither of the foregoing omissions has any relevance to the Retirement System's adequacy to serve as Lead Plaintiff.  First, the Retirement System's bond transactions represent only a minor portion of its Class Period transactions in Raytheon securities and does not materially change the Retirement System's financial interest in this litigation.  Taking into account the Retirement System's bond transactions only decreases the Retirement System's alleged loss from $37.86 million on a FIFO basis or $22.63 million on a LIFO basis to $34.78 million on a FIFO basis or $19.54 million on a LIFO basis.  Thus, even as adjusted to account for its bond purchases, the Retirement System's financial interest in this litigation still overwhelmingly exceeds that of any competing movant, or indeed all competing movants considered in the aggregate.

Second, the Related Actions as currently pleaded primarily concern the extent to which the Defendants' alleged fraud, when it came to light, damaged the Class's shares of Raytheon's common stock, not its bond holdings.  Indeed, the Complaints in the Related Actions *only* contain allegations that Raytheon's common stock declined in value when the Defendants' fraud came to light, and contain no allegations whatsoever concerning the Company's bonds.  *See* Dkt. No. 1 ¶¶ 36-37; *Norris* Dkt. No. 1 ¶¶ 31-32.  Tellingly, of the four competing movants, only the Annuity Fund has attested to having acquired any Raytheon bonds during the Class Period.  *See* Dkt. No. 13-4.  As such, the focus of the Related Actions was clearly the impact of the fraud on Raytheon common stock.

Moreover, competing movants might argue that the Retirement System should have listed its individual transactions in RTN, the Company acquired by UTX.  Yet there was no such

requirement, as the Complaints in the Related Actions defined the Class in this litigation as acquirers of the securities of Raytheon Technologies Corporation (*i.e.*, RTX) during the Class Period. *See* Dkt. No. 1 ¶ 1; *Norris* Dkt. No. 1 ¶ 1. Likewise, the Retirement System's initial Certification only purported to set forth its transactions in RTX securities, not RTN securities. *See* Dkt. No. 14-4. Nevertheless, the Retirement System's Certification did indicate that it received 291,304 RTX shares which were converted from its RTN shares as a consequence of the merger, and it valued them at a "purchase price" of $49.93. *See* Dkt. No. 14-4 at *7 ("RTN shares were converted to RTX shares. Shares are valued as of the April 3, 2020 Closing Price."). This is the precise manner in which the Annuity Fund valued its RTN shares acquired and held as of the merger. *See* Dkt. No. 13-4 at *4 ("Shares exchanged in RTX merger valued at closing price."). As such, the Retirement System has provided the movants and Court with ample information regarding its financial interest relevant to its purchases of both RTN and RTX common stock as well.

Finally, to the extent that the Annuity Fund attempts to challenge the Retirement System's adequacy on any purported omissions, the Retirement System respectfully submits that its chosen counsel, Robbins Geller Rudman & Dowd LLP ("Robbins Geller"), knows full well that such an inadvertent omission does not disqualify a movant from appointment as lead plaintiff. Indeed, Robbins Geller and its predecessor firms have argued the opposite on multiple occasions. Most recently, in *In re Ubiquiti Networks, Inc. Sec. Litig.*, 1:18-cv-01620 (S.D.N.Y.) ("*Ubiquiti*"), Robbins Geller acknowledged submitting a certification on behalf of one of its clients that "inadvertently excluded" significant transactions in the securities at issue. *Ubiquiti* Dkt. No. 21 at 1 n.1. Robbins Geller downplayed the omissions, stating that because the movant had

subsequently "provided the appropriate data, this is a non-issue." *See Ubiquiti* Dkt. No. 24. Robbins Geller has likewise downplayed similar omissions and errors in other actions. *See*, *e.g.*, *Athale v. Sinotech Energy Limited et al.*, 1:11-cv-05831 (S.D.N.Y.), Dkt. No. 24 ("attach[ing] a corrected certification to rectify [an] inadvertent error" relating to "the listing of an incorrect purchase price" for a security); *In re Cempra, Inc. Sec. Litig.*, 1:16-cv-01303 (M.D.N.C.), Dkt. No. 38 (acknowledging submission of "certification [that] included an inadvertent error" confusing purchases with sales); *In re IMAX Corporation Sec. Litig.*, 1:06-cv-06128, Dkt. No. 142-4 (acknowledging submission of certification that "inadvertently combined two trades" and submitting recalculated loss estimate, revised downward by $45,000, or more than 9%). Accordingly, the Retirement System respectfully submits that the Court should be skeptical of any challenges to the Retirement System's adequacy on this basis by Robbins Geller. As Robbins Geller correctly argued in the foregoing cases, these kinds of "minor or inadvertent mistakes made in a sworn certification do not strike at the heart of Rule 23's adequacy requirement." *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *18 (N.D. Cal. Jan. 25, 2017) (quoting *Niederklein v. PCS Edventures!.com, Inc.*, 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *34 (D. Idaho Feb. 24, 2011)) (collecting cases).

