**RUSING LOPEZ & LIZARDI, PLLC**
Mark D. Lammers (AZ # 010335)
6363 North Swan Road, Suite 151
Tucson, AZ 85718
Telephone: (520) 792-4800
Facsimile: (520) 529-4262
mdlammers@rllaz.com

*Local Counsel for Lead Plaintiff Movant*
*Charles M. Francisco, III*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller *(pro hac vice to be submitted)*
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*Charles M. Francisco, III and*
*Proposed Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Pranay K. Bajjuri, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:20-cv-00468-TUC-JCH |
| Plaintiff, | |
| v. | **MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF CHARLES M. FRANCISCO, III'S MOTION FOR CONSOLIDATION OF CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF HIS SELECTION OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS** |
| Raytheon Technologies Corporation F/K/A Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood, | |
| Defendants. | |

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION OF CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

CASE NO. 4:20-CV-00468-TUC-JCH

|  |  |
|---|---|
| Daniel Norris, Individually and on Behalf of All Others Similarly Situated, | Case No. 4:20-cv-00543-TUC-RM |
| Plaintiff, | |
| v. | |
| Raytheon Technologies Corporation F/K/A Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood, | |
| Defendants. | |

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION OF CASES, APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

CASE NO. 4:20-cv-00468-TUC-JCH

## INTRODUCTION

Lead Plaintiff movant Charles M. Francisco, III ("Mr. Francisco") respectfully submits this omnibus memorandum of law in opposition to all other lead plaintiff motions, and in further support of his motion for consolidation of the related cases, appointment as Lead Plaintiff, and approval of his selection of Lead Counsel, Kahn Swick & Foti, LLC ("KSF"). For all the reasons set forth herein, Mr. Francisco's lead plaintiff motion should be granted and all other such motions should be denied.

On December 29, 2020, five motions were filed in this Court pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA") seeking appointment as lead plaintiff. The motions were filed by: (i) Mr. Francisco (ECF No. 6); (ii) Kee Chun Hon ("Mr. Hon") (ECF No. 10); (iii) FNY Partners Fund LP and FNY Managed Accounts (the "FNY Funds") (ECF No. 7); (iv) Heavy & General Laborers' Locals 472 &172 Annuity Fund (the "H&G Funds") (ECF No. 8); and (v) State Teachers Retirement System of Ohio ("Ohio Teachers") (ECF No. 9).[1]

Although the PSLRA's lead plaintiff appointment requirements are straightforward in that the appointed lead plaintiff "is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23," *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002), the competing movants have complicated this task by inflating their claimed losses with non-compensable damages and erroneous computations.

For example, competing lead plaintiff movants the FNY Funds, H&G Funds, and Ohio Teachers all claimed substantial investment losses between February 10, 2016 through October 27, 2020, inclusive (the "Class Period"), and yet, the vast majority of these losses were not in *Raytheon* stock, which forms the basis of this lawsuit. Rather, each of these

---

[1] The PSLRA provides that, prior to appointing a lead plaintiff, the Court must decide whether to consolidate the Related Actions. *See* 15 U.S.C. §78u-4(a)(3)(B)(ii); *In re Century Aluminum Co. Sec. Litig.*, 2009 U.S. Dist LEXIS 81205, at *7 (N.D. Cal. 2009) ("A court must rule on a motion to consolidate before it can rule on a motion to appoint a lead plaintiff.").

competing movants traded heavily in United Technologies Corporation ("United Tech") stock before United Tech merged with Raytheon. As made clear in the Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint") (ECF No. 1) (as well as the statutory notice to investors appended to each movant's motion), this lawsuit pertains only to purchasers of *Raytheon* securities. *See* ¶¶ 1, 8-9;[2] Statutory Notice (ECF No. 6-5). Losses on transactions in United Tech stock prior to its merger with Raytheon are not recoverable. Similarly, Mr. Hon, the FNY Funds, and H&G Funds all include non-compensable losses from 'in-and-out' sales of Raytheon stock prior to the corrective disclosure revealing the fraud. Under established Supreme Court precedent, *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43, 125 S. Ct. 1627, 1631-32 (2005), no loss causation for such transactions exists. Moreover, the competing movants failed to offset their losses by their *gains* on transactions in Raytheon securities during the Class Period, which, in the case of Ohio Teachers and the H&G Funds, far outweigh any losses. Once the inapplicable and unrecoverable United Tech losses are excised from the competing movants' loss calculations (and the movants' Raytheon losses are compared 'apples-to-apples' on a 'Last-In, First-Out' ("LIFO") basis,[3] excluding 'in-and-out' transactions as required under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43, 125 S. Ct.

