HART L. ROBINOVITCH (AZ SBN 020910)
**ZIMMERMAN REED LLP**
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254-2762
Telephone: 480/348-6400
Facsimile: 480/348-6415
Email: hart.robinovitch@zimmreed.com

Local Counsel for [Proposed] Lead Plaintiff

**ROBBINS GELLER RUDMAN & DOWD LLP**
DANIELLE S. MYERS
JENNIFER N. CARINGAL
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone: 619/231-1058
Facsimile: 619/231-7423 (fax)
Email: dmyers@rgrdlaw.com
        jcaringal@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| Pranay K. Bajjuri, Individually and on Behalf of All Others Similarly Situated,<br><br>                              Plaintiff,<br><br>     vs.<br><br>Raytheon Technologies Corporation f/k/a Raytheon Company, et al.,<br><br>                              Defendants. | No. CV-20-00468-TUC-JCH<br><br>**PROPOSED LEAD PLAINTIFF HEAVY & GENERAL LABORERS' LOCALS 472 & 172 ANNUITY FUND'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF LEAD PLAINTIFF'S SELECTION OF LEAD COUNSEL (DKT. NO. 13)**<br><br>CLASS ACTION<br><br>(Assigned to the Honorable John C. Hinderaker) |

[Caption continued on following page.]

4844-5884-2328.v1

Daniel Norris, Individually and on Behalf of All Others Similarly Situated,

                              Plaintiff,

          vs.

Raytheon Technologies Corporation f/k/a Raytheon Company, et al.,

                              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

No. CV-20-00543-TUC-RM

<u>CLASS ACTION</u>

(Assigned to the Honorable Rosemary Marquez)

4844-5884-2328.v1

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ................................................................................. 1

II.    ARGUMENT......................................................................................... 2

      A.    The Annuity Fund's Motion Is Substantively Unopposed............................ 3

      B.    The Magnitude of STRS' Errors Undermines Its Adequacy ........................ 3

      C.    As a Net Seller and Net Gainer, STRS Is Subject to Unique Defenses........ 5

      D.    Holders of UTX Stock on the Day of the Merger Do Not Need to Be Separately Represented by a Different Lead Plaintiff.................................. 7

III.   CONCLUSION ................................................................................... 10

4844-5884-2328.v1

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bank of New York Mellon as Tr. for Certificateholders of CWMBS Inc.,*
*CHL Mortg. Pass-Through Tr. 2006-OA5, Mortg. Pass Through*
*Certificates, Series 2006 v. Lewis,*
   796 F. App'x 956 (9th Cir. 2020) ................................................................. 3

*Bodri v. Gopro, Inc.,*
   2016 WL 1718217 (N.D. Cal. Apr. 28, 2016) ...................................... 2, 8, 10

*Born v. Quad/Graphics, Inc.,*
   2020 WL 994427 (S.D.N.Y. Mar. 2, 2020) ................................................. 6

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.,*
   2017 WL 6028213 (N.D. Ohio Dec. 5, 2017) ............................................. 6

*Deering v. Galena Biopharma, Inc.,*
   2014 WL 4954398 (D. Or. Oct. 3, 2014) .................................................... 6

*Fishbury, Ltd. v. Connetics Corp.,*
   2006 WL 3711566 (S.D.N.Y. Dec. 14, 2006) ............................................. 9

*Foley v. Transocean Ltd.,*
   272 F.R.D. 126 (S.D.N.Y. 2011) ............................................................... 8

*Frank v. Dana Corp.,*
   237 F.R.D. 171 (N.D. Ohio 2006) ............................................................. 6

*Greenberg v. Bear Sterns & Co., Inc.,*
   80 F. Supp. 2d 65 (E.D.N.Y. 2000) ........................................................... 9

*Hevesi v. Citigroup Inc.,*
   366 F.3d 70 (2d Cir. 2004) ........................................................................ 9

*Hodges v. Immersion Corp.,*
   2009 WL 5125917 (N.D. Cal. Dec. 21, 2009) ........................................... 6

