Gary A. Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322
Facsimile: (602) 248-2822
*Liaison Counsel for Movant the State Teachers*
*Retirement System of Ohio*

[Additional counsel on signature page]

UNITED STATES DISTRICT COURT
DISTRICT OF ARIZONA

| | |
|---|---|
| Pranay K. Bajjuri, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Raytheon Technologies Corporation f/k/a Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood, <br><br> Defendants. | Case No. CV-20-00468-JCH <br><br> Hon. John C. Hinderaker <br><br> **REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF THE STATE TEACHERS RETIREMENT SYSTEM OF OHIO FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** |
| Daniel Norris, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> Raytheon Technologies Corporation f/k/a Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood, <br><br> Defendants. | Case No. CV-20-00543-RM |

## TABLE OF CONTENTS

_Toc61965647

I.     PRELIMINARY STATEMENT ...................................................................................1

II.    ARGUMENT ............................................................................................................3

    A.    THE RETIREMENT SYSTEM HAS THE LARGEST FINANCIAL INTEREST IN THIS LITIGATION ..........................................................................3

        1.    The Retirement System Has Incurred The Largest Loss Under The Longest Class Period and Most Expansive Class Definition...................................3

        2.    The PSLRA Does Not Allow Damages to be Adjusted to Account for Class Period Spinoffs .................................................................................6

        3.    The Retirement System Has Incurred The Largest Loss Under Virtually All Alternative Class Periods and Class Definitions .................................8

        4.    The Retirement System Has The Largest Financial Interest Assessed With Reference to the Other Lax-Olsten Factors ...............................................9

    B.    THE RETIREMENT SYSTEM'S INITIAL OMISSION OF BOND PURCHASES HAS NO BEARING ON ITS ADEQUACY .................................11

    C.    THE RETIREMENT SYSTEM SHOULD BE APPOINTED AS LEAD PLAINTIFF ON BEHALF OF ALL CLASS MEMBERS AND NO SUB-CLASSES ARE NECESSARY .................................................................................11

III.   CONCLUSION .........................................................................................................12

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538,
 2005 U.S. Dist. LEXIS 531 (N.D. Ill. Jan. 12, 2005) ...........................................................7

*Aronson v. McKesson HBOC, Inc.*,
 79 F. Supp. 2d 1146 (N.D. Cal. 1999) ............................................................................... 10

*Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP,
 2008 U.S. Dist. LEXIS 64633 (N.D. Cal. Aug. 22, 2008)................................................ 3, 5

*In re Am Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265,
 2004 U.S. Dist. LEXIS 10200 (E.D. Pa. June 3, 2004) .........................................................7

*In re Critical Path*,
 156 F. Supp. 2d 1102 (N.D. Cal. 2001) ........................................................................... 2, 9

*In re Network Assocs. Sec. Litig.*,
 76 F. Supp. 2d 1017 (N.D. Cal. 1999) .................................................................................9

*In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK,
 2017 U.S. Dist. LEXIS 11553 (N.D. Cal. Jan. 25, 2017) ................................................... 11

*Niederklein v. PCS Edventures!.com, Inc.*, 1:10-cv-00479-EJL-CWD,
 2011 U.S. Dist. LEXIS 18247 (D. Idaho Feb. 24, 2011) .................................................... 11

*Pio v. General Motors Co.*, No. Civ. 14-11191,
 2014 U.S. Dist. LEXIS 151205 (E.D. Mich. Oct. 24, 2014)............................................ 2, 10

*Schueneman v. Arena Pharmas, Inc.*, No. 10-CV-1959-BTM,
 2011 U.S. Dist. LEXIS 87373 (S.D. Cal. Aug. 8, 2011) .......................................................3

*Woburn Ret. Sys. v. Omnivision Techs, Inc.*,\ No. 5:11-CV-05235-RMW,
 2012 U.S. Dist. LEXIS 21590 (N.D. Cal. Feb. 21, 2012).................................................. 2, 3

**Statutes**

15 U.S.C. §78u-4(a)(3)(B)(iii)(I) ...............................................................................................1

15 U.S.C. § 78u-4(a)(3)(B)(iii)(II) .............................................................................................1

15 U.S.C. § 78u-4(e)(1) ......................................................................................................... 2, 7

**<u>Rules</u>**

Fed. R. Civ. P. 23 ................................................................................................................. 1, 11

The Retirement System[1] respectfully submits this reply memorandum of points and authorities in further support of its motion and in opposition to competing motions.

