# EXHIBIT 1

Case 4:20-cv-00468-JCH    Document 27-1    Filed 03/01/21    Page 2 of 5

2021 WL 411445
Only the Westlaw citation is currently available.
United States District Court, W.D. Wisconsin.

IN RE SPECTRUM BRANDS LITIGATION

19-cv-178-jdp
|
19-cv-347-jdp
|
Signed 02/05/2021
|
Filed 02/06/2021

OPINION and ORDER

JAMES D. PETERSON, District Judge

**\*1**  The plaintiffs in these consolidated cases contend that defendants Spectrum Brands Legacy, Inc., Spectrum Brands Holdings, Inc., HRG Group, Inc., and some of their officers violated the Securities Exchange Act of 1934 by misrepresenting the value of their stock. The parties have moved for approval of a proposed $39,000,000 settlement, Dkt. 49, but the court has received a substantial objection, Dkt. 54, and a motion to intervene, Dkt. 57, from class members Jet Capital Master Fund LP, Jet Capital SRM Master Fund LP, and Walleye Investments Fund (collectively "Jet"). [1]

Jet's objection is both procedural and substantive. First, it says that: (1) the notice plaintiffs provided at the beginning of the lawsuit was defective because it didn't mention that purchasers of HRG stock would be included in the lawsuit; and (2) the lead plaintiffs aren't adequate representatives of class members who purchased HRG stock. Second, it says that the parties' plan of allocation is unreasonable because it imposes an arbitrary, 75 percent discount on the claims of HRG stock purchasers. Jet asks the court to remedy these problems by either removing the discount from the plan of allocation or appointing Jet as liaison plaintiff to attempt to renegotiate the settlement on behalf of the HRG class members.

The court agrees with Jet that there is a problem, but Jet hasn't identified an appropriate solution. For the reasons explained below, the court will give plaintiffs the option of sending out a

new notice or excluding the claims of HRG stock purchasers from the class. All pending motions will be denied without prejudice, including plaintiffs' motion to strike portions of Jet's reply brief. Plaintiffs contend that Jet raised due process concerns for the first time in its reply brief, but the court isn't relying on those concerns in this order, so the motion to strike is moot.

## ANALYSIS

To fully understand the nature of Jet's objections, some background is necessary. Before July 2018, Spectrum Holdings and HRG were separate companies. HRG was a holding company that owned a majority of Spectrum Holdings' stock. In July 2018, HRG acquired all of Spectrum Holdings' stock, making Spectrum Holdings a wholly owned subsidiary of HRG. As a result of the merger, Spectrum Holdings changed its name to Spectrum Legacy, and HRG changed its name to Spectrum Holdings. To avoid confusion, the court will refer to the company that is now called Spectrum Legacy as "Old Spectrum" and the company that is now called Spectrum Holdings as "New Spectrum." Any reference to HRG is to the company of that name that existed before the merger.

Plaintiffs' amended complaint is 135 pages long, Dkt. 14, but the gist of their allegations is that Old Spectrum, New Spectrum, and their officers falsely represented that a consolidation of two facilities was a success when in fact it adversely affected the company's financial performance, destroyed major customer relationships, and wrecked management credibility. Dkt. 14, ¶ 1. Plaintiffs also sought to hold HRG liable under 15 U.S.C. § 78t as an entity that controlled the other defendants as a result of its status as a majority stockholder.

**\*2**  Plaintiffs' amended complaint identifies three groups that are members of the class: (1) those who purchased Old Spectrum stock between January 2017 and July 2018; (2) those who purchased HRG stock between January 2017 and July 2018; and (3) those who purchased New Spectrum stock between July 2018 and November 2018. Jet is a member of group (2), but not the other two groups.

All of Jet's objections are focused on what it says is unfair treatment of HRG stock purchasers. Its primary objection is that the proposed settlement discounts the claims of HRG purchasers by 75 percent compared to the claims of the other

2021 WL 411445

two groups. Jet says that the discount is arbitrary, and that the process plaintiffs followed before determining the discounts is flawed in two significant respects.

