Gary Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322

*Liaison Counsel for Movant the State Teachers
Retirement System of Ohio*

[Additional counsel on signature page]

## UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Pranay K. Bajjuri, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Raytheon Technologies Corporation F/K/A Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood,<br><br>Defendants. | Case No. CV-20-00468-JCH<br><br>Hon. John C. Hinderaker<br><br>**SUR-REPLY MEMORANDUM OF POINTS AND AUTHORITIES: (1) IN FURTHER SUPPORT OF MOTION OF THE STATE TEACHERS RETIREMENT SYSTEM OF OHIO FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF, AND APPROVAL OF COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS** |
| Daniel Norris, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>Raytheon Technologies Corporation f/k/a Raytheon Company; Thomas A. Kennedy; Anthony F. O'Brien; and Michael J. Wood,<br><br>Defendants. | Case No. CV-20-00543-RM |

The Retirement System[1] respectfully submits this sur-reply memorandum of points and authorities in further support of its motion and in opposition to competing motions.

## I.     PRELIMINARY STATEMENT

Having already hacked out a convoluted, multi-variable-dependent path to claiming the "largest financial interest" in this litigation by (i) redefining the Class to exclude losses from acquisitions of UTX shares prior to June 9, 2019; (ii) manufacturing "adjusted prices" to "account" for the Spinoffs; and (iii) valuing UTX shares converted to RTX shares as a result of the merger at $49.93 per share (the price at which the stock closed on April 3, 2020, after the Merger), the Annuity Fund, in its reply brief, now introduces yet a ***fourth*** variable that it demands the Court consider in assessing financial interest: whether a movant purchased more Raytheon securities than it sold during the Class Period—*i.e.*, whether the movant was a "net seller" of Raytheon securities. *See* Dkt. No. 20 at 1, 5-7. Having concluded that the Retirement System was such a net seller, the Annuity Fund erroneously argues that this fact requires the Court to deny the Retirement System's motion.

This latest permutation of the Annuity Fund's financial interest argument has no more merit than its prior iterations. Contrary to the Annuity Fund's assertion, "the courts in the Ninth Circuit and elsewhere have ***repeatedly*** held that a 'net seller' can be a lead plaintiff or class representative, ***as long as it has a recoverable loss***." *In re AudioEye, Inc.*, CV-15-163-TUC-DCB, 2015 U.S. Dist. LEXIS 193348, at *14 (D. Ariz. July 31, 2015) (collecting cases). *See also Hodges v. Immersion Corp.*, Nos. C-09-4073 MMC *et al.*, 2009 U.S. Dist. LEXIS 122565, at *10-*11 (N.D. Cal. Dec. 21, 2009); *In re MGM Mirage Secs. Litig.*, No. 2:09-cv-01558-GMN-LRL, 2010 U.S. Dist. LEXIS 120061, at *11 (D. Nev. Oct. 25, 2010); *Richardson v. TVIA, Inc.*, Nos. C 06-06304 RMW *et al.*, 2007 U.S. Dist. LEXIS 28406, at *12-*13 (N.D. Cal. Apr. 16,

---

[1] All capitalized terms herein are defined in the Retirement System's moving, opposition and reply briefs, unless otherwise indicated. *See* Dkt. Nos. 14, 18, 22.

