Jeffrey Willis (ASB #004870)
Cory L. Braddock (ASB #024668)
SNELL & WILMER L.L.P.
One Arizona Center
400 E. Van Buren St., Suite 1900
Phoenix, Arizona  85004-2202
Telephone:  602.382.6000
Email:  jwillis@swlaw.com
         cbraddock@swlaw.com

William Savitt (admitted *pro hac vice*)
Graham W. Meli (admitted *pro hac vice*)
Adam L. Goodman (admitted *pro hac vice*)
Simon J. Williams (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 W. 52nd St.
New York, New York  10019
Telephone:  212.403.1000
Email:  WDSavitt@wlrk.com
         GWMeli@wlrk.com
         ALGoodman@wlrk.com
         SJWilliams@wlrk.com

*Attorneys for Defendants*

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Pranay K. Bajjuri, et al.,<br><br>            Plaintiffs,<br><br>    v.<br><br>Raytheon Technologies Corporation, et al.,<br><br>            Defendants. | No. 4:20-cv-00468-TUC-JCH<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS**<br><br>**(Oral Argument Requested)** |

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona  85004-2202
602.382.6000

**Table of Contents**

                                                                                    **Page**

PRELIMINARY STATEMENT ................................................................................ 1

ARGUMENT ........................................................................................................... 2

I.      The Complaint fails to adequately plead falsity under § 10(b). ............................. 2

        A.      The Complaint fails to plead falsity as to the internal control disclosures. .... 2

        B.      The Complaint fails to plead falsity as to the financial statements. .............. 4

        C.      The confidential witness allegations are insufficiently particularized. ......... 6

        D.      Hayes's April 2021 statements undermine plaintiff's falsity theory. ........... 8

II.     The Complaint fails to adequately plead scienter under § 10(b). ........................... 8

        A.      The Complaint fails to plead scienter as to the individual defendants. ......... 8

        B.      The Complaint fails to plead corporate scienter. ......................................... 13

III.    The Complaint fails to adequately plead loss causation under § 10(b). ................. 14

        A.      Plaintiff recognizes that it cannot plead loss causation under *Wochos*. ....... 14

        B.      Plaintiff also cannot plead loss causation because it does not adequately trace the stock drop to the alleged misstatements. ..................................... 16

IV.     The § 20(a) claim also fails. ................................................................................ 17

V.      The Complaint should be dismissed with prejudice. ............................................. 17

CONCLUSION ......................................................................................................... 17

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

- i -

**Table of Authorities**

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp.* v. *Advest, Inc.*,
512 F.3d 46 (1st Cir. 2008) ...................................................................................... 17

*Axonic Cap. LLC* v. *Gateway One Lending & Fin.*,
2019 WL 4138024 (C.D. Cal. May 22, 2019) ....................................................... 13, 14

*Baird* v. *BlackRock Institutional Tr.*,
2021 WL 681468 (N.D. Cal. Jan. 28, 2021) .............................................................. 15

*Berson* v. *Applied Signal Tech., Inc.*,
527 F.3d 982 (9th Cir. 2008) .................................................................................... 10

*City of Dearborn Heights Act 345 Police
& Fire Ret. Sys.* v. *Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) .................................................................................... 12

*Collier* v. *ModusLink Glob. Sols., Inc.*,
9 F. Supp. 3d 61 (D. Mass. 2014) .............................................................................. 9

*Dura Pharms., Inc.* v. *Broudo*,
544 U.S. 336 (2005) .................................................................................................. 14

*Fin. Inst. Prod. Corp.* v. *LOS Glob. Sys.*,
2016 WL 4479577 (D. Ariz. Aug. 25, 2016) ............................................................... 3

*Fouad* v. *Isilon Sys., Inc.*,
2008 WL 5412397 (W.D. Wash. Dec. 29, 2008) ..................................................... 9 n.3

*Frank* v. *Dana Corp.*,
646 F.3d 954 (6th Cir. 2011) ...................................................................................... 9

*Glazer Cap. Mgmt., LP* v. *Magistri*,
549 F.3d 736 (9th Cir. 2008) .................................................................................... 11

*Green* v. *Deutsche Bank Aktiengesellschaft*,
2019 WL 4805804 (S.D.N.Y. Sept. 30, 2019) ............................................................. 3

*Hershewe* v. *JOYY Inc.*,
2022 WL 1123208 (C.D. Cal. Mar. 9, 2022) ............................................................... 6

*Highfields Cap. I, LP* v. *SeaWorld Ent.*,
2022 WL 1037210 (S.D. Cal. Apr. 6, 2022) .............................................................. 16

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*In re Accuray, Inc. Sec. Litig.*,
757 F. Supp. 2d 936 (N.D. Cal. 2010) ........................................................................ 7

*In re Banco Bradesco S.A. Sec. Litig.*,
277 F. Supp. 3d 600 (S.D.N.Y. 2017)....................................................................... 3, 4

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005) ..................................................................................... 4

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ................................................................................... 15

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007) ......................................................... 12, 13, 17

*In re Invision Techs., Inc. Sec. Litig.*,
2006 WL 538752 (N.D. Cal. Jan. 24, 2006) ............................................................... 3

*In re LendingClub Sec. Litig.*,
254 F. Supp. 3d 1107 (N.D. Cal. 2017) ..................................................................... 11

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014) ................................................................................... 10

*In re Ocera Therapeutics, Inc. Sec. Litig.*,
806 F. App'x 603 (9th Cir. 2020) .............................................................................. 15

*In re Omnicare, Inc. Sec. Litig.*,
769 F.3d 455 (6th Cir. 2014) ..................................................................................... 14

*In re Portal Software, Inc. Sec. Litig.*,
2005 WL 1910923 (N.D. Cal. Aug. 10, 2005) ............................................................ 6

*In re Tesla, Inc. Sec. Litig.*,
2019 WL 6320829 (N.D. Cal. Nov. 26, 2019) ............................................................ 1

*In re Vantive Corp. Sec. Litig.*,
283 F.3d 1079 (9th Cir. 2002) ................................................................................... 13

*In re VeriFone Holdings, Inc. Sec. Litig.*,
704 F.3d 694 (9th Cir. 2012) ....................................................................................... 4

*In re Volkswagen*,
2017 WL 6041723 (N.D. Cal. Dec. 6, 2017).............................................................. 14