### 4. The Retirement System Should Be Appointed As Lead Plaintiff on Behalf of <u>All</u> Class Members and No Sub-Classes Are Necessary

Finally, one competing movant, FNY, argues that "[s]eparate representation is warranted for investors who acquired Raytheon Technologies stock by virtue of their UT[X] stock holdings at the time of its Merger with Raytheon Company." Dkt. No. 12 at 8. In support of its argument, FNY asserts, without support, that absent separate representation, the claims of investors in the purported UTX Class will be subject to "neglect"; that the nature of their economic injury is

11

"distinct from" the harm incurred by other Class members; and that calculating the harm incurred by these "UT[X] Class" members will require additional "discovery and damages analysis regarding the appropriate exchange ratio, the financial impact of the UT[X] spin-offs and the effect of Raytheon Company's stock inflation on the negotiated exchange ratio—issues that the Raytheon Technologies purchasers may not be incented to develop and may indeed be incented to downplay in order to maximize their own recovery." *Id.*

Separate representation for "UTX Class" members is ***not*** warranted.  Courts strongly disfavor the carving out of niche or sub-classes on behalf of narrowly defined sub-groups of class members, finding that "[a]bsent a clear threat that" the presumptive lead plaintiff "would not adequately represent [certain] stockholders, creation of a subclass with a separate lead plaintiff would undermine the PSLRA's goal of centralizing control over and responsibility for the litigation." *Porsio*, 2013 U.S. Dist. LEXIS 14463, at *22.  *See also Carnival*, 2020 U.S. Dist. LEXIS 205773, at *13-*14 ("[C]ourts have rejected attempts to fracture PSLRA class actions into sub-classes of holders of different types of securities represented by separate lead plaintiffs.") (collecting cases); *XM Satellite Radio*, 237 F.R.D. at 20 (denying motion for appointment as lead plaintiff for subclass of options purchasers, finding that "representation by a disparate group of plaintiffs, each seeking only a protection of its own interests, could well hamper the force and focus of the litigation."); *In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 451 (S.D. Tex. 2002) (finding that designation of separate sub-classes and representatives for different groups of investors "taken to its logical extreme . . . would fracture this litigation into hundreds of classes or subclasses and obstruct any efficient and controlled progress.").

FNY has not shown any threat to the interests of the investors comprising the "UTX Class" that would warrant separate representation. While it makes the conclusory assertion that former UTX investors will be subject to "neglect" because a non-UTX investor Lead Plaintiff "may not be incented" to undertake the work necessary to establish damages and pursue recovery on their behalf, it conspicuously does not explain why. Dkt. No. 12 at 8. Rather, the opposite is true: The Lead Plaintiff in this litigation, like any PSLRA lead plaintiff, will have every incentive to aggressively pursue all potential claims and avenues of recovery against the Defendants, on behalf of as wide a class of Raytheon investors as possible, in order to maximize the Class's recovery. To that end, the Lead Plaintiff will clearly have every incentive to pursue claims on behalf of former UTX investors alongside those of all other Class members. In fact, the Retirement System itself *held 705,858 shares of UTX stock at the time of its merger with Raytheon Co.*—towering over the 211,761 shares of UTX stock that FNY claims to have held—meaning that the Retirement System will clearly have an *even stronger* incentive than FNY in pursuing recovery in this litigation on behalf of other former UTX investors as well as other Class members.

Moreover, FNY is wrong in its assertion that the complaints in the Related Actions fail to articulate "a theory of damages related to the Merger transaction." Dkt. No. 12 at 2. The related actions clearly state that when the fraud was revealed by way of the announcement of the Department of Justice's criminal subpoena, shares of RTX declined by 7%. Dkt. No. 1 ¶¶ 36-37; *Norris* Dkt. No. 1 ¶¶ 31-32. As the "former UT[X] shareholders" had their shares automatically converted to RTX shares, such former shareholders were by definition damaged when the share price of RTX declined upon the revelation of the fraud. As such, the theory of fraud and damages

13

for the former UTX shareholders is virtually the same if not identical to that of all other Raytheon shareholders.    In sum, FNY's conclusory arguments are not only the very definition of speculation, they are at odds with the facts before the Court, and do not demonstrate that any "clear threat' to the "UTX Class" exists absent their representation by FNY.  As such, FNY's bid to carve out a sub-class for UTX shareholders, under FNY's leadership, would only fracture this litigation, "hamper[ing its] force and focus" (*Enron*, 206 F.R.D. at 451) and "undermin[ing] the PSLRA's goal of centralizing control over and responsibility for this litigation."  *Porsio*, 2013 U.S. Dist. LEXIS 14463, at *22.

The Court should appoint a single Lead Plaintiff for the Class, as contemplated by the PSLRA, and for the reasons set forth above, the presumptive Lead Plaintiff is the Retirement System.

## B.    THE COURT SHOULD APPROVE LEAD PLAINTIFF'S SELECTION OF COUNSEL

The PSLRA vests authority in the Lead Plaintiff to select and retain lead counsel, subject to the approval of the Court.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the Lead Plaintiff's selection only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Here, the Retirement System has selected Pomerantz as Lead Counsel for the Class.  As its resume reflects, Pomerantz is highly experienced in the area of securities litigation and class actions and has successfully prosecuted numerous securities litigations and securities fraud class actions on behalf of investors.  *See* Dkt. No. 14-5.  Thus, the Court may be assured that by approving the Retirement System's selection of counsel, the members of the Class will receive the best legal representation available.

14

## III.    CONCLUSION

For all of the foregoing reasons, the Retirement System respectfully requests that the Court issue an Order: (1) consolidating the Related Actions; (2) appointing the Retirement System as Lead Plaintiff for the Class; and (3) approving Pomerantz as Lead Counsel for the Class.

Dated:  January 12, 2021                                    Respectfully submitted,

/s/ Gary A. Gotto
Gary A. Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Telephone: (602) 230-6322
Facsimile:  (602) 248-2822

*Liaison Counsel for Movant the State Teachers Retirement System of Ohio*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue
New York, NY 10016
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com
Telephone: (212) 661-1100
Facsimile: (212) 661-8665

*Counsel for Movant the State Teachers Retirement System of Ohio and Proposed Lead Counsel for the Class*

15

CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Gary A. Gotto*
Gary A. Gotto

16