---

[2] Unless otherwise noted, the facts alleged herein were derived from *Pranay K. Bajjuri v. Raytheon Technologies Corporation, et al.*, No. 4:20-cv-00468-TUC-JCH (ECF No. 1) (the "*Bajjuri* Complaint") and all ¶__ and ¶¶__ references are to the *Bajjuri* Complaint.

[3] While some movants calculated losses on a 'First-in, First-out' ('FIFO') basis, "[t]he weight of authority puts the most emphasis on the competing movants' estimated losses, using a 'last in, first out ('LIFO') methodology.'" *Bodri v. GoPro, Inc.*, 2016 U.S. Dist. LEXIS 57559, at *11 (N.D. Cal. Apr. 28, 2016) (citation omitted). "The main advantage of LIFO is that, unlike FIFO, it takes into account gains that might have accrued to plaintiffs during the class period due to the inflation of the stock price." *In re eSpeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 101 (S.D.N.Y. 2005). Put another way, "FIFO may inflate damages because it does not consider gains obtained from sales of stock during the class period." *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813, at *32-36 (N.D. Cal. Feb. 15, 2011); *see also Hsingching Hsu v. Puma Biotechnology, Inc.*, 2019 U.S. Dist. LEXIS 154278, at *16-17 (C.D. Cal. Sept. 9, 2019) ("The Court finds that LIFO is the more appropriate method for matching shares sold during the class period because LIFO accounts for profits resulting from class period sales. Courts prefer LIFO because FIFO often ignores necessary offsets.")

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

2

CASE NO. 4:20-cv-00468-TUC-JCH

1627, 1631-32 (2005), and netting all Class Period gains), Mr. Francisco plainly has the largest recoverable loss, making him the presumptive most adequate lead plaintiff:

| Movant: | LIFO/*Dura* (Loss)/Gain: |
|---|---|
| Charles M. Francisco, III | ($34,720.34) |
| Kee Chun Hon | ($24,871.44) |
| FNY Funds | $0.00 |
| H&G Funds | $76,666.02 |
| Ohio Teachers | $260,203.73; $685,609.56 |

*See* Supplemental Declaration of Mark D. Lammers ("Suppl. Lammers Decl."), attached hereto, at Exhibits A through D (Conformed Loss Charts of Competing Movants Mr. Francisco (Ex. A), Mr. Hon (Ex. B), the H&G Funds (Ex. C), and Ohio Teachers (Ex. D)). Because Mr. Francisco's adequacy and typicality cannot be rebutted, and because, unlike his fellow movants, he is not subject to any unique defenses, Mr. Francisco should be appointed Lead Plaintiff and his KSF as Lead Counsel should be approved.

## ARGUMENT

### I.    LEGAL STANDARD

While the PSLRA "contains a number of requirements, it is neither overly complex nor ambiguous; we need be neither Talmudic scholars nor skilled in the use of Urim and Thummin to construe it." *Cavanaugh*, 306 F.3d at 729. "The 'most capable plaintiff' – and hence the lead plaintiff – is the one who has the greatest financial stake in the outcome of the case, so long as he meets the requirements of Rule 23." *Id*. To identify the presumptively most adequate plaintiff, "the district court must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit." *Id*. at 730. The Court's analysis of the movants' financial interests must be "both rational and consistently applied." *Perlmutter v. Intuitive Surgical, Inc.*, 2011 U.S. Dist. LEXIS 16813, at *10 (N.D. Cal. Feb. 15, 2011) (citing *Cavanaugh*, 306 F.3d at 730 & n. 4). "It must then focus its attention on *that* plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and

'adequacy.'" *Cavanaugh*, 306 F.3d at 730. (emphasis in original). "If the plaintiff with the largest financial stake in the controversy provides information that satisfies these requirements, he becomes the presumptively most adequate plaintiff." *Id.*