*In re Bausch & Lomb Inc. Sec. Litig.,*
   244 F.R.D. 169 (W.D.N.Y. 2007) .............................................................. 6

*In re Cable & Wireless, PLC Sec. Litig.,*
   217 F.R.D. 372 (E.D. Va. 2003) ................................................................ 6

*In re Cardinal Health, Inc. Sec. Litig.,*
   226 F.R.D. 298 (S.D. Ohio 2005) .............................................................. 6

- ii -

**Page**

*In re Cavanaugh,*
306 F.3d 726 (9th Cir. 2002) ............................................................................... 2, 9, 10

*In re Cendant Corp. Litig.,*
182 F.R.D. 144 (D.N.J. 1998)....................................................................................... 9

*In re Centerline Holding Co. Sec. Litig.,*
2008 WL 1959799 (S.D.N.Y. May 5, 2008)................................................................. 4

*In re Century Bus. Servs. Sec. Litig.,*
202 F.R.D. 532 (N.D. Ohio 2001) ............................................................................... 8

*In re Comdisco Sec. Litig.,*
150 F. Supp. 2d 943 (N.D. Ill. 2001)........................................................................... 7

*In re Enron Corp., Sec, Litig.,*
206 F.R.D. 427 (S.D. Tex. 2002).................................................................................. 9

*In re Fannie Mae Sec. Litig.,*
355 F. Supp. 2d 261 (D.D.C. 2006).............................................................................. 8

*In re KIT Digital, Inc. Sec. Litig.,*
293 F.R.D. 441 (S.D.N.Y. 2013) .................................................................................. 1

*In re Organogenesis Sec. Litig.,*
241 F.R.D. 397 (D. Mass. 2007)................................................................................... 6

*In re Surebeam Corp. Sec. Litig.,*
2004 WL 5159061 (S.D. Cal. Jan. 5, 2004) ............................................................... 10

*In re Telxon Corp. Sec. Litig.,*
67 F. Supp. 2d 803 (N.D. Ohio 1999) .......................................................................... 2

*Khunt v. Alibaba Grp. Holding Ltd.,*
102 F. Supp. 3d 523 (S.D.N.Y. 2015) .......................................................................... 9

*Perlmutter v. Intuitive Surgical, Inc.,*
2011 WL 566814 (N.D. Cal. Feb. 15, 2011)............................................................. 1, 7

*Reimer v. Ambac Fin. Grp., Inc.,*
2008 WL 2073931 (S.D.N.Y. May 9, 2008)................................................................. 8

*Schueneman v. Arena Pharm., Inc.,*
2011 WL 3475380 (S.D. Cal. Aug. 8, 2011)................................................................. 8

4844-5884-2328.v1

**Page**

*Tsirekidze v. Syntax-Brillian Corp.*,
2008 WL 942273 (D. Ariz. Apr. 7, 2008) ...................................................................... 3

*Weisz v. Calpine Corp.*,
2002 WL 32818827 (N.D. Cal. Aug. 19, 2002)............................................................. 6

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
§78u-4(a)(2)(iv).............................................................................................................. 8

Federal Rules of Civil Procedure
Rule 23 ..................................................................................................................... 3, 10
Rule 23(a)................................................................................................................... 2, 3

4844-5884-2328.v1

## I.   INTRODUCTION

Of the three remaining movants, only Heavy & General Laborers' Locals 472 & 172 Annuity Fund (the "Annuity Fund") satisfies the requirements to be appointed lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA").[1] Indeed, other than noting its relatively smaller financial interest, no competing movant substantively challenged the Annuity Fund's motion.