## I.    PRELIMINARY STATEMENT

The Retirement System is the presumptive Lead Plaintiff in this litigation because it is the only movant that satisfies both of the relevant statutory criteria.   15 U.S.C. §78u-4(a)(3)(B)(iii)(I).  First, it possesses the "largest financial interest," having incurred a substantial loss of $34,778,031 on a FIFO basis or $19,541,679 on a LIFO basis in connection with its Class Period purchases of Raytheon securities.   *See* Dkt. No. 18-2.  Second, the Retirement System has made the requisite *prima facie* showings of adequacy and typicality within the meaning of Rule 23.  *See* Dkt. No. 14 at 9-12.  As such, it is entitled to a strong presumption that it is the "most adequate plaintiff" of the Class—*i.e.*, the Lead Plaintiff—a presumption that can be rebutted only upon "proof" that the Retirement System is inadequate, atypical and/or subject to a unique defense. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).  No such proof has been adduced, and the presumption in the Retirement System's favor remains unrebutted.

Two competing movants, the Annuity Fund and Francisco, attempt to muddy the waters by laying claim to the "largest financial interest" themselves, but their respective claims rely on arguments that lack support in law or fact.  First, the Annuity Fund and Francisco each urge the Court to adopt separate Class and Class Period definitions, each of which would exclude significant losses incurred by many former UTX investors who acquired their RTX shares via the April 2020 merger between UTX and Raytheon Co. (the "Merger"), while conveniently increasing the Annuity Fund's and Francisco's respective losses relative to those of other movants.  Not only is restricting the size of the Class at the outset of the litigation at odds with the principle that the Court should consider the most expansive Class for the purposes of Lead

---

[1] All capitalized terms herein are defined in the Retirement System's moving and opposition briefs, unless otherwise indicated.  *See* Dkt. Nos. 14, 18.

1

Plaintiff appointment (*see*, *e.g.*, *Woburn Ret. Sys. v. Omnivision Techs, Inc.*, No. 5:11-CV-05235-RMW, 2012 U.S. Dist. LEXIS 21590, at \*14 (N.D. Cal. Feb. 21, 2012)), it is also at odds with the reality of the merger, in which former UTX shareholders came to control 57% of the combined company (RTX), with their UTX shares, rather than Raytheon Co. (RTN) shares, remaining outstanding.  Second, the Annuity Fund further submits that the Retirement System's losses must be adjusted downward to account "for two spinoffs of Otis Worldwide Corp. and Global Carrier Corp. on April 3, 2020 that occurred as a result of the [Merger]" (the "Spinoffs"). Dkt. No. 16 at 3.  This argument is unaccompanied by any citations to authority—let alone any qualitative information regarding these Spinoffs—and is in fact at odds with the PSLRA's clear instructions for loss calculation, which aims to *exclude* the economic impact of any non-fraud factors, such as the Spinoffs, and directs the courts to only look at the *actual* prices paid or sold by a party, not some contrived "adjusted" price concocted by the Annuity Fund.  *See* 15 U.S.C. § 78u-4(e)(1).

In the alternative, if the Court declines to consider loss as the most significant financial interest metric and endorse a specific damages methodology at this stage, then the Retirement System urges the Court to look instead to the other three Lax-Olsten factors—securities purchased, funds expended, and securities retained—all of which are more objective and less manipulable metrics than monetary loss, and all of which favor the appointment of the Retirement System.  *See*, *e.g.*, *In re Critical Path*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001); *Pio v. General Motors Co.*, No. Civ. 14-11191, 2014 U.S. Dist. LEXIS 151205, at \*4 (E.D. Mich. Oct. 24, 2014).