First, Jet says that purchasers of HRG stock didn't receive notice of the action until the parties sent out notice of the proposed settlement, in violation of the Private Securities Litigation Reform Act (PSLRA), which requires plaintiffs to publish notice of a proposed securities class action within 20 days of filing the complaint. 15 U.S.C. § 78u-4(a)(3) (A)(i). Plaintiffs did publish a timely notice, but the notice didn't include the claims of HRG stock purchasers. Rather, the notice only identified claims of purchasers of Old and New Spectrum stock. HRG wasn't mentioned in the notice because the original complaint didn't include claims of HRG stock purchasers either. It wasn't until plaintiffs filed their amended complaint that they added the HRG claims. But by then, the notice had already been published and approved by the court, and plaintiffs didn't publish an amended notice after amending the complaint. As a result, HRG stock purchasers didn't have an opportunity to apply to be a lead plaintiff.

Second, Jet says that the two lead plaintiffs the court appointed—the Public School Teachers' Pension and Retirement Fund of Chicago (the Public School Fund) and the Cambridge Retirement System—aren't adequate representatives of HRG stock purchasers. This is because the Cambridge Retirement System purchased no HRG stock, and the Public School Fund purchased only 7,500 shares, a small fraction of the approximately 50,000 shares that the Public School Fund purchased from Old and New Spectrum, and an even smaller fraction of the more than 4,000,000 shares of HRG stock that Jet purchased. The court approved the lead plaintiffs before the amended complaint was filed (which added the claims of the HRG stock purchasers), so the court didn't consider whether the lead plaintiffs adequately represented the interests of the HRG stock purchasers.

The court agrees with Jet that plaintiffs didn't provide adequate notice to HRG stock purchasers. Section 78u-4(a)(3) (A)(i) requires the plaintiffs to identify "the claims asserted" in the published notice, so plaintiffs should have published an amended notice when they filed the amended complaint to add more claims. A primary purpose of publication is to alert larger shareholders of their opportunity to serve as a lead plaintiff. See 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). By failing to publish an amended notice, plaintiffs deprived HRG stock purchasers such as Jet of that opportunity.

Plaintiffs say that HRG shareholders should have realized that any reference in their notice to Spectrum stock included HRG stock as well. Dkt. 63, at 31. But if that's true, why did plaintiffs expressly add references to HRG stock purchasers in their amended complaint and identify such purchasers as a separate group? See Dkt. 14, at 5 n.1. Plaintiffs don't answer that question. HRG and Old Spectrum were separate companies with separate stock before the merger, so HRG stock purchasers would have had no reason to believe that they were included in the class if they had reviewed plaintiffs' notice.

**\*3** The court also agrees with Jet that the current lead plaintiffs aren't adequate representatives of HRG stock purchasers. By plaintiffs' own assertion, those purchasers aren't similarly situated to purchasers of Old and New Spectrum stock. Plaintiffs contend that the 75 percent discount in the plan of allocation for HRG purchaser claims is justified because plaintiffs aren't alleging that HRG made any false or misleading representations or that any of the defendants made misrepresentations about HRG. Rather, those purchasers' claims are based on a contention that HRG stock prices were inflated by defendants' misrepresentations about the value of *Spectrum* stock. According to both plaintiffs and defendants, the claims of HRG purchasers are weaker than the claims of Spectrum purchasers because the case law is unsettled on the question whether a plaintiff has the right to sue under the Securities Exchange Act for misrepresentations made about a stock that the plaintiff didn't purchase. In fact, defendants moved to dismiss the claims of the HRG stock purchasers on this ground, Dkt. 21, at 51–56, but the parties agreed to settle the case before the court ruled on the motion.

The court need not wade into the case law cited by the parties to determine the relative strength of the HRG stock purchasers' claims. It is enough to say that neither the parties nor Jet have identified any controlling law on the question. The important point is that plaintiffs have identified an idiosyncratic defense for the claims of the HRG stock purchasers, making it necessary for those purchasers to have their own representative advocating for their interests. *See Torres v. Rhoades,* No. 15-cv-288, 2015 WL 9304584, at *3 (W.D. Wis. Dec. 21, 2015) ("The general rule in this circuit is that a plaintiff cannot be an adequate representative of the class if she is not subject to the same defenses as other members of the class, at least if the defense is central to the litigation.").