2007).  Moreover, while the Annuity Fund claims that the Retirement System "clearly received more money selling shares at artificially inflated prices during the Class Period than it spent purchasing shares" (Dkt. No. 20 at 7), this conclusory assertion is at odds with the facts of this case.  While the Class Period in this litigation begins on February 10, 2016, that start date merely reflects the application of the five-year statute of repose applicable to fraud claims arising under the Exchange Act (*see* 28 U.S.C. § 1658(b)), and not the date that Raytheon began misleading its investors.  Rather, Raytheon's malfeasance likely preceded the start of the Class Period by six to seven years, considering that the DOJ subpoena that Raytheon announced on October 27, 2020 seeks information relating to Raytheon's reporting going back to *2009*.  *See* Dkt. No. 1 ¶¶ 35-36; *Norris* Dkt. No. 1 ¶¶ 30-31.  The Retirement System's status as a net seller reflects the fact that it acquired Raytheon shares prior to the Class Period and then sold many of those shares during the Class Period.  It is therefore a near-certainty that the Retirement System acquired nearly all of its Raytheon securities at inflated prices even *pre*-Class Period, since the DOJ subpoena indicates that the Company appears to have been misleading its investors as least as early as 2009.  The Annuity Fund's conclusory assertion that the Retirement System must have profited from the alleged fraud simply because it is a net seller thus relies on a series of baseless and likely incorrect assumptions about the inflationary effects of Defendants' false and misleading statements made *prior* to the Class Period relative to those made *during* the Class Period—an inquiry clearly beyond the scope of the lead plaintiff appointment process delineated in the PSLRA.

Finally, this latest permutation of the Annuity Fund's argument only further underscores the extent to which loss, while often a reliable yardstick for "financial interest" within the meaning of the PSLRA, is susceptible to manipulation by self-interested lead plaintiff movants, each advocating curtailing major swaths of the putative class.  Here, given the serious divergence between the loss calculations proffered by the movants, the Court should either utilize the most

inclusive Class Period and definition proffered by the Retirement System or assess financial interest with reference to the other three Lax-Olsten factors—securities purchased, funds expended, and net securities purchased (*i.e.*, securities retained)—all of which favor the Retirement System.

## II.   ARGUMENT

### A.   The Retirement System's Status As A "Net Seller" Does Not Disqualify It From Lead Plaintiff Appointment

In its reply brief, the Annuity Fund cites the fact that because the Retirement System, was a "net seller" of Raytheon securities, having sold more securities than it purchased during the Class Period,  the Retirement System is categorically precluded from serving as Lead Plaintiff in this action, erroneously concluding from this fact alone that the Retirement System "***clearly*** received more money selling shares at artificially inflated prices during the Class Period than it spent purchasing shares."  *See* Dkt. No. 20 at 5, 7 (emphasis added).  Like the Annuity Fund's previous arguments against the Retirement System, this argument lacks support in either law or in the facts of this case.

First, "the courts in the Ninth Circuit and elsewhere have ***repeatedly*** held that a 'net seller' can be a lead plaintiff or class representative, ***as long as it has a recoverable loss***."  *AudioEye*, 2015 U.S. Dist. LEXIS 193348, at *14 (D. Ariz. July 31, 2015) (collecting cases).  Indeed, when courts have "rejected a net seller's motion for appointment as lead plaintiff, it is important to note that the court's disapproval was directed toward net sellers who profited from the purchase and sale of defendant's shares during the class period.  In cases involving net sellers who are also net losers, on the other hand, courts have held that a movant 'should have no trouble proving damages and, therefore is qualified to serve as lead plaintiff.'"  *Richardson*, 2007 U.S. Dist. LEXIS 28406, at *12-*13 (quoting *Frank v. Dana Corp.*, 237 F.R.D. 171, 172-73 (N.D. Ohio 2006)).  *See also MGM Mirage*, 2010 U.S. Dist. LEXIS 120061, at *11 (rejecting "net seller" argument that

"confuses net *sellers* with net *gainers*. Whereas a net gainer achieves a net profit from its Class Period shares, a net seller merely sells more shares than it purchased during the Class Period and *may well still suffer a loss*.") (emphases added); *Hodges*, 2009 U.S. Dist. LEXIS 122565, at *10-*11 (distinguishing between (i) net seller movants, and (ii) movants that had "either a net *gain* or a minimal loss") (emphasis added); *Richman v. Goldman Sachs Group, Inc.*, 274 F.R.D. 473, 479 (S.D.N.Y. 2011) ("Notwithstanding that it is a net seller, [movant] still had losses which can be recognized . . . . [T]here is no good reason not to recognize losses which a net seller has incurred. [Movant] is well positioned to argue that the challenged conduct [*i.e.*, alleged fraud] caused it legal harm.").[2] Here, the Retirement System clearly lost *$34.78 million* on a FIFO basis or *$19.54 million* on a LIFO basis in connection with its Class Period transactions, debunking any theory that it had a net gain on its class period transactions in Raytheon securities.