*Johnston* v. *Diaz*,
2020 WL 5630278 (S.D. Cal. Sept. 21, 2020) ............................................................ 8

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

*KMIEC* v. *Powerwave Techs., Inc.*,
   2013 WL 10106769 (C.D. Cal. Oct. 23, 2013) .......................................................... 9 n.3

*Lloyd* v. *CVB Fin. Corp.*,
   811 F.3d 1200 (9th Cir. 2016) ................................................................. 6, 9, 16, 17

*Loos* v. *Immersion Corp.*,
   762 F.3d 880 (9th Cir. 2014) ............................................................................. 15, 16

*Luna* v. *Marvell Tech. Grp. Ltd.*,
   2016 WL 5930655 (N.D. Cal. Oct. 12, 2016) .......................................................... 3, 10

*May* v. *KushCo Holdings, Inc.*,
   2020 WL 6587533 (C.D. Cal. Sept. 25, 2020) ............................................................. 9

*Medhekar* v. *U.S. Dist. Ct.*,
   99 F.3d 325 (9th Cir. 1996) ....................................................................................... 5

*Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*,
   540 F.3d 1049 (9th Cir. 2008) .............................................................. 4, 12, 15 & n.6

*Morgan* v. *AXT, Inc.*,
   2005 WL 2347125 (N.D. Cal. Sept. 23, 2005) ............................................................ 3

*Mulderrig* v. *Amyris, Inc.*,
   492 F. Supp. 3d 999 (N.D. Cal. 2020) ..................................................................... 12

*MYL Litig. Recovery I LLC* v. *Mylan N.V.*,
   2020 WL 1503673 (S.D.N.Y. Mar. 30, 2020) ............................................................ 4

*Nathanson* v. *Polycom, Inc.*,
   87 F. Supp. 3d 966 (N.D. Cal. 2015) ........................................................................ 4

*No. 84 Emp.-Teamster Joint Council Pension
   Tr. Fund* v. *Am. W. Holding Corp.*,
   320 F.3d 920 (9th Cir. 2003) ............................................................................... 6 n.1

*Nursing Home Pension Fund, Loc. 144* v. *Oracle Corp.*,
   380 F.3d 1226 (9th Cir. 2004) ................................................................................. 13

*Or. Pub. Emps. Ret. Fund* v. *Apollo Grp. Inc.*,
   774 F.3d 598 (9th Cir. 2014) ........................................................................ 5, 14, 15

*Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*,
   759 F.3d 1051 (9th Cir. 2014) ...................................................................... 7, 10, 12

*Provenz* v. *Miller*,
102 F.3d 1478 (9th Cir. 1996) ........................................................................ 11

*Retail Wholesale & Dep't Store Union Loc. 338*
*Ret. Fund* v. *Hewlett-Packard Co.*,
845 F.3d 1268 (9th Cir. 2017) ........................................................................ 6

*Rex & Roberta Ling Living Tr.* v. *B Commc'ns Ltd.*,
346 F. Supp. 3d 389 (S.D.N.Y. 2018)............................................................ 3

*Rok* v. *Identiv, Inc.*,
2017 WL 35496 (N.D. Cal. Jan. 4, 2017) ..................................................... 17

*S. Ferry LP, No. 2* v. *Killinger*,
542 F.3d 776 (9th Cir. 2008) ........................................................................ 9

*SEC* v. *Leslie*,
2012 WL 116562 (N.D. Cal. Jan. 13, 2012) ................................................. 5

*Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007)...................................................................................... 8

*Ulbricht* v. *Ternium S.A.*,
2020 WL 5517313 (E.D.N.Y. Sept. 14, 2020) ............................................. 3

*Wochos* v. *Tesla, Inc.*,
985 F.3d 1180 (9th Cir. 2021) ............................................................. *passim*

*Zamir* v. *Bridgepoint Educ., Inc.*,
2018 WL 1258108 (S.D. Cal. Mar. 12, 2018) .............................................. 9

*Zucco Partners, LLC* v. *Digimarc Corp.*,
552 F.3d 981 (9th Cir. 2009) ............................................................... *passim*

**Statutes, Rules, and Regulations**

Exchange Act Release No. 33-8810, 72 Fed. Reg. 35324 (June 27, 2007) ................ 11 n.4

Fed. R. Civ. P. 9(b)....................................................................................... *passim*

Private Securities Litigation Reform Act of 1995 ........................................ *passim*

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**PRELIMINARY STATEMENT**

The Complaint can survive defendants' motion to dismiss only if particularized allegations plead a securities fraud—a material misstatement made with fraudulent intent—that caused plaintiff's loss. The height of that pleading burden is substantial under the PSLRA, Rule 9(b), and Ninth Circuit precedent. Plaintiff's opposition seeks to manufacture an actionable fraud by ignoring these binding sources of law.

As defendants showed, this case is about a short-lived dip in RTX's stock price, lasting just a few days, followed by persistent gains. The Ninth Circuit's decision last year in *Wochos* v. *Tesla* held that such a quick, sustained recovery negates the required element of loss causation. There can be no securities fraud "stock drop" case like this one if there was no genuine stock drop. Plaintiff does not and cannot dispute the facts about the recovery of RTX's stock price. Nor does plaintiff even contest that the law as it now exists in this Circuit mandates dismissal under these facts. Rather, plaintiff is left to argue that the Ninth Circuit was wrong in *Wochos* and that this Court should instead look to Second Circuit authority. That is not a course available to a trial court in this Circuit.

Such disregard for binding authority permeates plaintiff's opposition. For example, the Ninth Circuit has held that a securities plaintiff must quantify the extent of alleged financial misstatements and that a broad-brush attack on results over an extended period will not suffice. Yet plaintiff here continues to insist that *all* the financial figures Raytheon reported over five years *must* be off by some unspecified amount in light of the anonymous, hearsay-riddled allegations of a few former employees. Plaintiff protests that it needs discovery to flesh out its allegations. But the PSLRA was enacted to deter opportunistic plaintiffs from "fil[ing] frivolous securities class actions in the hope . . . [they] will find during discovery some sustainable claim not alleged in the complaint." *In re Tesla, Inc. Sec. Litig.*, 2019 WL 6320829, at *1 (N.D. Cal. Nov. 26, 2019).