## II. MOVANTS CANNOT CLAIM LOSSES FOR UTX STOCK TRANSACTIONS

As an initial matter, three movants, the FNY Funds, Ohio Teachers, and the H&G Funds, all improperly assert losses on purchases of United Tech stock in order to inflate their respective calculations of financial interest when, in fact, none of these losses are attributable to the alleged fraud. For the first four years of the Class Period, until April 3, 2020, Raytheon Company and United Tech were completely separate companies; Raytheon Company traded under the ticker symbol "RTN" and United Tech traded under the ticker symbol "UTX." After the close of trading on April 2, 2020, Raytheon Company merged with United Tech to form Raytheon Technologies Corporation. At that point, all holders of RTN stock received 2.3348 shares of UTX per share of RTN. When the markets opened on April 3, 2020, UTX shares were 're-listed' or 're-named,' and began trading as "RTX." *See* Suppl. Lammers Decl., at Exhibit E (April 3, 2020 Raytheon Press Release).

All the misrepresentations alleged in this case relate to pre-merger Raytheon Company and its Missiles & Defense business, and all the Individual Defendants in this case are pre-merger Raytheon executives who subsequently became executives of the merged company, Raytheon Corporation. ¶¶ 8-13, 35. Accordingly, both the *Bajjuri* Complaint and the PSLRA-mandated notice to shareholders make clear that this case only involves Raytheon stock that traded under tickers RTN and RTX. *See* ¶¶ 1, 8; ECF No. 6-5 (notifying "purchasers of the securities of Raytheon Technologies Corporation f/k/a Raytheon Company (NYSE: RTX, RTN)…"). Stock that traded under the ticker UTX when United Tech was an independent company has no relevance to this Action, and the competing movants cannot claim losses from UTX stock in their calculations of financial interest. As discussed more thoroughly below, the FNY Funds, Ohio Teachers, and the H&G Funds vastly overstated their calculated losses in

MEMORANDUM OF POINTS AND AUTHORITIES IN
FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
AND IN OPPOSITION TO THE COMPETING MOTIONS

4

CASE No. 4:20-cv-00468-TUC-JCH

Raytheon stock by comingling losses of pre-merger UTX stock that has nothing to do with this litigation.

## III.    NO PRESUMPTION ATTACHES TO THE COMPETING MOVANTS WHO OVERSTATED THEIR LOSSES AND ARE SUBJECT TO UNIQUE DEFENSES

### A.    The FNY Funds Cannot Serve As Lead Plaintiff Based Solely on Purchases of UTX Stock

As the FNY Funds' own submission makes clear, they did not trade in Raytheon securities during the Class Period; they only traded in UTX shares. *See* ECF No. 7 at 1 (indicating that FNY Funds seek to serve "as lead plaintiff for a class consisting of investors who held stock in United Technologies Corporation at the time of its April 3, 2020 merger with Raytheon Company."); ECF 7-2 at 3. Not only does this raise questions as to whether FNY Funds even has standing in this action, FNY would also assuredly be subject to unique defenses as to their reliance on the alleged misrepresentations, and whether the misrepresentations made by Raytheon caused any recoverable losses to the FNY Funds, based on their purchases of a different company's stock. Recognizing this threshold deficiency, the FNY Funds do not even submit a required loss calculation; rather, the FNY Funds ambiguously state their "Holdings of United Technologies Corporation Common Stock as of the Close of Trading April 2, 2020." *Id*. Putting aside the fact that the FNY Funds' so-called "certification" raises serious doubt as to whether they do, in fact, possess standing in this action (as they did not trade in RTN or RTX shares), this list of UTX "holdings" fails to indicate the purchase price, whether the shares were purchased during the Class Period, or if those shares were held through the end of the Class Period, three necessary facts to establish any loss whatsoever. Given that the FNY Funds have questionable standing to even be a class member in this action and that they implicitly recognize their $0.00 recognized loss by not submitting a loss calculation of any kind, their rationale for submitting an application for appointment as lead plaintiff in this Action is a mystery.