By contrast, the State Teachers Retirement System of Ohio's ("STRS") opposition filing and amended Certification confirm that STRS' initial Certification and stated financial interest were materially wrong, and reveals that STRS' proposed lead counsel still fundamentally misunderstands the basic contours of this case. More problematically, the amended Certification exposes STRS' status as a net seller *and* net gainer on its combined Raytheon Company/United Technologies transactions during the Class Period, with STRS having received approximately *$30 million* by selling artificially inflated stock during the Class Period than it expended buying stock. This defect alone is disqualifying. *See Perlmutter v. Intuitive Surgical, Inc.*, 2011 WL 566814, at \*9 (N.D. Cal. Feb. 15, 2011) ("Marcus' status as a net seller and a net gainer during the Class Period weighs against Marcus' appointment as the lead plaintiff. Besides demonstrating that he potentially benefitted from Defendants' fraud, Marcus' status as a net seller and a net gainer also weighs against him because it may subject him to unique defenses if he were to be the class representative."). Moreover, STRS's belated submission of its transactions in all of the securities that are the subject of the actions (and the delay associated therewith) is precisely why courts decline to consider a movant's financial interest asserted for the first time after

---

[1]   Movant Kee Chun Hon filed a Notice of Withdrawal on January 12, 2021. ECF No. 15. Movant Charles M. Francisco III failed to file any response to the competing motions, thereby abandoning his motion. *See In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441, 443 (S.D.N.Y. 2013) ("Two additional movants . . . did not file opposition briefs, and thus the Court deems their applications abandoned or withdrawn.").

- 1 -

the statutory deadline.[2]  *See In re Telxon Corp. Sec. Litig*., 67 F. Supp. 2d 803, 818 (N.D. Ohio 1999) ("The plain language of the statute precludes consideration of a financial loss asserted for the first time in a complaint, or any other pleading, for that matter, filed after the sixty (60) day window has closed.").

Finally, FNY Partners Fund LP and FNY Managed Accounts LLC's ("First New York") request to represent a separate class of United Technologies Corporation's ("UTX") investors that held stock at the time of the merger should be denied because "'the fact that plaintiffs might have different types of securities also does not require a separate class or co-lead plaintiffs.'"  *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at \*6 (N.D. Cal. Apr. 28, 2016).[3]

The Annuity Fund's motion for appointment as lead plaintiff should be granted.

## II.    ARGUMENT

In determining which movant is the presumptively most adequate plaintiff, the Court "must compare the financial stakes of the various plaintiffs and determine which one has the most to gain from the lawsuit."  *In re Cavanaugh*, 306 F.3d 726, 730 (9th Cir. 2002).  The Court "must then focus its attention on ***that*** plaintiff and determine, based on the information he has provided in his pleadings and declarations, whether he satisfies the requirements of Rule 23(a), in particular those of 'typicality' and 'adequacy.'"  *Id*. (emphasis in original).  "If the plaintiff with the greatest financial stake does not satisfy the

---

[2]    After the Annuity Fund's counsel pointed out the errors in STRS' initial Certification and requested complete transactional data on January 5, 2021 (*see* ECF No. 16-2), STRS' counsel strategically chose to withhold it for another week, filing the data with STRS' January 12, 2021 opposition brief.  *See* ECF Nos. 18-2, 18-3.  Having made that strategic choice, the Court should not entertain a request by STRS to file a sur-reply as the Annuity Fund's counsel could have efficiently briefed this issue in its opposition brief had STRS' counsel timely provided the data as requested, particularly considering that STRS offered no explanation for failing to do so.  In fact, STRS' Amended Certification is dated January 7, 2021 – two days after the Annuity Fund's counsel contacted STRS' counsel requesting the additional data, and five days before the oppositions were due.  There is no reason STRS could not have provided this data sooner.

[3]    Citations are omitted and emphasis is added, unless otherwise noted.

4844-5884-2328.v1

Rule 23(a) criteria, the court must repeat the inquiry, this time considering the plaintiff with the next-largest financial stake, until it finds a plaintiff who is both willing to serve and satisfies the requirements of Rule 23." *Id.* As set forth below, that plaintiff is the Annuity Fund.

### A.     The Annuity Fund's Motion Is Substantively Unopposed

While STRS' brief is nominally titled an "Opposition," it only consists of statements in further support of its own motion. *See* ECF No. 18. Indeed, STRS' brief made no "argument against [the Annuity Fund] other than pointing out [its] relatively low[er] financial stake in the litigation." *Tsirekidze v. Syntax-Brillian Corp.*, 2008 WL 942273, at *5 (D. Ariz. Apr. 7, 2008) (appointing movant that lacked the largest financial interest as lead plaintiff because it was the first movant "that satisfie[d] both prongs of Rule 23").[4]

The Annuity Fund is the only candidate that satisfies all of the PSLRA's requirements and its motion should thus be granted.