Finally, FNY's argument that the Court should carve out a UTX Class fails because it rests on a fraud theory that is unsupported by any allegations in the operative Complaints, and FNY has failed to demonstrate why the Retirement System, which held a significantly greater

number of UTX shares at the time of the merger, would not adequately protect the interests of such shareholders.

## II.    ARGUMENT

### A.    THE RETIREMENT SYSTEM HAS THE LARGEST FINANCIAL INTEREST IN THIS LITIGATION

#### 1.    The Retirement System Has Incurred The Largest Loss Under The Longest Class Period and Most Expansive Class Definition

Among the competing movants, the Retirement System has incurred the largest loss calculated with reference to the longest class period and the most expansive Class definition, which is the Class Period that the Court should use to assess financial interest at this stage of the litigation. "When determining the movant with the largest financial interest the courts generally look to the most inclusive class period in its evaluation." *Omnivision Techs.*, 2012 U.S. Dist. LEXIS 21590, at *14 (citing *Schueneman v. Arena Pharmas, Inc.*, No. 10-CV-1959-BTM, 2011 U.S. Dist. LEXIS 87373, at *7-*8 (S.D. Cal. Aug. 8, 2011)).  At this stage, the Court should be "wary of arguments advocating a shorter class period instead of the longest potential class period." *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 U.S. Dist. LEXIS 64633, at *2 (N.D. Cal. Aug. 22, 2008) (finding it "unclear why a plaintiff would argue for" a more restricted class definition "unless it was in the best interest of that particular plaintiff only" because "no benefits accrue" by restricting the class definition).

Here, the Complaints in the Related Actions define the Class as ***all*** persons who acquired Raytheon securities during the Class Period—*i.e.*, between February 10, 2016 and October 27, 2020.  *See* Dkt. No. 1 ¶ 1; *Norris* Dkt. No. 1 ¶ 1.  There is no qualifying language excluding any investors who acquired Raytheon securities during the Class Period based on the circumstances of their acquisitions.  Accordingly: (i) the Class definition includes investors in the securities of ***both*** of Raytheon's two corporate predecessors, UTX and Raytheon Co., who acquired shares via the two companies' merger in April 2020 to form Raytheon (*i.e.*, Raytheon Technologies

3

Corporation); and (ii) an appropriate calculation of losses includes damages to shares acquired in the merger. The PSLRA Notice announcing the pendency of the first-filed of the Related Actions advised *all* investors who acquired Raytheon securities "between February 10, 2016 and October 27, 2020, inclusive" of their right to apply to the Court for Lead Plaintiff appointment. *See* Dkt. No. 14-3 at *2. The Retirement System's loss calculation thus takes into account losses incurred in connection with shares it acquired when its pre-Merger holdings of UTX and Raytheon Co. (RTN) stock converted to RTX stock by virtue of the merger, as well as RTX securities that the Retirement System acquired on the market post-Merger. *See* Dkt. Nos. 18-1, 18-2. In sum, the Retirement System incurred Class Period losses of $34,778,031 on a FIFO basis or $19,541,679 on a LIFO basis, significantly more than any competing movant.