Plaintiffs say that the Public School Fund is an adequate representative because it purchased some HRG stock during the relevant period. But plaintiffs don't dispute Jet's assertion that the value of the Public School Fund's HRG-related claims represents less than three percent of the value of its Spectrum-related claims ($22,000 versus $900,000). And because the lump sum settlement amount was determined before the plan of allocation, any discount on the Public School Fund's relatively small amount of HRG shares would lead to a *larger* settlement on the Public School Fund's Spectrum shares. In sum, the lead plaintiffs' lopsided portfolios support Jet's contention that the lead plaintiffs would have had little incentive during negotiations to get the best settlement for purchasers of HRG stock.

This leaves the question of how to remedy plaintiffs' procedural missteps. Jet wants the court to either: (1) grant Jet's motion to intervene and direct the parties to restart settlement negotiations with Jet as the representative for the HRG stock purchasers; or (2) eliminate the discount for claims of HRG stock purchasers. But neither of those remedies match up with the problems that Jet itself has identified.

As for Jet's motion to intervene, that request is premature. The case took a wrong turn when plaintiffs chose to amend their complaint without publishing a new notice or asking the court to approve an additional lead plaintiff to represent the HRG stock purchasers. If plaintiffs had taken those steps, the next step would have been to allow any HRG stock purchaser to file a motion to serve as lead plaintiff under § 78u-4(a)(3)(A)(i)(II). Jet would not have been entitled to simply step in and declare itself the best choice. Jet may well be the class member that is "the most capable of adequately representing the interests of" HRG stock purchasers. 15 U.S.C. § 78u-4(a)(3)(B)(i). But if that is the case, Jet will have to make that showing in accordance with the law. The court cannot remedy one violation of the law with another violation.

It would also be inappropriate for the court to simply eliminate the discount. The parties have identified a plausible reason for the discount, and it should be the parties in the first instance who determine what amount, if any, the discount should be. The problem isn't that the parties determined that some claims should receive a discount; it is that they made the determination without an adequate representative for the adversely affected class members. Eliminating the discount would give Jet and other HRG purchasers a windfall at the expense of other class members.

**\*4** The court sees two potential resolutions, neither of which may be fully satisfactory to the parties or Jet. The first possibility is the one described above: allow plaintiffs to publish a new notice that includes the claims of the HRG class members, and then the court will choose an additional lead plaintiff for those members in accordance with § 78u-4(a)(3)(B)(i). The second possibility is to exclude the claims of the HRG stock purchasers from the class and allow them to file a separate lawsuit if they wish. If those class members are removed, the problems related to the adequacy of both the notice and the lead plaintiffs' representation are resolved.

This is plaintiffs' lawsuit, so the court will leave it to them to decide which option they want to pursue. Either way, it will require renegotiating the settlement, so the court will deny without prejudice the motions for final approval of the settlement and for fees. The court will also deny Jet's motion to intervene. If Jet is to become a party, it will be through the process sanctioned by the PSLRA.

Along with their choice of how they wish to proceed, plaintiffs should submit: (1) a memorandum identifying the steps they believe are necessary to resolve the case; and (2) a proposed schedule. The parties are encouraged to work together and submit a joint proposal, but if they are unable to agree, the court will give defendants an opportunity to object and submit a competing proposal.

ORDER

IT IS ORDERED that:

1. The parties' motion for approval of the proposed settlement, Dkt. 49, is DENIED without prejudice.

2. Plaintiffs' motion for attorney fees and expenses, Dkt. 51, is DENIED without prejudice.

3. The motion to intervene filed by Jet Capital Master Fund LP, Jet Capital SRM Master Fund LP, and Walleye Investments Fund, Dkt. 57, is DENIED without prejudice.

4. Plaintiffs' motion to strike, Dkt. 69, is DENIED as moot.

5. Plaintiffs are directed to promptly notify the class of this order by including a copy of it on the settlement website.

2021 WL 411445

6. Plaintiffs may have until February 19, 2021, to: (1) inform the court whether they wish to publish an amended notice or dismiss the claims of class members who purchased HRG stock; and (2) submit a memorandum and proposed schedule, as discussed in the opinion.

7. If defendants have any objections to plaintiffs' proposed schedule, they may have until February 26, 2021, to raise those objections and file their own proposed schedule.

**All Citations**

Slip Copy, 2021 WL 411445

## Footnotes

1    All citations to the docket reflect the numbering for Case no. 19-cv-347-jdp.

**End of Document**                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.