While the Annuity Fund attempts to characterize the Retirement System's status as a net seller as a somehow debilitating unique defense, courts in fact routinely reject these same "net seller" attacks when marshaled by defendants against lead plaintiffs at later stages of PSLRA actions. *See*, *e.g.*, *In re CIGNA Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 350, 355 n. 30 (E.D. Pa. 2006) (denying defendants' motion for summary judgment based on lead plaintiff's status as a net seller, finding that "[t]he fact that SERS was a net seller . . . is not of particular relevance to whether SERS suffered a loss[.] . . . If CIGNA committed fraud on the market, nothing in the law compels this Court at this stage to allow CIGNA to satisfy its obligation to compensate SERS for

---

[2] *See also In re Molson Coors Brewing Co. Secs. Litig.*, Nos. 19-cv-00455-DME-MEH, 2019 U.S. Dist. LEXIS 233315, at *8, *11 (D. Colo. Oct. 3, 2019) ("reject[ing] the 'net seller' analysis in favor of the traditional, largest-recognizable-loss calculation," finding that "[n]umerous other courts have appointed a net share seller as lead plaintiff when such party's losses are biggest among the competing shareholders"); *Foley v. Transocean Ltd.*, 272 F.R.D. 126, 132 (S.D.N.Y. 2011) (appointing net seller after reviewing specific facts of transaction, finding that movant "did not benefit from the fraud by selling at inflated prices."); *In re Credit Suisse-AOL Secs. Litig.*, 253 F.R.D. 17, 23 (D. Mass. 2008) ("Plaintiff's status as a 'net seller' does not automatically render its claims atypical. . . . [T]he fund has submitted evidence that it suffered significant losses during the class period under either a [FIFO] accounting method or a [LIFO] method.") (collecting cases); *Ali v. Intel Corp.*, Nos. 18-CV-00507, 2018 U.S. Dist. LEXIS 89401, at *6 n.7 (N.D. Cal. May 29, 2018) (rejecting "net seller" argument, noting that movant's significant losses showed "itself to be adequate and typical").

4

losses by appropriating a portion of SERS's investment gain," citing "the policy behind the securities laws (namely, deterring fraud)"); *In re Schering-Plough Corp. Sec. Litig.*, No. 01-0829, 2003 U.S. Dist. LEXIS 26297, at *26 (D.N.J. Oct. 9, 2003) (rejecting "net seller" argument raised by defendants at class certification stage, finding that plaintiff's "Section 10(b) claim is based on losses that resulted from purchases of Schering-Plough stock made during the Class Period. Any capital gains made with respect to the sale of shares purchased before the Class Period are irrelevant.").[3]

The holdings in the foregoing cases are simply consistent with common sense. There is no reason to assume that simply because an investor may have sold certain securities at artificially inflated prices *during* the Class Period, and may have consequently realized proceeds from those Class Period sales, that investor would somehow lack an incentive to aggressively pursue recovery of a massively larger loss incurred in connection with the alleged fraud when it came to light *at the end* of the Class Period. Here, the Annuity Fund has conspicuously not explained to the Court why the Retirement System would not aggressively pursue recovery of the enormous losses that it incurred in connection with the Company's alleged fraud—roughly *$34.78 million* on a FIFO basis or *$19.54 million* on a LIFO basis—simply because it happened to sell more Raytheon securities than it purchased during the Class Period. There is plainly no reason to adopt an arbitrary rule that would disqualify, for no sensible reason, the movant with the greatest incentive to vigorously prosecute fraud claims against the Defendants in this litigation.