As for the disclosures about internal controls, plaintiff continues to rewrite the words Raytheon actually used, dismisses the certifications of the company's independent auditor, and otherwise fails to respond to defendants' arguments.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

On scienter, plaintiff has no response to another fundamental defect of the Complaint:  it contains no specific allegations about the individual defendants' awareness of the alleged misconduct, the information to which they had access, or their interactions with anyone.  Plaintiff tries to resort to a "core operations" theory mentioned nowhere in the Complaint.  But again, Ninth Circuit precedent stands in plaintiff's way:  the "core operations" theory is reserved for the "exceedingly rare" case when it would be "absurd" to conclude that the individual defendants were unaware of the alleged misconduct.  With a company Raytheon's size, and a complaint so thin on particularized allegations, this standard is not met here.  Meanwhile, plaintiff's other assorted allegations about Sarbanes–Oxley certifications, stock sales, and imputation run afoul of still more Ninth Circuit authority that plaintiff disregards.

Plaintiff has identified no way that its claims can overcome binding authority.  This case should be dismissed with prejudice.

**ARGUMENT**

**I.     The Complaint fails to adequately plead falsity under § 10(b).**

Plaintiff has not pleaded a single statement by defendants that is actionably false or misleading under the "exacting" requirements of the PSLRA and Rule 9(b).  *Zucco Partners, LLC* v. *Digimarc Corp.*, 552 F.3d 981, 990 (9th Cir. 2009).  Its unparticularized challenge to defendants' internal control disclosures and financial statements founder on numerous independent grounds.

**A.     The Complaint fails to plead falsity as to the internal control disclosures.**

Defendants showed that Raytheon's disclosures about internal controls were not materially false or misleading for three independent reasons.  Defs.' Mot. to Dismiss ("Mot.") at 11–23.  Plaintiff incorrectly rejects the first, offers no response to the second, and badly misapprehends the third.

*First*, plaintiff continues to attack disclosures that Raytheon never made.  The disclosures did not state that Raytheon had "effective internal controls," as the Complaint claims, but rather that "*management ha[d] concluded*" the company's controls were

-2-

effective. *Id.* at 12–13. This difference is no "quibble." Pls.' Opp. ("Opp.") at 13 n.8. As a matter of plain English, the statements mean different things, and plaintiff must explain why defendants' "*actual*[]" disclosures were false. *In re Invision Techs., Inc. Sec. Litig.*, 2006 WL 538752, at *6 (N.D. Cal. Jan. 24, 2006); Mot. at 5–7. Plaintiff cannot do so because the Complaint contains no allegations whatsoever about management's evaluation of Raytheon's internal controls or the basis for management's conclusion.

Courts have rejected plaintiff's theory of falsity for this very reason. *See, e.g.*, *Luna* v. *Marvell Tech. Grp.*, 2016 WL 5930655, at *13 (N.D. Cal. Oct. 12, 2016); *Morgan* v. *AXT, Inc.*, 2005 WL 2347125, at *15 (N.D. Cal. Sept. 23, 2005); *Invision*, 2006 WL 538752, at *6; *Green* v. *Deutsche Bank Aktiengesellschaft*, 2019 WL 4805804, at *2 (S.D.N.Y. Sept. 30, 2019); *In re Banco Bradesco S.A. Sec. Litig.*, 277 F. Supp. 3d 600, 647–48 (S.D.N.Y. 2017). In *Luna*, for example, the company's Audit Committee made findings demonstrating that internal controls "*were not adequate* and had in fact failed"— a fact far beyond anything alleged here. 2016 WL 5930655, at *13 (emphasis added). But even with those findings in hand, the plaintiff could not state a claim because the inadequacy of the controls did not "contradict" the actual disclosure: that "defendants evaluated the controls and concluded that they were effective." *Id.*

*Second*, plaintiff does not respond to defendants' argument that the Complaint must be dismissed because it makes no effort to "describe [Raytheon's] system of internal controls." *Rex & Roberta Ling Living Tr.* v. *B Commc'ns Ltd.*, 346 F. Supp. 3d 389, 405 (S.D.N.Y. 2018); *see* Mot. at 13. Courts routinely dismiss claims like plaintiff's where the complaint fails to "allege[] any facts regarding the structure of [a defendant's] internal controls." *Ulbricht* v. *Ternium S.A.*, 2020 WL 5517313, at *10 (E.D.N.Y. Sept. 14, 2020). Here, by opting not to respond to the argument, plaintiff has "effectively concede[d]" the point. *Fin. Inst. Prod. Corp.* v. *LOS Glob. Sys.*, 2016 WL 4479577, at *4 (D. Ariz. Aug. 25, 2016).

*Third*, plaintiff makes a misplaced argument that defendants are invoking the PSLRA safe harbor for "forward-looking statements." Opp. at 15–16 & n.10. But

-3-

defendants had no reason to invoke this safe harbor and did not do so.  Rather, defendants' argument is that plaintiff fails to plead falsity in light of what "effective internal control" means:  controls that provide "reasonable, not absolute, assurance," that "reduce[]" (not eliminate) risk, and that "may not prevent or detect misstatements" due to "inherent limitations" and the risk of "human failures."  Mot. at 13–14.  That is why effective internal controls "may fail to uncover misconduct or fraud," *Nathanson* v. *Polycom, Inc.*, 87 F. Supp. 3d 966, 978 (N.D. Cal. 2015), and why the "allegation that wrongdoing was allowed to take place is not enough to sustain a claim that [Raytheon's] . . . protocols were deficient," *MYL Litig. Recovery I LLC* v. *Mylan N.V.*, 2020 WL 1503673, at \*6 (S.D.N.Y. Mar. 30, 2020); *Bradesco*, 277 F. Supp. 3d at 648.  Plaintiff has no response to this point.

Also misplaced is plaintiff's argument that internal control disclosures can be actionable—a point that is not in dispute.  Opp. at 13; *see, e.g.*, *In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701, 708–09 (9th Cir. 2012) (falsity "undisputed" where CEO and CFO were alleged to have directed fraudulent accounting and the company had restated its financials).  The Complaint's defect is that it has not shown why they are actionable here.

**B.     The Complaint fails to plead falsity as to the financial statements.**

Defendants identified two principles of binding Ninth Circuit law that each foreclose plaintiff's falsity theory with respect to Raytheon's financial statements.  *See* Mot. at 15–17.  Plaintiff ignores both.