**B.      Ohio Teachers Cannot Serve as Lead Plaintiff Because They Enjoyed a Massive Net Profit as a Result of the Alleged Fraud**

Despite Ohio Teachers' assertion of a massive $22,626,898 LIFO loss, closer examination of their transactions shows that Ohio Teachers actually enjoyed a staggering six-figure *profit* on their Class Period sales of Raytheon stock, rendering them inadequate to serve as lead plaintiff.

Like the FNY Funds' transactions, all of Ohio Teachers' listed purchases prior to April 3, 2020 are in UTX stock, not Raytheon stock, and therefore any losses claimed on those transactions must be backed-out of their loss calculation. Both the schedule of transactions attached to Ohio Teachers' certification (*see* ECF No. 9-4) and loss chart (*see* ECF No. 9-2) list dozens of transactions of "RTX" shares prior to the date of the Raytheon merger with United Tech; however, as explained above, there was no such thing as "RTX" stock prior to the date of the merger. *See* Suppl. Lammers Decl. at Ex. E. When scrutinizing the per share price of each of those transactions, however, it quickly becomes apparent that these transactions could not have been transactions in RTN stock, because the per-share purchase and sale prices fall well-outside of the historical daily trading ranges for RTN stock on the dates of those transactions. *See* Suppl. Lammers Decl. at Exhibits F through H (Historical Daily Trading Ranges of RTN (Ex. F), UTX (Ex. G), and RTX (Ex. H)). Instead, each transaction price falls neatly within the daily historical trading range for UTX stock. *Compare* ECF No. 9-4 *with* Suppl. Lammers Decl. at Ex. G.

While a footnote to Ohio Teachers' certification and loss chart claims 291,304 "RTN shares were converted to RTX shares" on April 3, 2020, neither demonstrates those shares of RTN were purchased *during the Class Period* prior to April 3, 2020 (*see* ECF No. 9-4 at 4; ECF No. 9-2), and thus, those converted RTN shares appear to have been purchased prior to the beginning of the Class Period. Any losses for pre-class period purchases must also be backed-out of the total loss calculation. *See Brown v. China Integrated Energy, Inc.*, 2011 U.S. Dist. LEXIS 151131, at *30 (C.D. Cal. Aug. 29, 2011) (noting that "transactions before the

class period are properly excluded from a calculation of losses because the plaintiff did not rely on the alleged misrepresentation in purchasing the security") (citing *Perlmutter*, 2011 U.S. Dist. LEXIS 16813). Nevertheless, even assuming these RTN shares were purchased during the Class Period (despite nothing suggesting they were), Mr. Francisco's conformed loss analysis (*see* Suppl. Lammers Decl. at Ex. D) demonstrates that Ohio Teachers sold 273,751 of those shares between April 7 and June 26, 2020, prior to the alleged corrective disclosure, such that any losses on those shares are not recoverable under *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 342-43, 125 S. Ct. 1627, 1631-32 (2005). *See, e.g.*, *Hurst v. Enphase Energy*, 2020 U.S. Dist. LEXIS 223696, at *20-23 (N.D. Cal. Nov. 30, 2020) (explaining that under *Dura*, "[i]f the purchaser sells the shares before the truth becomes known, the misrepresentation will not have led to any loss," and indicating that because of the movant's repeated in and out transactions, "the Court has serious concerns about their vulnerability to a defense that they were trading in response to information other than the alleged misrepresentations and omissions made."). And, while Ohio Teachers did hold 23,451 of those RTN shares through the end of the Class Period, its theoretical losses on those shares is completely offset by its subsequent Class Period gains on shares of RTX. *See* Suppl. Lammers Decl. at Ex. D.

Setting aside its transactions in UTX and those 291,304 shares of RTN that were likely purchased prior to the beginning of the Class Period, Ohio Teachers is left with five purchases of 161,651 shares of RTX between April 3 and October 6, 2020. Nevertheless, most of these shares were sold during the Class Period *at a profit*; and those 57,911 RTX shares Ohio Teachers did retain also netted it a profit based on the December 28, 2020 lookback price of $67.8698/share. *See* Suppl. Lammers Decl. at Ex. D. In fact, even if the Court were to afford Ohio Teachers the benefit of assuming their 291,304 converted shares were purchased during the Class Period—despite Ohio Teachers providing no indication that they were—Ohio Teachers' purported losses in RTN and RTX are so overwhelmingly offset by gains on these transactions that their balance results in a ***$260,203.73 profit*** on Defendants' fraud.