### B.     The Magnitude of STRS' Errors Undermines Its Adequacy

With the filing of its Amended Certification Pursuant to Federal Securities Laws, STRS has conceded that its first Certification filed in connection with its motion seeking appointment as lead plaintiff contained untrue statements regarding its transactions in the relevant securities. ECF No. 18-3. STRS' amended Certification now includes STRS' Class Period acquisitions of Raytheon bonds[5] and transactions in Raytheon Company ("RTN") stock – the very transactions that the Annuity Fund's counsel identified as missing from STRS' original Certification in correspondence sent before the opposition briefs were due. *See* ECF Nos. 16 at 2, 16-2. While STRS continues to miscalculate its financial

[4]     Any attempt by STRS to challenge the Annuity Fund's qualifications for the first time in STRS' reply brief should be deemed untimely and the arguments waived. *See Bank of New York Mellon as Tr. for Certificateholders of CWMBS Inc., CHL Mortg. Pass-Through Tr. 2006-OA5, Mortg. Pass Through Certificates, Series 2006 v. Lewis*, 796 F. App'x 956, 957 (9th Cir. 2020) ("Lewis waived this argument by failing to raise it in opposition to BONY's summary judgment motion.").

[5]     Although STRS' counsel represents these purchases as Raytheon bonds, it appears that these purchases were in fact UTX bonds.

- 3 -

interest, even under its own erroneous calculation, the new transactions materially reduce STRS' claimed loss by several million dollars – from a $37.8 million FIFO loss to a $34.7 million FIFO loss, and $22.6 million LIFO loss to a $19.5 million LIFO loss.  Such material errors alone warrant the denial of STRS' motion.  *See* ECF No. 16 at 3 (citing cases).

Beyond the substantial reduction in its own claimed financial interest, STRS' amended Certification confirms that, after two rounds of briefing and despite the fact that STRS' own counsel filed one of the initial complaints against defendants, its proposed lead counsel still does not appear to grasp the nature of the allegations in this action. Specifically, STRS' counsel continues to wrongly believe that, years before the United Technologies (UTX) and Raytheon Company (RTN) merger was announced, UTX stock purchasers from 2016-2019 were somehow defrauded by the alleged financial wrongdoing at Raytheon Company (RTN).  STRS' counsel has not – and cannot – articulate a basis for how UTX purchasers before the merger was announced were harmed.  Even if counsel could somehow do so now, such a theory would be counterfactual to the allegations in STRS' counsel's own complaint.  And without a plausible explanation (which there is none), STRS' transactions in UTX stock before the merger was announced are not tethered to the alleged wrongdoing and are therefore irrelevant to its financial interest in the relief sought by the putative class.  *See generally In re Centerline Holding Co. Sec. Litig.*, 2008 WL 1959799, at *3-*4 (S.D.N.Y. May 5, 2008) (finding that while "Centerline could have formulated its restructuring plan as early as December 5, 2006," but "based on the factual allegations as pled, this is not ***plausible***" and using later start date to assess movants' financial interest because while that "is not to say that plaintiffs may never prove that Centerline violated the federal securities laws earlier than March 12, 2007," it "would be inappropriate at this stage in the litigation to make any determination about the merits of the claims" and the standard is "plausibility, not possibility") (emphasis in original).