Rather than correctly adopting the most expansive Class Period and Class definition, the Annuity Fund and Francisco advocate significantly more restrictive definitions that would exclude many investors from the Class definition at the outset of the litigation. The Annuity Fund argues that "the alleged financial fraud occurred at old Raytheon Company (RTN), not UTX" and asserts that "only UTX/RTX purchases from the date the Merger was announced through the end of the Class Period" were damaged by the fraud (*see* Dkt. No. 16 at 3), thereby advocating a Class Period that would exclude investors who acquired UTX stock prior to the June 9, 2019 Merger announcement. Francisco goes even further, asserting that UTX shares acquired prior to the Merger have "no relevance to this Action" and that "[l]osses on transactions in [UTX] stock prior to [the Merger] are not recoverable[,]" incorrectly asserting that "these losses were not in Raytheon stock, which forms the basis of this lawsuit." Dkt. No. 10 at 1-2, 4. This even more restrictive definition would exclude *all* UTX investors from the Class, even though many of them, like the Retirement Systems, clearly acquired RTX shares as part of the merger.

First, the Retirement System urges the Court to be "wary" of any effort to restrict the class definition at this stage, as it is "unclear why a plaintiff would argue for" a more restricted class

definition, "reducing the class size and limiting the potential amount of damages, unless it was in the best interest of that particular plaintiff only." *Eichenholtz*, 2008 U.S. Dist. LEXIS 64633, at *2  As discussed *infra* at Section II.A.2, the Class definitions advocated by the Annuity Fund and Francisco are indeed transparently self-serving, as the adoption of those restrictions to the Class membership are critical to their claiming the largest loss in this litigation.

Moreover, Francisco's Class definition erroneously characterizes Raytheon Co. as *the* principal predecessor entity to RTX based purely on the similarity of the two companies' names, and on that basis attempts to exclude UTX investors from the Class.  This overlooks the reality of the Merger.  As part of the Merger, RTN shares were converted to UTX shares, not vice versa. UTX was the successor company, simply changing its name and symbol to RTX.  *See* Reply Declaration of Jeremy A. Lieberman ("Lieberman Reply Decl."), Ex. A; Ex. B at 2.  RTX's SEC filing reporting the completion of the Merger on April 3, 2020 described "Raytheon Technologies Corporation" as "formerly known as United Technologies Corporation" and clearly described it as the surviving entity, with Raytheon Co. as the acquired entity.  *See* Lieberman Reply Decl., Ex. A.  Analysts reacting to the Merger announcement thus universally treated the combined entity as a continuation of *UTX,* not of Raytheon Co.  For example, Bank of America Merrill Lynch noted that "UTX common stock will remain outstanding and constitute shares of the combined company," with "[o]utstanding UTX[] to be later renamed RTX[.]"  *See id.*, Ex. B. Likewise, Barclays referred to the combined entity as "UTX RemainCo," noting that "it would be natural for UTX shareholders to own a majority of" the combined company, given the relative contributions of UTX and Raytheon Co.'s businesses to the combined company's operations.  *See id.*, Ex. C at *1.  As such, UTX shareholders are one and the same as Raytheon Technologies Corporation (RTX) shareholders, and the fact that all four of the competing movants before the Court have attested to losses incurred via UTX investments clearly illustrates that these investors

5

understood themselves to be part of the Class in this litigation. Francisco does not have the ability to exclude them from the Class just in order to manufacture a greater loss for himself.

Moreover, contrary to Francisco's arguments, losses of purchasers of UTX shares prior to the August 3, 2020 merger are necessarily damaged shareholders whose losses need to be included in the financial interest calculation. *At the very least*, after the June 9, 2020 Merger Announcement, both analysts and investors incorporated RTN's false and misleading statements when valuing and setting price targets on UTX's stock. *See id.*, Ex. A at 1-3 (evaluating merger with reference to RTN's reported financial metrics and "maintain[ing] our Buy rating[] on UTX"); Ex. B at *1 (same, assigning a "Neutral" stock rating to UTX). As such, UTX purchasers purchased shares at inflated prices from the time of the Merger Announcement until the Merger and were damaged when the succeeding RTX shares declined on announcement of the receipt of a criminal subpoena by Raytheon.