Second, the Annuity Fund's conclusory assertion that the Retirement System "clearly received more money selling shares at artificially inflated prices during the Class Period than it spent purchasing shares" is squarely at odds with the allegations in the Complaints in the Related Actions. In ostensible support of this argument, the Annuity Fund cites *Perlmutter v. Intuitive*

---

[3] *See also Karinski v. Stamps.com, Inc.*, CV 19-1828-MWF (SKx), 2020 U.S. Dist. LEXIS 209256, at *11 (N.D. Cal. Nov. 9, 2020) (same); *Garden City Emples. Ret. Sys. v. Psychiatric Solutions, Inc.*, No. 3:09-00882, 2012 U.S. Dist. LEXIS 44445, at *97 (M.D. Tenn. Mar. 29, 2012).

*Surgical, Inc.*, No. 10-CV-03451-LHK, 2011 U.S. Dist. LEXIS 16813 (N.D. Cal. Feb. 15, 2011), which it characterizes as "provid[ing] a helpful explanation" of the rationale for denying lead plaintiff motions by net sellers. Dkt. No. 20 at 7. The Annuity Fund specifically cites the following language:

> As alleged in the complaint, Defendants' fraud artificially inflated Intuitive's stock price during the Class Period. Thus, ***when Marcus purchased Intuitive stock prior to the Class Period, he purchased it at fair market value.*** When he sold it during the Class Period, however, he sold it at fraudulently inflated prices. As a result, instead of being injured by the fraud on these sales, Marcus actually benefitted from the fraud.

*Perlmutter*, 2011 U.S. Dist. LEXIS 16813, at \*29-\*30 (emphasis added).

The Retirement System submits that *Perlmutter* in fact provides a "helpful explanation" of precisely why the Retirement System's status as a net seller is ***not*** problematic with respect to its Lead Plaintiff motion. The core premise of the rationale in *Perlmutter* is that the net seller's pre-Class Period purchases of securities were at fair market value (*i.e.*, not at prices artificially inflated by fraud), and that any sales of these securities during the Class Period (*i.e.*, during the pendency of the fraud) would have been at artificially inflated prices, thereby benefiting the net seller. The *Perlmutter* rationale thus presumes that the pendency of the defendants' fraud is coextensive with the Class Period. Here, however, that is demonstrably ***not*** the case. Both Complaints in the Related Actions clearly allege that Raytheon had "misreported its costs regarding Raytheon Company's Missiles & Defense business since ***2009***," citing Raytheon's disclosure on October 27, 2020 that it had received a criminal subpoena from the DOJ "in connection with an investigation relating to financial accounting, internal controls over financial reporting, and cost reporting regarding Raytheon Company's Missiles & Defense business since 2009." *See* Dkt. No. 1 ¶¶ 35-36; *Norris* Dkt. No. 1 ¶¶ 30-31. Due to the statute of repose applicable to fraud claims arising under the Exchange Act, which limits actionable misstatements to the five-year period preceding the fraud's revelation on October 27, 2020 (*see* 28 U.S.C. §

1658(b)), the Class Period at issue necessarily starts much later, on February 10, 2016 (the date on which Raytheon filed its Annual Report for 2015 with the SEC)—potentially as many as seven years *after* the Company had started misreporting costs regarding its Missiles & Defense business. Thus, the record demonstrates that the Retirement System's pre-Class Period purchases were *not* at fair market value, but were instead at prices *already* artificially inflated by the Company's false and misleading statements. The fundamental premise of the *Perlmutter* rationale is thus demonstrably not present in the facts of this case. *See also In re Tesla, Inc. Secs. Litig.*, No. 18-cv-04865-EMC, 2018 U.S. Dist. LEXIS 212238, at \*11 (N.D Cal. Dec. 17, 2018) (distinguishing *Perlmutter*, noting that "the net seller/net gainer analysis . . . in *Perlmutter* was, at the end of the day, simply one means of trying to figure out whether a party had, as a 'net' matter, benefitted from the alleged fraud. . . . Nothing in *Perlmutter* says that the net seller/net gainer analysis is dispositive, particularly where an explanation is given as to how a seller has been hurt from the fraud.").