*First*, a "general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation to satisfy Rule 9(b)" or the PSLRA.  *In re Daou Sys., Inc.*, 411 F.3d 1006, 1017 (9th Cir. 2005) (quotation marks omitted).  The Complaint's shotgun approach of copy-pasting each of the company's financial statements over a period of almost five years, and proclaiming that the same three line items were misstated for the same vague reasons, is exactly what the Ninth Circuit proscribes.  *See Metzler Inv. GMBH* v. *Corinthian Colls., Inc.*, 540 F.3d 1049, 1056–57, 1070 (9th Cir. 2008).

-4-

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Plaintiff acknowledges that it was required to "plead 'specific facts indicating' why the specific financial statements at issue were false" and to "tie . . . particular allegation[s] of wrongdoing to . . . particular quarterly filing[s] [and] line item[s]." Opp. at 5–6. But rather than showing that it did so, plaintiff regurgitates the company's reported revenues, expenses, and income across the entire class period, and again asserts that these figures must be wrong in light of plaintiff's blanket allegations of wrongdoing. *Id.*

Moreover, it is undisputed that the financial statements at issue have never been restated and that PwC annually and independently determined that those statements were presented in all material respects in conformity with GAAP. Mot. at 6–7. Plaintiff claims these facts are unimportant, but that is not the law of this Circuit. *Id.* at 17.

*Second*, the Ninth Circuit has held that to plead materiality when alleging GAAP violations, "plaintiff must show with particularity how the adjustments affected the company's financial statements and whether they were material in light of the company's overall financial position." *Or. Pub. Emps. Ret. Fund* v. *Apollo Grp. Inc.*, 774 F.3d 598, 609 (9th Cir. 2014); *see* Mot. at 16–17. Plaintiff admits that it "cannot allege by exactly how much the revenues were [allegedly] inflated," but objects "there is not much more [it] can do right now" without discovery. Opp. at 7. That is no excuse for plaintiff's pleading failure: in enacting the PSLRA's discovery stay, "Congress clearly intended that complaints in . . . securities actions should stand or fall based on the actual knowledge of the plaintiffs rather than information produced by the defendants after the action has been filed." *Medhekar* v. *U.S. Dist. Ct.*, 99 F.3d 325, 328 (9th Cir. 1996) (per curiam).

Plaintiff's other arguments also fail. Plaintiff claims that defendants are advocating that materiality be assessed using "a single numerical benchmark," but do not identify what that benchmark is. Opp. at 10. That is because defendants make no such argument. Plaintiff also argues that "even quantitatively small amounts" can be material, *id.* at 11, but offers no theory for why that would be so here. *Cf. SEC* v. *Leslie*, 2012 WL 116562, at *6 (N.D. Cal. Jan. 13, 2012) (sustaining claim where accounting manipulations altered certain key "indicators relied upon by analysts and the market in evaluating [company]").

-5-

And plaintiff contends that the alleged stock drop sufficiently pleads materiality, ignoring Ninth Circuit precedent rejecting this theory. *See Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund* v. *Hewlett-Packard Co.*, 845 F.3d 1268, 1277 (9th Cir. 2017).[1]

In any event, plaintiff's assorted arguments about the standard for determining materiality are beside the point. Ninth Circuit law is clear that the Complaint must plead the extent of the alleged overstatements. In the absence of such pleading, plaintiff has provided the Court with no basis to assess materiality on any standard.

### C. The confidential witness allegations are insufficiently particularized.

The Complaint's falsity theory also fails for the independent reason that plaintiff's allegations of wrongdoing, attributed to a handful of anonymous confidential witnesses ("CWs"), are insufficiently particularized under the PSLRA and Rule 9(b).

Plaintiff insists that "[p]ersonal knowledge" is not required and that the Court should credit hearsay allegations. Opp. at 9. But the Ninth Circuit is clear that CWs must have "personal knowledge of the events they report." *Zucco*, 552 F.3d at 995; *see also, e.g.*, *Hershewe* v. *JOYY Inc.*, 2022 WL 1123208, at *3 (C.D. Cal. Mar. 9, 2022) (dismissing on this basis). While reliance on hearsay is not "automatically disqualify[ing]," hearsay may be credited only where "sufficiently reliable, plausible, or coherent." *Lloyd* v. *CVB Fin. Corp.*, 811 F.3d 1200, 1208 (9th Cir. 2016). In the few cases plaintiff cites, such statements were credited because they had other indicia of reliability—for example, because the statements were "reported by the COO," "were specific in time, context, and details," and "involved important communications from a [CEO] to his Board." *Id.* Such indicia are absent here: the CW allegations are vague, loosely dated, and sourced to "colleagues" for whom no identifying information is provided—not even a title. *In re Portal Software, Inc. Sec. Litig.*, 2005 WL 1910923, at *9 (N.D. Cal. Aug. 10, 2005) (declining to credit hearsay allegations on this basis).

---

[1] The older case on which plaintiff relies involved a 31% stock drop, which was just one of numerous factors supporting materiality. *No. 84 Emp.-Teamster Joint Council Pension Tr. Fund* v. *Am. W. Holding Corp.*, 320 F.3d 920, 935 (9th Cir. 2003).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Plaintiff paints defendants as contending that a CW "can only be deemed credible if the individual holds a 'high-level' position." Opp. at 9 n.5. Not so. But an employee's position in a company, particularly one of Raytheon's size, is a significant input in the reliability analysis this Circuit requires. And it follows that the low-level former employees plaintiff cites here were not well-positioned to observe an alleged fraud at the company's highest levels or to possess information about the falsity of top-level line items Raytheon reported for years—particularly given that those employees do not even claim to have been involved in the preparation of the company's financial statements or to have ever interacted with the individual defendants. *See Police Ret. Sys. of St. Louis* v. *Intuitive Surgical, Inc.*, 759 F.3d 1051, 1063 (9th Cir. 2014) (holding that "impression of a low-level employee" lacked "substance or context" and that other witness "statements provide[d] only snippets of information, not a view of the company's overall health").

The unreliability of the CW allegations here is laid bare by plaintiff's own briefing. In the Complaint, plaintiff featured CW7, who made sensational claims about Raytheon's culture and its supposed payment of "funny money" to vendors. Compl. ¶ 62. Defendants pointed out that there was no basis to infer that CW7, an alleged Director of Digital Transformation, would possess the information alleged. Mot. at 21–22. Plaintiff now abandons CW7; he is not mentioned at all in plaintiff's opposition brief.