Disregarding the 291,304 RTN shares from the calculation, as the Court should, Ohio Teachers' gain skyrockets to $685,609.56. *Id.*; *see, e.g.*, *Ferreira v. Funko, Inc.*, 2020 U.S. Dist. LEXIS 106515, at *18 (C.D. Cal. June 11, 2020) (rejecting movant with largest claimed losses who "relie[d] on questionable calculations," explaining that "[t]he greatest error is likely [the movant's] failure to offset its claimed losses with gains…."). Under no circumstances can the Court appoint a lead plaintiff that significantly increased its bottom line as a result of the alleged fraud. *See Deering v. Galena Biopharma, Inc.*, 2014 U.S. Dist. LEXIS 140766, at *34-35 (D. Or. Oct. 3, 2014) (rejecting lead plaintiff application of net gainer explaining that "courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial.") (citing cases). Accordingly, Ohio Teachers should not be appointed lead plaintiff.

**C.    The H&G Funds Are Not the Most Adequate Plaintiff as they Overstated their Losses with UTX and In-and-Out Transactions and Are Also Subject to Unique Defenses**

The H&G Funds' purported loss of $138,779.65 is similarly flawed and overstated. Like Ohio Teachers, the H&G Funds include in their calculation of losses some 8,709 shares of UTX purchased prior to April 3, 2020. *See* ECF No. 8-4 (H&G Funds Certification); ECF No. 8-5 (H&G Funds Loss Chart). These UTX purchases are openly segregated on H&G Funds' schedule of transactions, yet inexplicably added to their total loss calculation even though the claims in this Action clearly do not relate to pre-merger United Tech securities or misrepresentations in any way whatsoever. *Id.* After excluding its purported losses on these shares, excluding unrecoverable losses on 'in-and-out' sales in contravention of *Dura*, and netting Class Period gains, the H&G Funds sustained losses of only **$9,561.08** on RTN/RTX common stock. *See* Suppl. Lammers Decl. at Ex. C. Courts have found such erroneous and muddled loss calculations, regardless of whether purposeful or by mistake, to count against the movant's application for lead plaintiff appointment. *See Funko, Inc.*, 2020 U.S. Dist. LEXIS 106515, at *18-19 (rejecting movant's bid for lead plaintiff, "not[ing] its 'review was rendered needlessly complicated by [the movant's] failure to use consistent reporting methods

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

8

CASE NO. 4:20-cv-00468-TUC-JCH

and their failure to disclose all relevant information….It wastes the Court's time when proposed lead plaintiffs, particularly investors possessing as much experience in securities class action litigation as these…entities, simply note that shares held prior to the Class Period were sold, without disclosing the net gain on the sale of those shares or, at minimum, carefully accounting for each of those shares.'") (quoting *Cambridge Ret. Sys. v. Mednax, Inc.*, 2018 U.S. Dist. LEXIS 207064, at *13 (S.D. Fla. Dec. 6, 2018)).

Moreover, per H&G Funds' own admission, their losses are offset by their substantial profit on Raytheon Bonds, which total some $86,227.10 by Mr. Francisco's calculation, leaving it with a ***net gain of $76,666.02***. *See In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 308 (S.D. Ohio 2005) ("[C]ourts usually reject these so-called net gainers as lead plaintiffs, opting instead for net losers that will have less trouble proving damages."); *In re Comdisco*, 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (finding that net gainer status rendered movant "totally out of the running for designation as lead plaintiff.").

Finally, the H&G Funds admit in their certification that they possessed an "[o]pening position of 5,347 shares" of RTN, but do not provide the purchase dates or cost basis for these shares. ECF No. 8-4. As demonstrated in the H&G Funds' conformed loss chart, however, on a LIFO basis, those purchases match with Class Period sales. *See* Suppl. Lammers Decl. at Ex. C. If the H&G Funds profited from these Class Period sales, therefore, such profits would further increase their net gain, as the profit would be directly attributable to the alleged fraud. Accordingly, the Court should also not appoint H&G Funds as Lead Plaintiff.