4844-5884-2328.v1

The impact of this dissonance is profound, as only STRS seeks to claim a financial interest based on UTX transactions before the merger was announced:[6]

|  | *FIFO loss* | *LIFO loss* |
|---|---|---|
| STRS' claimed UTX/RTX loss during entire class period ignoring spinoffs | ($25 million) | ($12.3 million) |
| **STRS' loss during UTX/RTX fraud period including spinoffs** | **$1.7 million GAIN** | **($415,000)** |

The unparalleled magnitude of the difference between STRS' perceived financial interest and its actual financial interest – even ignoring the fact that it omitted RTN transactions entirely from its original Certification and failed to account for the impact of the spinoffs in the merger – undermines any claim that STRS is typical or adequate. *See* ECF No. 16 at 3 (citing cases). Nor has STRS indicated whether, when its true financial interest in the relief sought by the putative class is considered, STRS is even willing to serve as lead plaintiff given that its $415,000 LIFO loss is $9.5 million below its own active involvement threshold.

## C. As a Net Seller and Net Gainer, STRS Is Subject to Unique Defenses

STRS' amended Certification reveals a more pernicious problem: STRS' status as a net seller and net gainer. Specifically, when STRS' combined interest in RTN and UTX is considered – as it should be – STRS sold far more securities than it purchased during the Class Period, and received approximately $30 million more in proceeds than was expended – all at artificially inflated prices. *See* ECF No. 18-3.[7] This fact precludes STRS' appointment as lead plaintiff. Indeed, courts overwhelmingly hold that net sellers and net

---

[6] Tellingly, movant Kee Chun Hon's – who's counsel also filed one of the initial complaints – pre-merger loss is based on RTN stock, not UTX stock. *See* ECF No. 10-3. Similarly, movant Charles M. Francisco III's loss is based on the purchase of 820 shares of RTN stock. *See* ECF No. 6-4.

[7] In contrast to STRS, the Annuity Fund has net expenditures of over $1.38 million on its combined RTN/UTX investments during the Class Period (*i.e.*, the Annuity Fund expended more buying securities than it received selling securities during the Class Period).

- 5 -

gainers – like STRS – are precluded from being appointed as lead plaintiff. *See Deering v. Galena Biopharma, Inc*., 2014 WL 4954398, at \*11 (D. Or. Oct. 3, 2014) ("courts around the country consistently have rejected applications for lead plaintiff made by net sellers and net gainers, recognizing the difficulty of proving damages at trial"); *Hodges v. Immersion Corp*., 2009 WL 5125917, at \*2 (N.D. Cal. Dec. 21, 2009) ("A 'net seller's' motion for appointment as lead plaintiff is properly denied where the net seller obtained a 'net gain' from its sales occurring in the putative Class Period."); *Weisz v. Calpine Corp*., 2002 WL 32818827, at \*7 (N.D. Cal. Aug. 19, 2002) (removing from consideration lead plaintiff applicant that sold more shares than it purchased during class period because it was "apparent that [applicant] may have actually profited, not suffered losses, as a result of the allegedly artificially inflated stock price").[8]

---

[8]    Courts around the country are in accord. *See Born v. Quad/Graphics, Inc*., 2020 WL 994427, at \*2 (S.D.N.Y. Mar. 2, 2020) ("Anklis is a 'net seller' and 'net gainer' during the *Born* Class Period, meaning that he sold more shares than he purchased and earned more in proceeds than he spent – a fact Anklis does not contest. . . .  That status effectively disqualifies Anklis . . . .); *City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc*., 2017 WL 6028213, at \*2 (N.D. Ohio Dec. 5, 2017) ("The thought is that a plaintiff who sells during the Class Period has benefitted from the fraudulently inflated price of the stock while shareholders who hold on to their stock throughout the class period are left holding the bag when the fraud is revealed and the price of the stock drops."); *In re Organogenesis Sec. Litig*., 241 F.R.D. 397, 401 (D. Mass. 2007) ("Where Class Period sales exceed purchases, there is a very real possibility that Lead Plaintiff Madigan actually benefitted from the allegedly inflated price during the Class Period."); *In re Bausch & Lomb Inc. Sec. Litig*., 244 F.R.D. 169, 173 (W.D.N.Y. 2007) ("Courts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices."); *Frank v. Dana Corp*., 237 F.R.D. 171, 172 (N.D. Ohio 2006) ("Because parties which are net sellers and net gainers, with respect to the relevant securities transactions during the class period, may have more trouble proving damages at trial, courts frequently reject their applications to serve as lead plaintiffs."); *In re Cardinal Health, Inc. Sec. Litig*., 226 F.R.D. 298, 308 (S.D. Ohio 2005) (finding lead plaintiff movant group subject to unique defenses because two of its members experienced net gains during class period); *In re Cable & Wireless, PLC Sec. Litig*., 217 F.R.D. 372, 378 (E.D. Va. 2003) ("The fact that [the movant] sold more shares than it purchased during the class period 'undermines [the movant's] contention that it has the largest financial interest in the case.'"); *In re Comdisco Sec. Litig*., 150 F. Supp. 2d 943, 946 (N.D. Ill. 2001) (plaintiff