Moreover, Francisco cannot plausibly argue that UTX class members that held its shares as of the April 3, 2020 Merger necessarily acquired RTX shares at a price of $86.01 per share, the same acquisition price he applied to the RTN shares converted to RTX on the day of the merger. *See* Dkt. No. 11-4. Applying that calculation to Retirement System's 705,858 shares held on the merger would give it a loss of $19,183,066, still far greater than Francisco's. *See* Lieberman Reply Decl., Ex. C. In essence, Francisco is advocating that *all* UTX shareholders should be excluded from the class even though they automatically acquired RTX shares as part of the Merger. The Court should not take the bait to exclude such a significant part of the class just to manufacture the largest loss for Francisco.

## 2. The PSLRA Does Not Allow Damages to be Adjusted to Account for Class Period Spinoffs

The Annuity Fund also incorrectly asserts that the Retirement System erred because its "loss calculation failed to adjust the transaction prices for" the two Spinoffs "that occurred as a

result of the" Merger and that "the impact of these errors" reduces the Retirement System's loss to only $415,000 on a LIFO basis and actually gives the Retirement System a $1.7 million gain on a FIFO basis. Dkt. No. 16 at 3. Not so. There is no basis in either the PSLRA or in federal jurisprudence to support these Spinoff-related "adjustments" to the Retirement System's losses— and, conspicuously, the Annuity Fund cites no authority for its argument, nor has any other competing movant joined this argument. Rather, the PSLRA contains clear instructions for calculation of fraud damages, prescribing a methodology that limits a plaintiff's damages with reference to the difference between the actual purchase price and the greater of "the mean trading price" of the security from the end of the Class Period until the date of sale (if sold within ninety days of the end of the Class Period) (the "lookback price") and the actual sale price. 15 U.S.C. § 78u-4(e)(1).

The purpose of this statutory damages cap is to "rectify the uncertainty in calculating damages by providing a 'bounce back' period"—*i.e.*, a period of time within which the Company's stock price could potentially recover—"thereby limiting damages to those losses caused by the fraud and not by other market conditions." S. Rep. No. 104-98 (1995). Courts accordingly decline invitations to ignore these statutory instructions and offset movants' damages by factoring in alleged benefits received from non-fraud related events. *See*, *e.g.*, *In re Am Bus. Fin. Servs., Inc. Sec. Litig.*, No. 04-0265, 2004 U.S. Dist. LEXIS 10200, at *9 (E.D. Pa. June 3, 2004) (rejecting argument that movant "improperly inflated the size of their loss by neglecting to account for stock dividends executed during the class period," finding no "citations to case law or other support" for the argument); *Abrams v. Van Kampen Funds, Inc.*, No. 01 C 7538, 2005 U.S. Dist. LEXIS 531, at *38-*39 (N.D. Ill. Jan. 12, 2005) (finding that "as a matter of law, the payment of dividends would not be part of the calculation of damages[.]").

Accordingly, the PSLRA makes absolutely no reference to any "adjusted price" and does not permit the recalculation of permissible damages to be adjusted for such phantom prices.

Moreover, the Annuity Fund provides neither any information regarding the Spinoffs nor rationale for how it has created these "adjusted prices" in its calculation, nor do the relevant Complaints even make reference to the Spinoffs. Similarly, ***none*** of the other competing movants calculate their losses according to such "adjusted prices", underscoring the speciousness of the Annuity Fund's loss calculations.

### 3.   The Retirement System Has Incurred The Largest Loss Under Virtually All Alternative Class Periods and Class Definitions

The Annuity Fund and Francisco have both effectively reverse-engineered their claimed loss figures by gaming the various potential inputs until each found a single, narrow path by which to claim to the largest financial interest in this litigation, consisting of a series of self-serving assumptions. For the Annuity Fund, that path consists of: (i) redefining the Class to exclude losses from acquisitions of UTX shares prior to June 9, 2019; (ii) manufacturing "adjusted prices" to "account" for the Spinoffs; and (iii) valuing UTX shares converted to RTX shares as a result of the merger at $49.93 per share (the price at which the stock closed on April 3, 2020, after the Merger). For Francisco, that path consists of: (i) redefining the Class to exclude ***all*** losses from acquisitions of UTX shares during the Class Period as well as excluding any acquisition of RTX stock by UTX shareholders on the date of the merger; (ii) ***not*** adjusting damages calculations to account for the Spinoffs; and (iii) valuing UTX shares converted to RTX shares as a result of the merger at $86.01 per share (the price at which the stock closed on April 2, 2020, before the Merger).