Given that the Retirement System acquired its pre-Class Period Raytheon securities at prices that were already artificially inflated by the Defendants' false and misleading statements, there is no argument that the Retirement System would have profited from selling these securities at artificially inflated prices during the Class Period. *See Brody v. Zix Corp.*, Nos. 3:04-CV-1391-K, 2005 U.S. Dist. LEXIS 13871, at \*5-\*6 (N.D. Tex. July 11, 2005) (rejecting "net seller" argument where movant "did not provide sufficient evidence supporting [the] claim" that the competing movant "actually experienced a net gain, rather than loss").

In sum, the Annuity Fund's meritless "net seller" argument effectively attempts to read into the PSLRA yet another financial interest criterion that has no basis in the statute, akin to the spinoff-valuation argument that the Annuity Fund conjured out of whole cloth in its opposition brief (*see* Dkt. No. 16)—and, moreover, this "net seller" argument rests upon a premise that is at odds with the facts of this litigation.

**B.    In the Alternative, the Court Should Assess Financial Interest with Reference to the Other Lax-Olsten Factors**

As it stated in its reply brief, the Retirement System respectfully submits that the competing movants' losses are appropriately calculated, without difficulty, with reference to the most inclusive Class Period and Class definition. *See* Dkt. No. 22 at 10. Nevertheless, the Retirement System acknowledges that the Annuity Fund and Francisco have significantly muddied the waters throughout this motion practice, positing various self-serving loss-calculation methodologies, designed to maximize each's own alleged losses while minimizing those of competing movants. *Id.* at 9-11. To wit, the Annuity Fund claims the largest loss and accuses the Retirement System of somehow being a "net gainer" and further claims that Francisco has gains for his class period purchases as well, while Francisco, for his part, also claims the largest loss while similarly accusing the Annuity Fund of having actually profited from its Raytheon investments. *See* Dkt. Nos. 16, 19, 20, 23. As such, faced with competing damages calculations, each movant has been accused by the other of having gained from the alleged fraud and sustaining zero recoverable losses. Faced with such contradictory and competing loss calculations, the Court should either utilize the largest and most inclusive class period set forth by the Retirement Systems or assess the movants financial interest with reference to the other Lax-Olsten factors—that is, securities purchased, funds expended and securities retained—***all*** of which metrics favor the appointment of the Retirement System. *See* Dkt. No. 22 at 10.

## III.    CONCLUSION

For all of the foregoing reasons, the Retirement System respectfully requests that the Court issue an Order granting its motion in its entirety and denying the competing motions.

///

///

///

8

Dated:  January 27, 2021

Respectfully submitted,


/s/ *Gary A. Gotto*
Gary Gotto (No. 007401)
**KELLER ROHRBACK L.L.P.**
3101 North Central Avenue, Suite 1400
Phoenix, AZ 85012
ggotto@kellerrohrback.com
Tel.: (602) 230-6322

*Liaison Counsel for Movant the State Teachers
Retirement System of Ohio*


**POMERANTZ LLP**
Jeremy A. Lieberman
J. Alexander Hood II
James M. LoPiano
600 Third Avenue
New York, NY 10016
Telephone: (212) 661-1100
Facsimile: (212) 661-8665
jalieberman@pomlaw.com
ahood@pomlaw.com
jlopiano@pomlaw.com

*Counsel for Movant the State Teachers
Retirement System of Ohio and Proposed Lead
Counsel for the Class*

CERTIFICATE OF SERVICE

I hereby certify that on January 27, 2021, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

*/s/ Gary A. Gotto*
Gary Gotto