Another example: the Complaint calls CW5 the Vice President of Business Development, Air Warfare Systems, reporting to the "Vice President of Business Development for all of Raytheon's Missile Systems." Compl. ¶ 59. But plaintiff now promotes CW5 to "Vice President of Business Development at Raytheon's Missile Systems" (the very person to whom the Complaint says he reports). Opp. at 3. Such shifts show why "former opinions of former employees do not generally rise to the level of falsity." *In re Accuray, Inc. Sec. Litig.*, 757 F. Supp. 2d 936, 945 (N.D. Cal. 2010).[2]

[2] The CW allegations are otherwise insufficiently particularized and unreliable for the reasons discussed in defendants' opening brief. Mot. at 18–22.

-7-

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**D.      Hayes's April 2021 statements undermine plaintiff's falsity theory.**

Unable to meet the Ninth Circuit's standards for pleading falsity, plaintiff points time and again to the April 2021 statements of RTX's CEO, Gregory Hayes, claiming he "admitted that the misconduct occurred." Opp. at 15 n.9; *id.* at 5, 8, 28–29.  As in the Complaint, plaintiff selectively quotes Hayes, omitting what contradicts its theory.  In particular, plaintiff elides Hayes's explanation that the limited issues he was describing stemmed from "one-off events," that "the dollar amounts are not going to be material," and that RTX does not anticipate "any ongoing impact to any of the businesses as a result of these investigations."  Braddock Decl., Ex. 9 at 11; *see* Mot. at 9, 23, 32–33.

Hayes's acknowledgement of isolated, immaterial issues in connection with defective pricing on a few government contracts predating the class period in no way supports plaintiff's claim of "egregious" misconduct permeating Raytheon, facilitated by a broken system of internal controls and resulting in four-plus years of misstated financials.  Opp. at 1.  To the contrary, Hayes's statements, unedited, *undermine* plaintiff's theory and weigh in favor of dismissal.  *See Johnston* v. *Diaz*, 2020 WL 5630278, at *3 (S.D. Cal. Sept. 21, 2020) ("[E]xhibits that contradict the claims in a complaint may fatally undermine the complaint's allegations.").

**II.      The Complaint fails to adequately plead scienter under § 10(b).**

For its claim to be viable, plaintiff must plead, with particularity, that at least one of the individual defendants acted with scienter.  And in sharp contrast to ordinary pleading standards, plaintiff must plead a "*strong*" inference of scienter—one that is at least as compelling as any inference of nonfraudulent intent.  *Tellabs, Inc.* v. *Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324 (2007) (emphasis added).  The Complaint fails to do so.

**A.      The Complaint fails to plead scienter as to the individual defendants.**

Unable to plead any specific facts regarding the individual defendants' awareness of the alleged misconduct, interactions with the CWs (or anyone, for that matter), or even the information to which the individual defendants had access, Mot. at 24–26, plaintiff resorts to arguments that have been rejected as a matter of law.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

**Alleged GAAP Violations.**  Plaintiff claims that GAAP violations can provide evidence of scienter.  Opp. at 17–18.  But as the Ninth Circuit recently emphasized, "the mere publication of inaccurate accounting figures, or a failure to follow GAAP, without more, does not establish scienter." *Lloyd*, 811 F.3d at 1207.  Rather, "[t]o raise a strong inference of scienter, [the Complaint] must allege facts demonstrating that defendants knowingly and recklessly engaged in an improper accounting practice, for example, that a company's external auditors counseled against a practice or that a company's CFO was aware that the practice was improper." *Id.* (quotation marks omitted); *May* v. *KushCo Holdings, Inc.*, 2020 WL 6587533, at \*5 (C.D. Cal. Sept. 25, 2020) (dismissing on this basis).  No such facts are alleged here.[3]  Moreover, as discussed in Part I above, plaintiff has not pleaded a single GAAP violation with the requisite particularity.

**DOJ Investigation.**  Plaintiff contends that the existence of an investigation supports a strong inference of scienter.  Opp. at 18.  That is not the law.  *See Zamir* v. *Bridgepoint Educ., Inc.*, 2018 WL 1258108, at \*17 (S.D. Cal. Mar. 12, 2018) (collecting cases).  Even the out-of-circuit cases plaintiff cites do not suggest otherwise.  *See Collier* v. *ModusLink Glob. Sols., Inc.*, 9 F. Supp. 3d 61, 76 (D. Mass. 2014) (government investigations alone are "insufficient to support a strong inference of scienter"); *Frank* v. *Dana Corp.*, 646 F.3d 954, 961 (6th Cir. 2011) (noting contention without crediting it).

**Core Operations.**  Without specific allegations of any individual defendant's state of mind, plaintiff falls back on a "core operations" theory:  that the defendants must have known about alleged misconduct at the core of Raytheon's business.  Opp. at 18–20.  The Complaint did not plead this theory—for good reason.  It is the "exceedingly rare" case in which the theory gives rise to an inference of scienter.  *S. Ferry LP, No. 2* v. *Killinger*,

_____

[3] The cases plaintiff cites allege the kinds of details missing from the Complaint.  *See, e.g.*, *KMIEC* v. *Powerwave Techs., Inc.*, 2013 WL 10106769, at \*3–4 (C.D. Cal. Oct. 23, 2013) (transactions that allegedly violated GAAP "would have required direct approval by [d]efendants"); *Fouad* v. *Isilon Sys., Inc.*, 2008 WL 5412397, at \*10 (W.D. Wash. Dec. 29, 2008) (inference of scienter supported by "specific examples of [defendants'] direct participation in allegedly improper transactions").

-9-

542 F.3d 776, 785 n.3 (9th Cir. 2008).  As pertinent here, the "relevant fact[s]" must be "of such prominence that it would be absurd to suggest that management was without knowledge" of them.  *Police Ret. Sys.*, 759 F.3d at 1062.

Plaintiff's allegations fall well short.  Plaintiff notes that the Complaint "alleges misconduct with respect to not one, but *multiple* contracts with the U.S. government"— Raytheon's largest customer.  Opp. at 19.  The CWs' allegations about these contracts lack the particularity required by the PSLRA and Rule 9(b).  *See* Mot. at 18–22.  In any event, it is hardly "absurd" to suggest that Raytheon's senior-most executives would be unaware of specific instances of misconduct at a company with over 60,000 employees (before the merger with United Technologies Corporation) and "tens of thousands" of contracts, none accounting for more than 5% of net sales.  *Id.* at 4, 19; *see In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1063–64 (9th Cir. 2014) (no inference of scienter where allegations concerned company's "flagship product" and "two largest customers"); *Luna*, 2016 WL 5930655, at *11–12 ("The premature recognition of 7–8% of revenue cannot plausibly be described as 'core' to [defendant's] operations.").