**D.     No Presumption Attaches to Mr. Hon, Whose Losses are Erroneously Calculated and Less than Presumptive Lead Plaintiff Mr. Francisco**

While Mr. Hon, unlike the other competing movants, does not shoehorn purported damages from UTX shares into his loss calculation, he nevertheless fails to adjust his holdings

in pre-merger RTN for the 2.3348/share conversion,[4] improperly maintains his historical cost basis in RTN,[5] and includes unrecoverable losses on 'in-and-out' sales in contravention of *Dura*. Further, four of Mr. Hon's five pre-merger purchases of RTN fall outside historical daily trading ranges. *Compare* Dkt. No. 10-2 (Mr. Hon Certification) *with* Suppl. Lammers Decl. at Ex. F; *see also Funko, Inc.*, 2020 U.S. Dist. LEXIS 106515, at *18 (rejecting movants whose calculations were "beset with flaws" including that they "somehow purchased securities at prices outside the daily trading range for Funko stock"); *Irving Firemen's Relief & Ret. Fund v. Tesco PLC*, 2015 U.S. Dist. LEXIS 38635, at *10 (S.D.N.Y. Mar. 19, 2015) (finding movant's "loss is overstated because it 'lists various trades that…fall outside of the daily price range'").

Nevertheless, even assuming Mr. Hon's purchases of RTN are *bona fide* (and he either purchased those shares outside of market hours, the stated prices include brokerage or other fees, or there is some other credible and legitimate explanation), his conformed loss still only amounts to **$24,871.44**, which is below the losses of Mr. Francisco. Accordingly, Mr. Hon should not be appointed lead plaintiff.

## IV.   MR. FRANCISCO IS THE MOST ADEQUATE PLAINTIFF

Mr. Francisco suffered a loss of $34,720.34 from his Class Period purchase of Raytheon securities, which, after properly calculating the losses of the other movants (*i.e.*, excluding losses from UTX purchases, excluding losses on in-and-out transactions, netting Class Period

---

[4] As mentioned above, on April 3, 2020, as a result of the Raytheon and United Tech merger, all holders of RTN stock received 2.3348 shares of UTX per share of RTN, and the UTX shares were relisted as RTX. To properly calculate losses on pre-merger RTN purchases, this conversion must be made to equate the RTN shares at the time of purchase to the RTX shares at the time of sale.

[5] As indicated in the Conformed Loss Charts (and initially described and consistently applied in Mr. Francisco's submitted loss chart, *see* ECF No. 6-4), upon their exchange for shares of UTX on April 3, 2020, holders of RTN common stock constructively sold their shares in Raytheon by allowing them to be transformed into UTX at the current market price. Thus, for the purpose of calculating recoverable losses, the movants' cost basis in those shares is properly set at $86.01 per share, the closing price of UTX as of April 2, 2020.

gains, adjusting for the conversion of RTN to RTX shares at the time of the merger, and adjusting the movants' cost basis in those converted RTN shares), represents the largest loss of any investor before the Court.

| Movant: | LIFO/*Dura* (Loss)/Gain: |
|---|---|
| Charles M. Francisco, III | ($34,720.34) |
| Kee Chun Hon | ($24,871.44) |
| FNY Funds | $0.00 |
| H&G Funds | $76,666.02 |
| Ohio Teachers | $260,203.73; $685,609.56[6] |

In addition to possessing the "largest financial interest in the relief sought by the class," a proposed lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "The typicality and adequacy requirements of Rule 23 are the only requirements relevant to the selection of a lead plaintiff." *Borteanu v. Nikola Corp.*, 2020 U.S. Dist. LEXIS 236005, at *23-24 (D. Ariz. Dec. 15, 2020) (citing *Cavanaugh*, 306 F.3d at 730). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Lomingkit v. Apollo Educ. Grp. Inc.*, 2016 U.S. Dist. LEXIS 78591, at *2 (D. Ariz. June 16, 2016). "The test for adequacy is whether (1) the proposed lead plaintiff's interests are in common with, and not antagonistic to, those of the class; and (2) proposed lead plaintiff's counsel are qualified, experienced, and generally able to conduct the litigation."