- 6 -

Judge Koh's decision in *Perlmutter* provides a helpful explanation as to the rationale behind rejecting net sellers and net gainers as a lead plaintiff. 2011 WL 566814, at *9. In *Perlmutter*, a lead plaintiff movant was challenged on the basis that he was a net seller and net gainer during the class period but nonetheless argued that he still suffered an overall loss on his class period purchases in the defendant company's stock. *Id*. Judge Koh rejected his argument, explaining that "[t]he purpose of isolating the calculation of net sales and net gains to the Class Period is to determine whether a party potentially benefitted from the fraud." *Id.* Judge Koh further noted:

> This is not the same as determining whether a party lost or earned money trading in a particular stock. As alleged in the complaint, Defendants' fraud artificially inflated Intuitive's stock price during the Class Period. Thus, when Marcus purchased Intuitive stock prior to the Class Period, he purchased it at fair market value. When he sold it during the Class Period, however, he sold it at fraudulently inflated prices. As a result, instead of being injured by the fraud on these sales, Marcus actually benefitted from the fraud.

*Id.*

Here, STRS clearly received more money selling shares at artificially inflated prices during the Class Period than it spent purchasing shares. As in *Perlmutter*, this reality "makes it more likely that [STRS] benefitted from Defendants' alleged fraud." *Id.* "Even if [STRS] lost money in all of [its Raytheon] stock transactions, this amount was reduced by [its] Class Period sales when the stock prices were inflated." *Id.* Consequently, STRS cannot be appointed lead plaintiff.

**D.     Holders of UTX Stock on the Day of the Merger Do Not Need to Be Separately Represented by a Different Lead Plaintiff**

First New York's contention that it should be the sole lead plaintiff for a separate subclass of investors who held UTX stock at the time of the Merger because these are

---

who sold more shares than it purchased during class period was "totally out of the running for designation as lead plaintiff").

- 7 -

4844-5884-2328.v1

"distinct and antagonistic claims" lacks merit.  *See* ECF No. 17 at 2.[9]  Indeed, courts recognize that movants "cannot simply define the class they seek to represent" as it "fails to meet any standard set forth in the Reform Act for appointing lead plaintiff."  *In re Century Bus. Servs. Sec. Litig.*, 202 F.R.D. 532, 536 (N.D. Ohio 2001).

Even if First New York's Certification had evidenced "all of the transactions" in Raytheon securities during the Class Period as the PSLRA requires (*compare* 15 U.S.C. §78u-4(a)(2)(iv) *with* ECF No. 7-2), First New York "is not the largest stakeholder in the consolidated action, and, by its own definition, it is not typical of the entire class of plaintiffs." *Century Bus.*, 202 F.R.D. at 536.  "Metaphorically speaking, [First New York is] simply trying to shrink the kingdom until they are king." *Id.*  Just because First New York only wants to allege a claim that has yet to be asserted in this case "'does not yield the conclusion that it should be lead plaintiff for all or part of this matter.'" *Id.* (denying motion); *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *6 (N.D. Cal. Apr. 28, 2016) ("'[T]he fact that plaintiffs might have different types of securities also does not require a separate class or co-lead plaintiffs.'"); *Schueneman v. Arena Pharm., Inc.*, 2011 WL 3475380, at *5 (S.D. Cal. Aug. 8, 2011) ("Being a lead plaintiff is not the same thing as being a class