The chart submitted herewith illustrates the sheer number of potential loss figures that can be engineered by changing the relevant variables. *See* Lieberman Reply Decl., Ex. C. By changing certain assumptions underlying its loss calculations—with respect to the Class definition and Class Period, the treatment of the Spinoffs, and the valuation of shares converted as a consequence of the Merger—the Annuity Fund can be said to have incurred a loss as large

8

as $423,879, or in fact gained $32,858 from its Class Period investments. *See id.* Likewise, Francisco's financial interest ranges from a loss of $34,720 to a gain of $34,337, depending upon the assumptions used in the loss calculation. *See id.* Of the eleven different scenarios illustrated, only two result in the Annuity Fund having the largest loss, one results in Francisco having the largest loss, and the other eight scenarios give the Retirement Fund the largest loss. *See id.* That Francisco and the Annuity Fund have only one and two paths respectively to victory only emphasizes the extent to which their respective claimed losses are manufactured via a contrived process—as does the fact that the Annuity Fund's and Francisco's respective loss calculations diverge significantly in their core assumptions. By contrast, that the Retirement Fund would prevail under *73%* of these potential scenarios only underscores the extent to which it clearly possesses the largest financial loss in this litigation—and unlike the Annuity Fund and Francisco, without needing to hack a convoluted path which necessarily excludes large swaths of Class members from securing a recovery in this Action. In short, by nearly any conceivable damages methodology, the Retirement System possesses the largest financial interest in this litigation by a significant margin.

### 4. The Retirement System Has The Largest Financial Interest Assessed With Reference to the Other Lax-Olsten Factors

In the alternative, if in light of the number of alternative calculations proffered by the movants, the Court is disinclined to assess financial interest in terms of the movants' monetary losses, then the Court should consider the other three Lax-Olsten factors—securities purchased, funds expended, and securities retained at the end of the Class Period—all of which favor the Retirement System. While courts generally consider monetary loss to be the dispositive factor, they frequently do look to the other Lax-Olsten factors as well, particularly where some difficulty exists in determining the appropriate measure of loss.[2]

---

[2] *See, e.g.*, *In re Critical Path*, 156 F. Supp. 2d 1102, 1108 (N.D. Cal. 2001) ("The Court considers [net shares purchased] the most straightforward method for approximation of

*Pio* is instructive.  There, the court faced competing lead plaintiff movants each claiming to have incurred the largest loss, "presenting a dizzying array of damages calculations in their brief and declarations" (*id.* at \*18 (quoting *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1158 (N.D. Cal. 1999)).  After "spen[ding] considerable time making sense of the 'recoverable loss' calculations submitted . . . in its attempt to understand the formulas used by the movants, uncovering the source of their numbers, and weighing the competing arguments for rejecting the opposing movant's calculations[,]" the court ultimately "decline[d] the invitation to ignore all but the fourth *Lax* factor [*i.e.*, loss] in deciding which movant has the largest financial interest in this litigation" and found that "the first three factors provide the most objective measurement of a movant's stake in the litigation because [loss] is heavily dependent on the method applied and numbers chosen to calculate losses."  *Id.* at \*11.