Nor can plaintiff demonstrate, as Ninth Circuit law requires, that defendants "must have known" that the company's financial statements and disclosures were false because the "falsity [was] patently obvious." *Zucco*, 552 F.3d at 1001; *cf. Berson* v. *Applied Signal Tech., Inc.*, 527 F.3d 982, 987, 988 n.5 (9th Cir. 2008) (inference of scienter drawn where senior executives "must have known about [adverse developments] because of their devastating effect on the corporation's revenue").  Far from any patently obvious falsity, plaintiff admits that it cannot even estimate by how much any given line item in the financial statements was supposedly off.  Opp. at 7.

Plaintiff tries to shore up these deficiencies by citing the alleged termination of two employees.  *Id.* at 20.  The Complaint is silent as to these individuals' awareness of the alleged misconduct and even as to why they were terminated (well before the DOJ subpoena in October 2020).  Compl. ¶¶ 59–61.  The law is clear that absent particularized allegations that a termination was "uncharacteristic when compared to . . . typical hiring

-10-

and termination patterns," or "suspicious," an inference of scienter "will never be as cogent or as compelling as the inference that the employee[] resigned or w[as] terminated for unrelated personal or business reasons." *Zucco*, 552 F.3d at 1002.

**Sarbanes–Oxley Certifications.** Plaintiff next points to defendants' Sarbanes–Oxley certifications. Opp. at 20–22. As even the authority plaintiff cites recognizes, "Sarbanes–Oxley certification[s] [are] *only* probative of scienter if the person signing the certification was severely reckless in certifying the accuracy of the financial statements." *Glazer Cap. Mgmt., LP* v. *Magistri*, 549 F.3d 736, 747 (9th Cir. 2008) (emphasis added). For that reason, these certifications "add nothing substantial to the scienter calculus." *Zucco*, 552 F.3d at 1004. Given that officers of every public company are required by law to make these certifications, the Ninth Circuit has explained that a contrary rule would "eviscerat[e] the pleading requirements for scienter set forth in the PSLRA." *Id.*

The analysis is not changed by the oversight obligations that the SEC and COSO impose on senior management. *See* Opp. at 21. Again, management *always* has such obligations. And while plaintiff cites one decision for the proposition that managerial responsibilities can support an inference of a CFO's scienter, it omits that the defendant company in that case had "admi[tted] . . . material weaknesses and [that] an improper tone at the top existed," along with the fact that the CEO had been engaged in self-dealing. *In re LendingClub Sec. Litig.*, 254 F. Supp. 3d 1107, 1121–22 (N.D. Cal. 2017).[4]

Plaintiff is likewise wrong to suggest that PwC's independent auditing of defendants' internal controls and financials "raises an affirmative defense." Opp. at 22. In the one case plaintiff cites, the Ninth Circuit held the district court erred *at summary judgment* by "resolving . . . factual disputes" when "evidence suggest[ed] defendants failed to disclose material information to their accountant." *Provenz* v. *Miller*, 102 F.3d

---

[4] Notably, the SEC has advised that "[a]fter the first year of compliance, management's effort to identify financial reporting risks and controls should ordinarily be less, because subsequent evaluations should be more focused on changes in risks and controls rather than identification of all financial reporting risks and the related controls." Exchange Act Release No. 33-8810, 72 Fed. Reg. 35324, 35325 (June 27, 2007).

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1478, 1490–91 (9th Cir. 1996).  While PwC's determinations may not be dispositive, they are "highly probative of an absence of scienter."  *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1157–58 (C.D. Cal. 2007) (quotation marks omitted).

**Stock Sales.**  In defending its stock-sale allegations, plaintiff concedes their irrelevance.  As defendants explained, because plaintiff claims that the alleged fraud began well before the class period, it is meaningless to compare stock sales in the class period to sales in the equivalent *pre*-class period.  Mot. at 28.  The logic of the comparison—that executives are more motivated to sell stock when they are engaged in wrongdoing—collapses when plaintiff alleges no "innocent" trading history.  In supposed response, plaintiff professes not to understand defendants' argument and merely reiterates its position "that the wrongdoing occurred *before* the beginning of the Class Period."  Opp. at 24 n.12.  Under binding precedent, that ends the inquiry:  "Even if the defendant's trading history is simply not available, for reasons beyond a plaintiff's control, the plaintiff is not excused from pleading the relevant history."  *Zucco*, 552 F.3d at 1005.

Plaintiff's reference to stock sales fails for numerous other reasons, too:

*First*, stock sales may support an inference of scienter "only when [they are] dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information."  *Police Ret. Sys.*, 759 F.3d at 1063.  Notwithstanding its burden to do so, plaintiff pleads nothing at all regarding the three primary factors courts examine to make this assessment:  "(1) the amount and percentage of the shares sold; (2) the timing of the sales; and (3) whether the sales were consistent with the insider's trading history."  *Metzler*, 540 F.3d at 1067.  Plaintiff points instead to "proceeds," but the Ninth Circuit is clear that a "conclusory allegation" of sale proceeds over the alleged class period is insufficient to meet this pleading burden.  *City of Dearborn Heights Act 345 Police & Fire Ret. Sys.* v. *Align Tech., Inc.*, 856 F.3d 605, 621–22 (9th Cir. 2017); *see also* Mot. at 27.  The few decisions on which plaintiff relies each involved allegations of the kind called for by the Ninth Circuit and that are absent here.  *See, e.g.*, *Mulderrig* v. *Amyris, Inc.*, 492 F. Supp. 3d 999, 1029–30 (N.D. Cal. 2020)

-12-

(suspicious timing); *Nursing Home Pension Fund, Loc. 144* v. *Oracle Corp.*, 380 F.3d 1226, 1232 (9th Cir. 2004) (same; "truly astronomical figure" of $900 million in sales).