Mr. Francisco is typical and adequate because his claims are identical, non-competing and non-conflicting with the claims of other putative class members. Mr. Francisco and the

[6] As explained above, Ohio Teachers did not provide the original purchase date(s) or cost basis for its shares of RTN that were purportedly converted into 291,304 shares of RTX on 4/3/2020. If they were not purchased during the Class Period, Ohio Teachers sustained no recoverable losses on those shares, and thus its Class Period gain is increased correspondingly.

putative class each similarly transacted in Raytheon securities during the Class Period when Raytheon's stock price was artificially inflated as a result of Defendants' alleged misrepresentation. Both Mr. Francisco and the putative class also suffered damages as a result of these purchases when the truth about Defendants fraud came to be revealed on October 27, 2020. *See* ¶¶ 36-38. Accordingly, Mr. Francisco's claims and injuries arise from the same conduct alleged in the Complaint from which the other class members' claims and injuries arise, and there is no evidence of antagonism between Mr. Francisco's interests and those of the proposed class. *See Gudimetla v. Ambow Educ. Holding Ltd.*, 2012 U.S. Dist. LEXIS 195807, at *9 (C.D. Cal. 2012). Furthermore, Mr. Francisco selected KSF, a firm highly experienced in prosecuting securities class actions, to represent him and the class. *See* Dkt. No. 6-6 (Lammers Decl. at Ex. D). Mr. Francisco is an experienced and capable lead plaintiff. He currently serves as co-lead plaintiff in *Kanefsky et al. v. Honeywell International Inc. et al.*, No. 2:18-cv-15536 (D. N.J.), overseeing lead counsel KSF. Mr. Francisco's complaint in that securities class action survived the motion to dismiss in full and discovery has commenced.

Because Mr. Francisco suffered the largest loss of any movant that satisfies the typicality and adequacy requirements of Rule 23, the Court need not even reach the remaining lead plaintiff applications unless "proof" is submitted to rebut the presumption in its favor. *See Cavanaugh*, 306 F.3d at 732 (the PSLRA does not "authorize the district judge to examine the relative merits of plaintiffs seeking lead status on a round-robin basis"). Nevertheless, where the other movants will be subject to unique defenses based on their purchases of UTX stock, 'in-and-out' transactions, and Class Period gains as a result of the alleged fraud, Mr. Francisco's substantial losses based on his single Class Period purchase make him an ideal class representative without such vulnerabilities. Mr. Francisco is the presumptive lead plaintiff and should be appointed as such on behalf of the class.

## V.    CONCLUSION

For the foregoing reasons, Charles M. Francisco III respectfully requests that the Court:

MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO THE COMPETING MOTIONS

12

CASE No. 4:20-cv-00468-TUC-JCH

(i) consolidate the Related Actions; (ii) appoint him as Lead Plaintiff pursuant to §15 U.S.C. § 78u-4(a)(3)(B); and (iii) approve his selection of KSF as Lead Counsel for the class.

DATED: January 12, 2021          Respectfully submitted,

*/s/ Mark D. Lammers*

**RUSING LOPEZ & LIZARDI, PLLC**
Mark D. Lammers (AZ # 010335)
6363 North Swan Road, Suite 151
Tucson, AZ  85718
Telephone: (520) 792-4800
Facsimile: (520)529-4262
mdlammers@rllaz.com

*Local Counsel for Lead Plaintiff Movant*
*Charles M. Francisco, III*

**KAHN SWICK & FOTI, LLC**
Kim E. Miller (*pro hac vice to be submitted*)
250 Park Avenue, 7th Floor
New York, NY 10177
Telephone: (212) 696-3732
Facsimile: (504) 455-1498
kim.miller@ksfcounsel.com

*Counsel for Lead Plaintiff Movant*
*Charles M. Francisco, III and*
*Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on January 12, 2021, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses registered, as denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*/s/ Mark D. Lammers*
Mark D. Lammers

MEMORANDUM OF POINTS AND AUTHORITIES IN
FURTHER SUPPORT OF MOTION FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
AND IN OPPOSITION TO THE COMPETING MOTIONS

13

CASE No. 4:20-cv-00468-TUC-JCH