---

[9]    First New York's attempt to create the appearance of a conflict also does not warrant creation of a subclass or the appointment of a separate lead plaintiff for a subclass.  Indeed, hypothetical conflicts are plainly insufficient under the PSLRA to either rebut the most adequate plaintiff presumption or warrant the appointment of a co-lead plaintiff. *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 133 (S.D.N.Y. 2011) ("[T]he conflict of interest must be shown, not merely speculated, in order to rebut the presumption of the most adequate lead plaintiff."); *Reimer v. Ambac Fin. Grp., Inc.*, 2008 WL 2073931, at *4 (S.D.N.Y. May 9, 2008) (the "conflict of interest must be shown" not "theoretical"); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 263 (D.D.C. 2006) (rejecting a party's challenge to a prospective lead plaintiff because the movants "offer[ed] no proof" of how potential conflicts would become actual conflicts and because their arguments were "too speculative and hypothetical to rebut the presumption").  This is particularly so considering that First New York strategically chose not to provide all of its transactions in Raytheon securities as the PSLRA requires such that its own self-interest in advancing such a theory is not discernable.

4844-5884-2328.v1

representative, and additional named plaintiffs may be added later to represent subclasses of plaintiffs with distinct interests or claims.").[10]

As one court duly noted in rejecting an attempt to splinter a case at the outset:

More likely than not, the putative class in any large shareholder action will be composed of plaintiffs whose portfolios differ in composition from one another. This, however, does not justify the appointment of potentially innumerable co-lead plaintiffs to ensure that each individualized interest is represented. Competing movants may be correct that the resolution of this case could ultimately favor holders of one type of security over the others. On the other hand, representation by a disparate group of plaintiffs, each seeking only the protection of its own interests, could well hamper the force and focus of the litigation. A balance must be struck.

*In re Cendant Corp. Litig*., 182 F.R.D. 144, 148 (D.N.J. 1998). Stated differently, "notwithstanding every plaintiff's undeniable interest in an outcome most favorable to his or her position, every warrior in this battle cannot be a general." *Id.*

First New York's request also runs counter to the PSLRA and *Cavanaugh*, which expressly provides that the Court cannot disregard the statutory scheme merely because it may believe that the First New York might do a better job litigating the case for its niche sub-class: "That the district court believes another plaintiff may be 'more typical' or 'more

_____

[10] *See also Hevesi v. Citigroup Inc*., 366 F.3d 70, 82 (2d Cir. 2004) (courts regularly deny requests for appointment as co-lead plaintiff to represent "niche" investors because "[n]othing in the PSLRA indicates that district courts must choose a lead plaintiff with standing to sue on every available cause of action"); *Khunt v. Alibaba Grp. Holding Ltd*., 102 F. Supp. 3d 523, 541 (S.D.N.Y. 2015) (denying request for creation of subclass for different securities at lead plaintiff stage); *Fishbury, Ltd. v. Connetics Corp*., 2006 WL 3711566, at *4 (S.D.N.Y. Dec. 14, 2006) (denying request by purchaser of different security for appointment as co-lead plaintiff); *In re Enron Corp., Sec, Litig*., 206 F.R.D. 427, 451 (S.D. Tex. 2002) (rejecting arguments by preferred stockholders, bondholders, and other securities holders that separate classes and separate lead counsel were required for each type of security because "[t]aken to its logical extreme," such an "argument that each group of [securities] . . . requires a different class or subclass and separate Lead Plaintiff would fracture this litigation into hundreds of classes or subclasses and obstruct any efficient and controlled progress"); *Greenberg v. Bear Sterns & Co., Inc*., 80 F. Supp. 2d 65, 70 (E.D.N.Y. 2000) ("When attempting to resolve who is the most adequate plaintiff to represent the class, the Court is of the view that the largest financial interest of the class should be considered, not the largest financial interest of separate sub classes.").

4844-5884-2328.v1

adequate' is of no consequence. So long as the plaintiff with the largest losses satisfies the typicality and adequacy requirements, he is entitled to lead plaintiff status, even if the district court is convinced that some other plaintiff would do a better job." *Cavanaugh*, 306 F.3d at 732.