Here, the Retirement System respectfully submits that losses are appropriately calculated, without difficulty, with reference to the most inclusive Class Period and Class definition, as set forth in detail *supra* at pp. 3-6, but recognizes that, given the convoluted and divergent loss-calculation methodologies respectively advocated by the Annuity Fund and Francisco, the Court may be disinclined to endorse any particular damages methodology at this stage.  If so, then the Retirement System respectfully urges the Court to consider instead the other three Lax-Olsten factors as objective, non-variable measures of financial interest.

| Movant | Securities Purchased | Funds Expended | Securities Retained |
|---|---|---|---|
| Retirement System | 1,159,370 shares 28,013,000 bond principal | $142,036,888 | 787,219 shares 12,000,000 bond principal |
| Annuity Fund | 11,373 shares 1,869,000 bond principal | $2,942,022 | 11,373 shares 1,197,000 bond principal |
| Francisco | 1,914 shares | $95,566 | 1,914 shares |
| FNY | *Financial interest expressed only in terms of 211,761 UTX shares held as of Merger* | | |

financial interest"); *In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1028 (N.D. Cal. 1999) (assessing financial interest with reference to net shares purchased where movants' submissions were "confusing and laced with errors and unspoken assumptions"); *Pio v. General Motors Co.*, No. Civ. 14-11191, 2014 U.S. Dist. LEXIS 151205, at \*4 (E.D. Mich. Oct. 24, 2014) (same).

10

As the table illustrates, the Retirement System purchased more securities, expended more funds on its purchases and retained more securities at the end of the Class Period than did any competing movant.  Accordingly, even if the Court were to disregard the competing movants' monetary losses and consider only the other Lax-Olsten factors, the Retirement System would still possess the largest financial interest in this litigation by a massive margin.

**B.**     **THE RETIREMENT SYSTEM'S INITIAL OMISSION OF BOND PURCHASES HAS NO BEARING ON ITS ADEQUACY**

The Retirement System acknowledged in its opposition brief that certain transactions in Raytheon bonds were inadvertently omitted from its Certification and submitted an Amended Certification including those transactions, and also voluntarily included its specific RTN transactions, even though it supplied the necessary information regarding the shares held as of the Merger date in its initial Certification.  *See* Dkt. Nos. 14-4, 18-3.  The initial omission of such transactions is the type of "inadvertent mistake[] . . . that do[es] not strike at the heart of Rule 23's adequacy requirement" or otherwise provide a basis for denying the Retirement System's motion. *In re SolarCity Corp. Sec. Litig.*, No. 16-CV-04686-LHK, 2017 U.S. Dist. LEXIS 11553, at *18 (N.D. Cal. Jan. 25, 2017) (quoting *Niederklein v. PCS Edventures!.com, Inc.*, 1:10-cv-00479-EJL-CWD, 2011 U.S. Dist. LEXIS 18247, at *34 (D. Idaho Feb. 24, 2011)) (collecting cases).  This omission has been cured with the Amended Certification.  *See* Dkt. No. 18-3).

**C.**     **THE RETIREMENT SYSTEM SHOULD BE APPOINTED AS LEAD PLAINTIFF ON BEHALF OF <u>ALL</u> CLASS MEMBERS AND NO SUB-CLASSES ARE NECESSARY**

FNY continues to seek leadership of a purported niche "UTX Class".  Dkt. No. 17 at 4. As discussed in the Retirement System's opposition brief, Courts disfavor carving out niche subclasses at Lead Plaintiff appointment stage.  *See* Dkt. No. 18 at 11-14.  And having held more than three times the number of UTX shares as FNY did at the time of the Merger, the Retirement System has every incentive to vigorously pursue a recovery on behalf of such UTX shareholders.

## III.   CONCLUSION

For all of the foregoing reasons, the Retirement System respectfully requests that the Court issue an Order granting its motion in its entirety and denying the competing motions.

Dated:  January 19, 2021                                        Respectfully submitted,

*/s/ Gary A. Gotto*
Gary A. Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322
Facsimile:  (602) 248-2822

*Liaison Counsel for Movant the State Teachers Retirement System of Ohio*

**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Movant the State Teachers Retirement System of Ohio and Proposed Lead Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on January 19, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Gary A. Gotto*
Gary A. Gotto