*Second*, the Complaint "fail[s] to link any [i]ndividual [d]efendant's sale of stock to any of the alleged misstatements" by the company, *Hansen*, 527 F. Supp. 2d at 1160, as Ninth Circuit law requires, *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1093 (9th Cir. 2002), *abrogated in part on other grounds by Tellabs*.  Plaintiff ventures no response.

*Third*, the Complaint compares defendant O'Brien's proceeds from stock sales from an 11-month pre-class period (after he became a reporting officer) to his stock sales over the next five years.  Mot. at 28.  That discrepancy renders the comparison irrelevant.

*Fourth*, the "unusually long" class period undermines any possible inference of scienter.  *Vantive*, 283 F.3d at 1092–94.  The two cases cited by plaintiff do not address this issue, but Ninth Circuit precedent refutes plaintiff's position.  *See id.*; Mot. at 29.[5]

*              *              *

Plaintiff does not come close to pleading scienter, and, viewed holistically, the whole of the Complaint's allegations is no "greater than the sum of its parts." *Zucco*, 552 F.3d at 1006.  Plaintiff pleads no inference of fraudulent intent, let alone one that is at least as compelling as the proposition that defendants had no intent to deceive.

**B.      The Complaint fails to plead corporate scienter.**

Because plaintiff has failed to plead the scienter of the individual defendants, it cannot plead the scienter of the company.  That is because the company can be "deemed to have the requisite scienter for fraud *only if* the individual *corporate officer* making the statement has the requisite level of scienter." *Axonic Cap. LLC* v. *Gateway One Lending & Fin.*, 2019 WL 4138024, at *8 (C.D. Cal. May 22, 2019).

---

[5] Plaintiff also points to an alleged increase in defendant Kennedy's compensation from 2014 to 2015.  Opp. at 26.  It is unclear what point plaintiff is trying to make.  Again, plaintiff claims that the alleged fraud predated the class period by years, so why would it be relevant that Kennedy got a raise some unspecified number of years into the fraud?  Plaintiff does not say.  In any event, it is hardly surprising that Kennedy's compensation increased in his first full year as CEO and Chairman of Raytheon.  *See* Compl. ¶ 20.

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Snell & Wilmer

L.L.P.

LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Again, plaintiff invites this Court to disregard Ninth Circuit law and follow another circuit. Opp. at 23 (citing *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 476 (6th Cir. 2014)). But "[w]here, as here, the [p]laintiff[] seek[s] to hold individuals and a company liable on a securities fraud theory," the *Ninth Circuit* "require[s] that the [p]laintiff[] allege scienter with respect to each of the individual defendants." *Or. Pub.*, 774 F.3d at 607. Plaintiff does "not cite to any cases from this circuit where a court imputed the scienter of a non-officer to a corporate defendant to satisfy the stringent pleading standards under the PSLRA." *Axonic*, 2019 WL 4138024, at *8.

Plaintiff's sole in-Circuit citation *rejected* plaintiff's expansive theory, noting that only the scienter of those "who participate[] in making the challenged statements" can be imputed to the company. *In re Volkswagen*, 2017 WL 6041723, at *8–9 (N.D. Cal. Dec. 6, 2017) (at minimum, agent must have "some authority over the statements" at issue). Even on this somewhat broader view, none of the lower-level employees plaintiff invokes are alleged to have participated in making the statements at issue or to have had authority over them. And even if plaintiff could somehow overcome these hurdles, the Complaint does not plead any of these employees' mental states with the requisite particularity under the PSLRA and Rule 9(b). It pleads barely anything about them at all. Compl. ¶¶ 47, 60.

**III.    The Complaint fails to adequately plead loss causation under § 10(b).**

Plaintiff's claim fails for the third independent reason that it cannot plead loss causation. Of note, plaintiff's claim that "[l]oss causation is subject only to Rule 8(a)'s notice pleading requirements" is wrong. Opp. at 27. Plaintiff cites *Dura* in support, but *Dura* merely assumed as much "for argument's sake." *Dura Pharms., Inc.* v. *Broudo*, 544 U.S. 336, 346 (2005). Ninth Circuit law post-*Dura* is clear: "Rule 9(b) applies to all elements of a securities fraud action, including loss causation." *Or. Pub.*, 774 F.3d at 605.

**A.    Plaintiff recognizes that it cannot plead loss causation under *Wochos*.**

Under the Ninth Circuit's recent decision in *Wochos* v. *Tesla*, a "quick and sustained [stock] price recovery" following a modest decline "refutes the inference" that an alleged misrepresentation caused "any material drop in the stock price." 985 F.3d

-14-

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

1180, 1198 (9th Cir. 2021). Plaintiff does not dispute that RTX's stock price recovery was sufficiently "quick and sustained" under *Wochos*, nor could it. *See* Mot. at 30 & App'x A.

Instead, plaintiff argues that *Wochos* was wrongly decided, complaining that the Ninth Circuit "did not have the benefit of [] robust briefing on loss causation" and that *Wochos* was picking up on what plaintiff says was dicta in an earlier Ninth Circuit decision, *Metzler*. Opp. at 30. It is the Second Circuit, plaintiff submits, that has the right rule. *See id.* at 30–33. Plaintiff is welcome to present these arguments to the Ninth Circuit on appeal, but *Wochos* is the law of this Circuit and governs this motion.

In any event, plaintiff misunderstands *Wochos*'s rationale. Attempting to co-opt the Second Circuit's decision in *Acticon*, plaintiff argues that RTX's recovery was unrelated to the alleged corrective disclosure on October 27, 2020. That is beside the point: *Wochos*'s rule is not premised on what catalyzes a price recovery. Rather, it is premised on the common-sense point that where a company experiences a "quick and sustained price recovery after [a] modest . . . drop," the inference that the drop was caused by the alleged corrective disclosure collapses. 985 F.3d at 1198.[6]

Finally, plaintiff's argument that loss causation should not be resolved on a motion to dismiss is undermined by case after case, including Ninth Circuit precedent. *See, e.g.*, *Wochos*, 985 F.3d at 1197; *In re Ocera Therapeutics, Inc. Sec. Litig.*, 806 F. App'x 603, 605 (9th Cir. 2020); *Loos* v. *Immersion Corp.*, 762 F.3d 880, 890–91 (9th Cir. 2014). The one Ninth Circuit case that plaintiff cites in response is not only older, but also predates that court's holding that Rule 9(b) applies to pleading loss causation. *See In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049 (9th Cir. 2008); *Or. Pub.*, 774 F.3d at 605. And the post-*Wochos* district court cases plaintiff cites do not even involve motions to dismiss in § 10(b) cases. *See Baird* v. *BlackRock Institutional Tr.*, 2021 WL 681468, at *1 (N.D.