Ultimately, First New York's "'speculation about potential class standing problems should not be resolved by the appointment of multiple lead plaintiffs . . . , but by the appointment, if necessary and desirable, of additional class representatives as the litigation proceeds.'" *Bodri*, 2016 WL 1718217, at *6; *In re Surebeam Corp. Sec. Litig.*, 2004 WL 5159061, at *10 (S.D. Cal. Jan. 5, 2004) ("While a conflict of interest is an adequate reason to appoint niche lead plaintiffs, the court may not rely on speculations about possible future conflicts."). Indeed, the "statute presumes that 'one lead plaintiff can vigorously pursue all available causes of action against all possible defendants under all available legal theories.'" *Surebeam*, 2004 WL 5159061, at *10. And here, the Annuity Fund also held UTX shares on the day of the merger. *See* ECF No. 8-5.

All First New York has proffered is a hypothetical conflict that might, or might not, arise in the future. That is insufficient to either rebut the presumption or warrant the appointment of a co-lead plaintiff. First New York's ill-advised and unsupported request to splinter the case and appoint a niche lead plaintiff for a subclass that does not even exist yet should be denied.

## III.    CONCLUSION

The Annuity Fund is the only movant to satisfy Rule 23's requirements. No movant has even attempted to rebut the presumption in the Annuity Fund's favor. The Annuity Fund's motion to be appointed Lead Plaintiff should be granted.

DATED:  January 19, 2021                    Respectfully submitted,

**ZIMMERMAN REED LLP**
HART L. ROBINOVITCH (AZ SBN 020910)

*s/ Hart L. Robinovitch*
HART L. ROBINOVITCH

- 10 -

4844-5884-2328.v1

14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ 85254-2762
Telephone: 480/348-6400
Facsimile: 480/348-6415
Email: hart.robinovitch@zimmreed.com

Local Counsel for [Proposed] Lead Plaintiff

**ROBBINS GELLER RUDMAN & DOWD LLP**
DANIELLE S. MYERS
JENNIFER N. CARINGAL
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
Facsimile: 619/231-7423 (fax)
Email: dmyers@rgrdlaw.com
      jcaringal@rgrdlaw.com

[Proposed] Lead Counsel for [Proposed] Lead Plaintiff

- 11 -

4844-5884-2328.v1

CERTIFICATE OF SERVICE

I hereby certify under penalty of perjury that on January 19, 2021, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses on the attached Electronic Mail Notice List, and I hereby certify that I caused the mailing of the foregoing via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

*s/ Hart L. Robinovitch*
HART L. ROBINOVITCH

ZIMMERMAN REED LLP
14646 N. Kierland Blvd., Suite 145
Scottsdale, AZ  85254-2762
Telephone: 480/348-6400
Facsimile: 480/348-6415

E-mail:  hart.robinovitch@zimmreed.com

4844-5884-2328.v1

# Mailing Information for a Case 4:20-cv-00468-JCH Bajjuri v. Raytheon Technologies Corporation et al

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Cory L Braddock**
  cbraddock@swlaw.com,arc@swlaw.com,docket@swlaw.com

- **Andrew S Friedman**
  afriedman@bffb.com,andrewfriedman50@gmail.com,rcreech@bffb.com

- **Gary A Gotto**
  ggotto@kellerrohrback.com,kkendrick@kellerrohrback.com

- **Richard Glenn Himelrick**
  rgh@tblaw.com,sab@tblaw.com

- **Phillip Kim**
  pkim@rosenlegal.com

- **Mark D Lammers**
  mdlammers@rllaz.com,awrzeszcz@rllaz.com

- **Kim E Miller**
  kim.miller@ksfcounsel.com

- **Hart Lawrence Robinovitch**
  AZDocketing@zimmreed.com,sabine.king@zimmreed.com,Hart.Robinovitch@zimmreed.com

- **Laurence Matthew Rosen**
  lrosen@rosenlegal.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)