---

[6] That logic applies with even more force here. It is undisputed that the drop at issue occurred on the worst day for the market in months and immediately after RTX detailed the adverse effects of the pandemic on its aerospace business. *See* Mot. at 7–9; *Metzler*, 540 F.3d at 1065. Plaintiff declined to oppose defendants' request for judicial notice (ECF No. 42), and these facts are properly subject to judicial notice.

-15-

Cal. Jan. 28, 2021) (ERISA case in summary judgment posture); *Highfields Cap. I, LP* v. *SeaWorld Ent.*, 2022 WL 1037210, at \*14–16 (S.D. Cal. Apr. 6, 2022) (*Daubert* motion).

**B.     Plaintiff also cannot plead loss causation because it does not adequately trace the stock drop to the alleged misstatements.**

Even if plaintiff could somehow overcome *Wochos*, it is hornbook law that the disclosure of a government investigation is "insufficient to establish loss causation" and cannot supply the necessary causal link between an alleged economic loss and an alleged fraud. *Loos*, 762 F.3d at 890; *see* Mot. at 30–33. To overcome this defect, plaintiff tries to bring its Complaint within the Ninth Circuit's decision in *Lloyd* v. *CVB*. But *Lloyd* just reinforces why the Complaint insufficiently pleads loss causation.

*Lloyd* articulated a narrow exception to the general rule: if the disclosure of an investigation into an alleged misrepresentation is "coupled with a subsequent revelation of the inaccuracy of that misrepresentation," that may suffice to plead loss causation. 811 F.3d at 1203. In *Lloyd*, the defendant—CVB, a bank and commercial lender—was experiencing well-publicized issues with its "largest borrower" and "largest exposure," Garrett Group. *Id.* at 1204. When CVB disclosed an SEC investigation into its loan underwriting, its stock tumbled 22%. *Id.* The reason: "the market and various analysts perceived the subpoena to be related to CVB's alleged misstatements about Garrett Group's ability to repay" loans. *Id.* at 1204, 1210–11. As one market observer remarked, the subpoena "appear[ed] to validate our overall concerns with [CVB]." *Id.* at 1204.

Just one month later, CVB "confirmed" the market's perception: it announced that Garrett Group was in fact unable to make its payments, that it was writing off nearly half of its loans to Garrett, and that it was classifying the rest as nonperforming. *Id.* at 1205. "The market reacted hardly at all to CVB's bombshell disclosure about its largest borrower, confirming that investors understood" CVB's earlier disclosure of the subpoena as revealing the inaccuracy of CVB's prior statements about the health of the Garrett Group loans. *Id.* at 1210. As one analyst observed, the impact had already been priced in. *Id.* at 1205. For these reasons, the *Lloyd* court deemed loss causation adequately pleaded.

-16-

Here, by contrast, the Complaint pleads nothing about how analysts understood RTX's announcement of the DOJ subpoena, let alone that it confirmed specific concerns the market already harbored. Nor are there any allegations to suggest the market understood RTX's announcement as "partial[ly] disclos[ing] . . . the [alleged] inaccuracy" of defendants' internal control disclosures and its financial statements. *Id.*

As for Hayes's statements six months later, these observations regarding a few "one-off," immaterial issues concerning older contracts that may have been defectively priced do not align with plaintiff's theory and, in contrast to *Lloyd*, did not "reve[a]l . . . the inaccuracy of [any] misrepresentation." *Id.* at 1203; *see* § I.D, *supra.* Hayes's statements in no way amounted to the type of "bombshell disclosure" that animated *Lloyd*. 811 F.3d at 1210. Under these circumstances, the notion that loss causation could be premised on the *absence* of an adverse price reaction defies common sense. *See Rok* v. *Identiv, Inc.*, 2017 WL 35496, at *19–20 (N.D. Cal. Jan. 4, 2017) (dismissing *Lloyd*-based theory because there was no "subsequent correction" "analogous" to the one in *Lloyd*).

**IV.    The § 20(a) claim also fails.**

Because plaintiff failed to plead "a primary violation of federal securities law," its § 20(a) claim must likewise be dismissed. *Zucco*, 552 F.3d at 990; *see* Opp. at 33.

**V.    The Complaint should be dismissed with prejudice.**

Leave to amend should be denied where amendment is "futile." *Wochos*, 985 F.3d at 1197. Plaintiff has effectively conceded that it cannot show loss causation under *Wochos*. No new allegations could change the fact of RTX's stock price recovery. Moreover, plaintiff filed the amended complaint nearly a year after the initial complaints were filed and after "investigating the facts." ECF No. 33 at 2; *Hansen*, 527 F. Supp. 2d at 1163. Plaintiff is not entitled to "leisurely repeated bites at the apple." *ACA Fin. Guar. Corp.* v. *Advest, Inc.*, 512 F.3d 46, 57 (1st Cir. 2008).

**CONCLUSION**

For the foregoing reasons, the Court should grant defendants' motion and dismiss the Complaint with prejudice.

-17-

Snell & Wilmer
L.L.P.
LAW OFFICES
One Arizona Center, 400 E. Van Buren, Suite 1900
Phoenix, Arizona 85004-2202
602.382.6000

Dated this 5th day of July, 2022.

SNELL & WILMER L.L.P.

*/s/ Cory L. Braddock*

Jeffrey Willis
Cory L. Braddock
One Arizona Center
400 E. Van Buren St., Suite 1900
Phoenix, Arizona  85004-2202

William Savitt (admitted *pro hac vice*)
Graham W. Meli (admitted *pro hac vice*)
Adam L. Goodman (admitted *pro hac vice*)
Simon J. Williams (admitted *pro hac vice*)
WACHTELL, LIPTON, ROSEN & KATZ
51 W. 52nd St.
New York, New York  10019

*Attorneys for Defendants*

-18-

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 5, 2022, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system and served electronically through the CM/ECF system to all counsel of record.

SNELL & WILMER L.L.P.

*/s/ Cory L. Braddock*

Cory L. Braddock
One Arizona Center
400 E. Van Buren St., Suite 1900
Phoenix, Arizona  85004-2202